United States District Court
Southern District of Texas
FILED

FEB 2 1 2002

Michael N. Milby
Clerk of Court

M. Forest Nelson
State Bar No. 14904625
S.D.ID 5934
BURT BARR & ASSOCIATES, L.L.P.
304 South Record
Dallas, Texas 75202-4793
214/742-8001 (Telephone)
214/741-6744 (Telecopier)

ATTORNEYS FOR NATIONAL CASUALTY COMPANY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARMANDO R. VILLALOBOS | § | CASE NO. ___**B-02- 033**___ |
| | § | |
| | § | NOTICE OF REMOVAL OF ACTION |
| | § | UNDER 28 U.S.C. §1441(B) |
| VS. | § | (DIVERSITY) |
| | § | |
| NATIONAL CASUALTY COMPANY | § | |
| | § | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant National Casualty Company hereby removes to this Court the state court action described below.

1.     On or about January 10, 2002, an action was commenced in the 103rd Judicial District Court of Cameron County, Texas, entitled Armando R. Villalobos (Villalobos) v. National Casualty Company (National).

2.     The first date upon which defendant National obtained information regarding this lawsuit was February 4, 2002, when it was served.

3.     This action is a civil action that this Court has original jurisdiction over under 28

U.S.C. §1332. National can remove this action to this Court under 28 U.S.C. §1441(a) because it is a civil action in which the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

4.      Villalobos is a Texas citizen. National was and is a Wisconsin and Arizona citizen. Complete diversity existed when the state court action was filed and when this notice of removal was filed. See paragraphs 1 and 2 in the original petition in the state court action.(Defendant's attached appendix: "D.App." at Ex. 1, Original Pet. ¶¶ 1 and 2).

5.      National is the only defendant in the state court action.

6.      Villalobos worked for Kondos & Kondos (Kondos), a law firm in the Dallas/Fort Worth Metroplex.  Michael and Lucille Smith (Smiths) called Kondos regarding potential representation in an auto accident case.  Villalobos visited the Smiths and signed them to a representation contract with himself, and not Kondos. Villalobos represented the Smiths for a period of time until Kondos learned what Villalobos had done. Kondos fired Villalobos in December, 1997. Kondos filed a grievance against Villalobos with the bar association and sued him. The Smiths signed a new contract with Kondos and a document discharging Villalobos from further representation.  Kondos handled the car accident action through settlement.

7.      The Smiths then retained a lawyer to sue Kondos and Villalobos for malpractice.  The Smiths filed the malpractice suit on September 22, 2000. Claims asserted against Villalobos include: breach of fiduciary duty, breach of warranty, DTPA, misrepresentation/fraud, punitive damages, and attorney's fees.

8.      National issued a professional liability claims-made policy to Kondos for the period

9/18/99 to 9/18/00. The claims-made policy had a reporting period through 10/18/00. Villalobos

did not submit his claim within the reporting period for the policy. Additional conditions and terms

of the National policy issued to Kondos also precluded coverage, as Villalobos did not act within the

course and scope of his employment. National declined coverage.

9. Villalobos is suing National for declaratory relief.

10. National will also seek to have the right and duties of the parties declared under

the professional liability policy issued to Kondos. National will also seek affirmative relief against

Villalobos.

11. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Dated: February 19, 2002.

Respectfully submitted,

By: _____

M. Forest Nelson
State Bar No. 14904625
S.D.ID. 5934
BURT BARR & ASSOCIATES, L.L.P.
304 South Record
Dallas, Texas 75202-4793
214/742-8001 (Telephone)
214/741-6744 (Telecopier)

ATTORNEYS FOR NATIONAL
CASUALTY COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing notice of removal was served upon the below counsel of record pursuant to FRCP 5 through regular U.S. Mail on February <u>19</u>, 2002:

Henley & Henley, P.C.
Geoff J. Henley
2205 N. Henderson Avenue
Dallas, Texas 75206-6002

_____
M. Forest Nelson

**APPENDIX**

# INDEX OF MATTERS BEING FILED

1.    Plaintiff's Original Petition, Cause No. 141-185024-00                        1/18/02

2.    Executed process for National Casualty Company, Cause No. 2002-01-147-D        2/4/02

3.    Docket Sheet                                                                   2/15/02

4.    List of counsel of record                                                     2/19/02

CAUSE NO. 2002-01-147-D

| ARMANDO R. VILLALOBOS | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | 103rd JUDICIAL DISTRICT |
| | § | |
| | § | |
| NATIONAL CASUALTY COMPANY | § | CAMERON COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ARMANDO R. VILLALOBOS and files this Plaintiff's Original Petition for Declaratory Judgment complaining of NATIONAL CASUALTY COMPANY (hereafter referred to as "Defendant"), and would respectfully show to the Court the following:

I.

**DISCOVERY CONTROL PLAN**

Pursuant to Rule 190.3 of the Texas Rules of Civil Procedure, Plaintiff requests a Level II discovery control plan.

II.

**REQUEST FOR DISCLOSURE**

Pursuant to Rules 190.3 and 194 of the Texas Rules of Civil Procedure and 190.3 of the Texas Rules of Civil Procedure, Plaintiff requests Defendant to disclose, within fifty (50) days of service of this request, the information and material described in Rule 194.2 of the Texas Rules of Civil Procedure. Plaintiff specifically requests the responding party to produce responsive documents at the undersigned law offices within fifty (50) days of service of this request.

### III.

### PARTIES

1. Plaintiff resides in Cameron County, Texas.

2. Defendant NATIONAL CASUALTY COMPANY, is a non-resident insurance company, engaged in business in the State of Texas, but organized under the laws of the State of Wisconsin, and maintains a principal place of business at 8877 North Gainey Center Drive, Scottsdale, Arizona, 85258 and may be served by serving its registered agent for process, C.T. Corporation, 350 N. St. Paul, Dallas, Texas 75201.

### IV.

### VENUE AND JURISDICTION

Venue in this case is proper in Cameron County, Texas, because acts giving rise to this action occurred there and because Plaintiff resides there as well.

This Court has subject matter jurisdiction over this case, because the amount in controversy for the exclusive of costs and interest is within the jurisdictional limits of this Court.

### V.

### FACTS

During the fall of 1997, Plaintiff worked as an attorney for Kondos & Kondos, P.C., a personal injury firm in Dallas, Texas. While employed, Kondos & Kondos supervisors assured him the firm's professional liability policy would cover him against third party claims. Defendant NATIONAL CASUALTY COMPANY is a professional liability carrier currently providing coverage for Kondos & Kondos in a legal malpractice case that forms the basis for this Declaratory Judgment action. *Exhibit* 1. NATIONAL CASUALTY COMPANY provides not only malpractice defense and indemnity coverage, but defense

coverage for state bar disciplinary actions and will pay stipends for covered persons to attend hearings and trials and other contested matters. *Exhibit A*, at 2.

During August and September of 1997, Kondos & Kondos received several phone calls from a Lucy Smith, who sought legal advice for resolving an auto accident injury claim. For a variety of reasons, Ms. Smith eventually contracted with Plaintiff to represent her in the automobile case on September 27, 1997. When Kondos & Kondos learned of this attorney-client relationship, the firm fired Plaintiff on December 1, 1997 and had Ms. Smith sign a second contract with the firm on or about November 27, 1997.

From these dates forward, Plaintiff neither worked for Kondos & Kondos nor Lucy Smith.

During the months that followed, Kondos & Kondo continued to represent Ms. Smith in the accident case. While Kondos & Kondos pursued Smith's auto claim, the firm initiates a civil suit against Plaintiff for breach of fiduciary duty and commences a disciplinary action with the State Bar of Texas. A jury in Cameron County, Texas ultimately heard the disciplinary action.

In the interim, Kondos & Kondos continued to represent Ms. Smith in the underlying automobile case, which eventually settled in a mediation for $97,500.00. In the days that followed, Ms. Smith learned that her claims against her Uninsured Motorist policy may have been prejudiced by the settlement. She subsequently filed suit against Kondos & Kondos and several of its individual attorneys, including Plaintiff. In the suit, Ms. Smith asserts that Plaintiff committed a variety of tortious acts both in his individual capacity and as an agent or employee of Kondos & Kondos.

While the professional liability policy was in force, Carol Kondos, Defendant's named insured, turned over the pleadings, which named Kondos & Kondos, its partners and associates, including Plaintiff. Subsequently, Defendant assumed the defense of all

defendants in the malpractice suit, except Plaintiff.

By this time, Plaintiff had already moved back to his home in the Rio Grande Valley. When Plaintiff learned about the lawsuit, he notified Defendant and requested that the carrier provide indemnity and defense coverage. On or about January 17, 2001, Defendant sent a certified letter denying coverage to Plaintiff's residence, asserting that Plaintiff had not provided timely notice of the claim. *Exhibit B.*

VI.

## DECLARATORY RELIEF

Plaintiff is affected by the Defendant's construction of this insurance contract. Plaintiff thus requests the Court to declare its rights under the contract, pursuant to Section 37.004 of the Texas Civil Practices and Remedies Code.

VII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein and upon final hearing of this cause. At the conclusion of said hearing, Plaintiff requests that the Court order and declare that:

1.  the Defendant provide indemnity coverage for Plaintiff in the malpractice action;

2.  the Defendant provide or assume the defense for Plaintiff;

3.  the Defendant pay past attorney's fees already accrued in Plaintiff's defense

4.  the Defendant pay the attorney's fees required to defend his grievance action;

5.  the Defendant pay future attorney's fees;

6.  the Defendant pay reasonable attorney's fees for the prosecution of this

Decalaratory Judgment action,

7.     The Defendant pay all stipends accrued by Plaintiff during the course of all

the preceding actions; and

8.     the Defendant pay pre-judgment and post-judgment interest.

Respectfully submitted,

Henley & Henley, P.C.

Geoff J. Henley
State Bar No. 00798253
3101 N. Henderson Avenue
Dallas, Texas 75206-6002
214/821-0222 (Telephone)
214/821-0124 (Facsimile)

ATTORNEYS FOR PLAINTIFF
ARMANDO R. VILLALOBOS

EXHIBIT A

# National Casualty Company

Property/Casualty Division
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A STOCK COMPANY

# Lawyers Professional Liability Insurance

# Claims Made And Reported Policy

THESE POLICY PROVISIONS, WITH THE APPLICATION, DECLARATIONS AND ENDORSEMENTS, IF ANY
ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

LPJ-1 (12-96)

# LAWYERS PROFESSIONAL LIABILITY INSURANCE
# CLAIMS MADE AND REPORTED POLICY

## National Casualty Company
### Property/Casualty Division
### Scottsdale, Arizona

A Stock Insurance Company, herein called the Company

By acceptance of this policy, the **NAMED INSURED** agrees to act on YOUR behalf with respect to:

1.  exercising the option to purchase an Extended Reporting Period;

2.  the giving and receiving of notice of **CLAIM(S)** or cancellation; and

3.  the payment of premiums that may become due under this policy.

Each of YOU agree that the **NAMED INSURED** will act on YOUR behalf.

---

## A. INSURING AGREEMENT

WE will pay on YOUR behalf all sums which YOU become legally obligated to pay as **DAMAGES** and **CLAIM EXPENSE** as a result of **CLAIMS** first made against YOU and reported to US in writing during the **POLICY YEAR** or Extended Reporting Period, if applicable, provided that:

the **WRONGFUL ACT** giving rise to the **CLAIM** occurred on or after the **PRIOR ACTS DATE** shown in Item 3. of the Declarations; and

notice of the **WRONGFUL ACT** was not given nor required to be given to any prior insurer; and

prior to the inception date of the first policy issued to YOU by US and continuously renewed by US, YOU had no reasonable basis to believe that such **WRONGFUL ACT** had been committed or that a **CLAIM** would be made against YOU alleging such **WRONGFUL ACT**

## B. DEFENSE

WE have the right and duty to defend any suit against YOU seeking **DAMAGES** because of a **WRONGFUL ACT** even if any of the allegations in the suit are groundless, false or fraudulent. WE have the right to appoint counsel and investigate any **CLAIM** or suit. However, WE will not settle or compromise a **CLAIM** or suit without YOUR written consent. If consent is refused and YOU elect to contest the **CLAIM** or continue legal proceedings, then OUR liability for the **CLAIM** will not exceed the amount for which the **CLAIM** could have been settled, plus **CLAIM EXPENSE** incurred up to the date of YOUR refusal.

If the allegation(s) is excluded under this policy, there shall be no duty to defend such **CLAIM**.

WE are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any suit after the applicable limits of OUR liability have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE**.

WE have the right, but no duty, to appeal any judgment.

LPJ-1 (12-361)

YOU, except at YOUR own cost and for YOUR own account, will not:

1. make any payment;

2. admit any liability;

3. settle any **CLAIM**;

4. assume any obligation; or

5. incur any expense

without **OUR** written consent.

## C.  SUPPLEMENTAL PAYMENTS

**WE** will pay, in addition to **OUR** Limits of Liability:

1. All costs taxed against **YOU** in any suit **WE** defend.

2. Interest only on that part of any judgment which does not exceed **OUR** Limit of Liability, which accrues after the entry of the judgment and before **WE** have paid, offered to pay, or deposited in court that part of the judgment that does not exceed **OUR** Limit of Liability.

3. Premium on appeal bonds required in any suit **WE** defend and the cost of attachment or similar bonds.

4. Up to $10,000 during the **POLICY YEAR** in:

   a. expenditures for legal services charged by a lawyer **WE** designate; and

   b. other expenses **WE** incur in the investigation and defense of **DISCIPLINARY PROCEED-ING(S)** brought against **YOU**.

   Notice of the **DISCIPLINARY PROCEEDING(S)** must be reported to **US** in writing during the **POLICY YEAR** and must arise out of a **WRONGFUL ACT(S)** that is otherwise covered by this policy. The **DEDUCTIBLE** will not apply to the expenditures **WE** incur under this provision.

5. Up to $500 to each of **YOU** for each day or part of the day for **YOUR** attendance at a trial, hearing or arbitration proceeding at which **WE** request **YOUR** attendance. The maximum amount payable by **US** during the **POLICY YEAR** shall not exceed $5,000 in the aggregate. The **DEDUCTIBLE** provision of this policy will not apply to the expenditures **WE** incur under this provision.

## D.  TERRITORY

This policy applies to **WRONGFUL ACTS** which happen anywhere in the world, provided the **CLAIM** is made and the suit is brought within the United States and its territories or Canada.

## E.  DEFINITIONS

Whenever used in this policy, the following words have these meanings:

1. **CLAIM(S)**—means an oral or written notice from any party that it is their intention to hold **YOU** responsible for any **WRONGFUL ACT** in performing legal, arbitration, mediation, title agent or notary services. **CLAIM** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such notice; provided **YOU** tell us in writing of such circumstances during the **POLICY YEAR**. Notice includes, but is not limited to, service of suit or institution of arbitration proceedings.

2. **CLAIM EXPENSE**—means expenditures including, but not limited to:

   a. legal services charged by a lawyer(s) **WE** designate;

   b. costs of investigations;

   c. experts;

   d. court costs; and

   e. other similar expenses **WE** incur in the investigation, adjustment, defense or appeal of a **CLAIM** or suit.

   **CLAIM EXPENSE** does not include:

   (1) Salary, charges or expenses of **OUR** regular employees.

   (2) Payments made under the Supplemental Payments provision of this policy.

3. **DAMAGES**—means a monetary judgment, award or settlement.

   **DAMAGES** do not include:

a. Civil or criminal fines, sanctions, restitution or penalties, whether pursuant to any civil or criminal law or statute, including, but not limited to, awards under Federal Rule(s) of Civil Procedure, Rule 11 or a similar state law or statute;

b. Amounts paid to **YOU** as fees, costs or expenses for legal, arbitration, mediation, title agent or notary services performed which are to be reimbursed or discharged as a part of the judgment or settlement;

c. Punitive damages, exemplary damages or any damages which are a multiple of compensatory damages awarded against **YOU**, including double or treble damages. However, **WE** will provide limited coverage to **YOU** to pay for punitive damages, exemplary damages or any damages which are a multiple of compensatory damages at a maximum Limit of Liability of:

    (1) $250,000   Each **CLAIM**
         $250,000   Annual Aggregate; or

    (2) the Each **CLAIM** Limit and Annual Aggregate Limit shown in the Declarations,

whichever is less.

The Limit of Liability referenced in (1) or (2) above for Each **CLAIM** is the maximum limit **WE** will pay for all punitive damages, exemplary damages or any damages which are a multiple of compensatory damages arising out of each **CLAIM**. The Limit of Liability referenced in (1) or (2) above for Annual Aggregate is the maximum limit **WE** will pay for all punitive damages, exemplary damages or any damages which are a multiple of compensatory damages during each **POLICY YEAR**.

Payment for these damages will only be made in conjunction with a **CLAIM** that is otherwise covered by this policy. Any payments made by **US** under this provision will be included within the applicable Limit of Liability and not in addition to the policy limits.

d. Any costs assessed against **YOU** as the result of a **DISCIPLINARY PROCEEDING**.

4. **DEDUCTIBLE**—means the amount **YOU** must pay for **DAMAGES** and **CLAIM EXPENSE**.

5. **DISCIPLINARY PROCEEDING(S)**—means any proceeding brought against **YOU** by a state or other regulatory or disciplinary official or agency to investigate charges alleging professional misconduct in performing legal services.

6. **IMMEDIATE FAMILY**—means **YOUR** parents, wife or husband, children, brothers and sisters.

7. **NAMED INSURED**—means the person or organization named in Item 1. of the Declarations.

8. **PERSONAL INJURY**—means injury arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution and abuse of process.

    c. Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication of material that violates a person's right of privacy.

9. **POLICY YEAR**—means the period of one year following the effective date and hour of this policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

10. **PREDECESSOR FIRM(S)**—means any lawyer, law firm or professional legal corporation engaged in the practice of law in whose financial assets and liabilities the **NAMED INSURED** is the majority successor in interest. An assumption of 50% or greater of the firm's assets and liabilities shall be considered a majority interest.

11. **PRIOR ACTS DATE**—means the date specified in Item 3. of the Declarations. This policy shall not apply to any **CLAIM** arising from a **WRONGFUL ACT** which occurred prior to this date. If the term UNLIMITED is specified in Item 3. of the Declarations, it means that there is no time limitation of coverage for **YOU** based upon when the **WRONGFUL ACT** occurred.

12. **SUBROGATION EXPENSES** means expenditures including, but not limited to:

   a. legal services charged by a lawyer(s) **WE** designate;

   b. costs of investigations;

   c. experts;

   d. court costs; and

   e. other similar expenses **WE** incur in the subrogation process.

13. **TOTALLY AND PERMANENTLY DISABLED**—means total and continuous disability for at least six consecutive months as a result of sickness or accidental bodily injury which renders **YOU** unable to render legal, arbitration, mediation, title agent or notary services for others.

14. **WE, US,** and **OUR**—means the Company providing this insurance.

15. **WRONGFUL ACT(S)**—means any actual or alleged negligent act, error, omission or **PERSONAL INJURY YOU** or any person or entity for whom **YOU** are legally responsible commit, but only in the performance of legal, arbitration, mediation, title agent or notary services for or on behalf of the **NAMED INSURED** or any **PREDECESSOR FIRM(S)**, or while participating as a member, director or officer of a professional bar association. This also includes services rendered by **YOU** in an attorney-client relationship as a trustee, administrator, conservator, executor, guardian, receiver or similar fiduciary capacity.

16. **YOU** and **YOUR**—means insured and includes:

   a. The **NAMED INSURED** and any **PREDECESSOR FIRM(S)**.

   b. The lawyer(s) named in the application that forms a part of this policy, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   c. Any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership:

     (1) Who becomes a partner, stockholder or employee of the **NAMED INSURED** during the **POLICY YEAR**, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED**.



     (2) Who was formerly a partner, stockholder or employee of the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   d. Retained Of Counsel listed in the application that forms part of this policy, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their association with and under the name of the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   e. Any non-lawyer employee or former non-lawyer employee but only for work done within the scope of their employment for the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   f. The estate, heirs, executors, administrators, assigns and legal representatives of anyone listed in a., b., c., d. or e. above in the event of their death, incapacity, insolvency or bankruptcy, but only to the extent that they would otherwise be provided coverage under this policy.

## F. EXCLUSIONS

This policy does not apply:

1. To any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU**;

2. To any **CLAIM** arising out of bodily injury, sickness or death of any person or damage to or loss of any tangible property, except that this exclusion does not apply to mental illness, emotional distress or humiliation if solely resulting from covered legal or notary services;

3. To any **CLAIM** based on or arising out of **YOUR** capacity as:

   a. an officer, director, partner, shareholder or employee of any entity other than the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**

b.  a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments, or similar provisions of any state statutory law or common law, except if **YOU** are deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan;

c.  a public official or an employee of a governmental body, subdivision or agency; or

d.  a beneficiary or distributee of any trust or estate.

4.  To any **CLAIM** arising out of legal services or advice rendered by **YOU** in connection with any business enterprise not shown on the Declarations:

a.  which is, was or will be owned in whole or in part by **YOU** or any member of **YOUR IMMEDIATE FAMILY**;

b.  which is, was or will be in any way controlled, operated or managed by **YOU** or any member of **YOUR IMMEDIATE FAMILY** including the ownership, maintenance or use of any property in connection therewith; or

c.  in which **YOU** or any member of **YOUR IMMEDI-ATE FAMILY** is, was or will be a partner or employee;

This exclusion does not apply if, at the time that such legal service or advice was rendered, the **NAMED INSURED** or any insured, separately or in combination, or any **IMMEDIATE FAMILY** member had a total pecuniary or beneficial interest of 10% or less in such business enterprise.

5.  To any **CLAIM** arising out of any circumstances due to nuclear reaction, radiation or contamination, regardless of cause;

6.  To any **CLAIM** arising from notarized certification or acknowledgment of a signature without the physical appearance before such notary public of the person who is or claims to be the person signing such instrument;

7.  To any **CLAIM** based on or arising out of discrimination, harassment or misconduct by **YOU**, including but not limited to **CLAIMS** based on an individual's race, creed, color, age, sex, national origin, religion, disability, physical or mental handicap, disease, marital status or sexual preference;

8.  To any **CLAIM** made by **YOU** against any other Insured unless such **CLAIM** arises out of legal services provided in a lawyer-client relationship;

9.  To any **CLAIM** for which **YOU** are liable or **YOU** may be held liable for the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or any other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

## G.  INNOCENT INSURED PROTECTION

Whenever coverage under any provision of this policy would otherwise be excluded, suspended, or lost because of:

1.  Section **F. Exclusion 1.** relating to any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU**; or

2.  concealment of a **CLAIM** by any of **YOU**,

**WE** agree that the coverage as would be afforded by this policy will apply to each of **YOU** who did not personally commit or participate in the **WRONGFUL ACT(S)** or agree to the concealment.

For coverage to apply, **YOU** must notify **US** of the **WRONGFUL ACT(S)** or concealment as soon as **YOU** become aware of them.

## H.  LIMITS OF LIABILITY

Regardless of:

a.  the number of **YOU** who are insured under the policy;

b.  all persons or organizations who sustain **DAMAGES** payable under this policy; and/or

c.  suits brought on account of coverage afforded by the policy,

**OUR** liability is limited as follows:

1. The Limit of Liability stated in Item 4. (A) of the Declarations page is the limit of **OUR** liability for all **DAMAGES** and **CLAIM EXPENSE** arising out of each **CLAIM** first made and reported in writing during the **POLICY YEAR** or Extended Reporting Period.

2. The Limit of Liability stated in Item 4. (B) of the Declarations page is subject to the above provision respecting Each **CLAIM** and is the maximum limit of **OUR** liability for each **POLICY YEAR**. In no event will **OUR** total Limit of Liability be increased by any Extended Reporting Period.

3. **CLAIM EXPENSE** will be subtracted from the Limits of Liability first as it is incurred for each **CLAIM**. The remaining amount will be the amount available to pay **DAMAGES**.

4. Subject to the Limits of Liability, **WE** will only be liable to pay **DAMAGES** and **CLAIM EXPENSE** in excess of the **DEDUCTIBLE** shown in this policy. **YOUR DEDUCTIBLE** for all **DAMAGES** and **CLAIM EXPENSE** in any **POLICY YEAR** is the Annual Aggregate amount shown in Item 5. of the Declarations. Each of **YOU** under the policy is individually liable for the payment of the **DEDUCTIBLE**. In the event that **WE** expend funds for **DAMAGES** or **CLAIM EXPENSE** on **YOUR** behalf, **YOU** will reimburse **US** for such expenditures up to the amount of the **DEDUCTIBLE** shown in this policy. Reimbursement of the **DEDUCTIBLE** will be due within sixty (60) days from the date **WE** bill **YOU**.

5. One or more **CLAIMS** based on or arising out of the same **WRONGFUL ACT(S)** or a series of related **WRONGFUL ACT(S)** of one or more of **YOU** will be considered a single **CLAIM**. The **CLAIM** will be subject to the Limit of Liability in effect at the time such **CLAIM** was first reported in writing to **US**. Only one **DEDUCTIBLE** will apply to such **CLAIM**.

---

## I.   NOTIFICATION

1. If during the **POLICY YEAR** or the Extended Reporting Period:

    a. **YOU** receive written or oral notice from any party, that it is the intention of such party to hold **YOU** responsible for any **WRONGFUL ACT(S)**; or

    b. **YOU** become aware of circumstances which could reasonably be expected to give rise to such notice

   then:

   **YOU** will tell us in writing as soon as practicable, but no later than the end of the **POLICY YEAR** or Extended Reporting Period. Any subsequent **CLAIM** made against **YOU** arising out of such **WRONGFUL ACT(S)** shall be deemed to have been made during the **POLICY YEAR** or Extended Reporting Period. No coverage for such **CLAIM** shall exist under any subsequent policy written by **US**.

2. In the event of any **CLAIM** occurring hereunder, written notice to **US** will be given by the person or firm(s) shown under Item 1. of the Declarations. Notice will be deemed to be received if sent by prepaid mail properly addressed to the address shown in Item 7 of the Declarations.

3. When **WE** receive **YOUR** written notice and **WE**, in **OUR** discretion, incur **CLAIM EXPENSE** to undertake measures to avoid any **DAMAGES** as a result of the reported **WRONGFUL ACT**, **WE** will waive the applicable **DEDUCTIBLE**.

   However, the **DEDUCTIBLE** will always apply if a suit is filed, if arbitration hearings are begun or if any **DAMAGES** are paid.

---

## J.   INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUIT

1. In the event of a **CLAIM**, the **NAMED INSURED** must give **US**, as soon as practicable, written notice of:

    a. the specific **WRONGFUL ACT**; and

    b. the injury or damage which has or may result from the **WRONGFUL ACT**; and

    c. the names and addresses of the claimants and potential claimants; and

    d. the circumstances by which **YOU** first became aware of such **WRONGFUL ACT**

2. If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

3. **WE** will have full discretion in the handling of any **CLAIM**, and **YOU** will give full information and assistance as **WE** may reasonably require. **YOU** will cooperate with **US** and, at **OUR** request, consent to being examined and questioned by **OUR** representative, under oath, if necessary. At **OUR** request, **YOU** will attend hearings, depositions and trials and will assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. **YOU** will cooperate in the conduct of suits as well as in giving written statements to **OUR** representatives and defense counsel.

## K. EXTENSION OF COVERAGE

If the **NAMED INSURED** dies during the **POLICY YEAR**, the period for reporting **CLAIMS** is extended until the executor or administrator is discharged or for twenty-four (24) months from the date of death, whichever is less. If the **NAMED INSURED** has been insured by **US** for at least three (3) consecutive years immediately prior to this **POLICY YEAR** and becomes **TOTALLY AND PERMANENTLY DISABLED** during the **POLICY YEAR**, the period for reporting **CLAIMS** is extended until the disability ends. No additional premium will be charged for this extension nor will any premium be refunded.

## L. EXTENDED REPORTING PERIOD

Only the **NAMED INSURED** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1. One or more Extended Reporting Period(s) described below will be provided if the policy is canceled or nonrenewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY YEAR** and lasts for thirty (30) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

3. In addition, the **NAMED INSURED** may purchase one of the Supplemental Extended Reporting Periods described below if **YOU** are in compliance with the terms and conditions of this policy:

   a. A twelve (12) month Supplemental Extended Reporting Period for 100% of the full annual premium of this policy; or

   b. A twenty-four (24) month Supplemental Extended Reporting Period for 150% of the full annual premium of this policy; or

   c. A thirty-six (36) month Supplemental Extended Reporting Period for 185% of the full annual premium of this policy; or

   d. A sixty (60) month Supplemental Extended Reporting Period for 250% of the full annual premium of this policy; or

   e. An unlimited Supplemental Extended Reporting Period for 300% of the full annual premium of this policy

4. Coverage for a Supplemental Extended Reporting Period must be added by endorsement and an additional premium charge must be paid. Such period starts (30) days after the end of the **POLICY YEAR**

5. The right to purchase a Supplemental Extended Reporting Period will terminate unless:

   a. **WE** receive a written request for a Supplemental Extended Reporting Period; and

   b. the additional premium is paid

   within thirty (30) days of the end of the **POLICY YEAR**.

   The **NAMED INSURED'S** request must specify the length of the Supplemental Extended Reporting Period desired. Once in effect, extended reporting periods may not be canceled.

6. An Extended Reporting Period does not extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the policy's terms, Limits of Liability, Exclusions and Conditions, the policy is extended to apply to **CLAIMS** first made against **YOU** and reported to **US** in writing during the Basic Extended Reporting Period or, if purchased, the Supplemental Extended Reporting Period, but only for **CLAIMS**

due to **WRONGFUL ACT(S)** wt.  . happened on or after the **PRIOR ACTS DATE** and on or before the expiration of the **POLICY YEAR**.

7. Extended Reporting Periods do not reinstate or increase the policy's Limits of Liability. **CLAIMS** which are first made and reported during the Basic Extended Reporting Period or the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the **POLICY YEAR**.

## M. CONDITIONS

1. **ASSIGNMENT.** Assignment of interest under this policy will not bind **US** unless **WE** endorse the policy in writing assigning **YOUR** interest to another party.

2. **CANCELLATION.** This policy may be canceled by the **NAMED INSURED** by surrendering the policy to **US** or any of **OUR** authorized agents or by mailing written notice to **US** stating when the cancellation is to be effective. **WE** may cancel this policy by mailing to the **NAMED INSURED** at the address shown on the Declarations a written notice stating when the cancellation is to be effective. **WE** will give the **NAMED INSURED** ten (10) days notice for non-payment of premium or sixty (60) days notice for any other valid reason.

The mailing of notice will be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **POLICY YEAR**. Delivery of written notice either by the **NAMED INSURED** or by US will be equivalent to mailing.

If this policy is canceled, **WE** will send the **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the **NAMED INSURED** cancels, the refund will be the customary short rate proportion. **WE** will make the premium refund as soon as practicable after the date of cancellation. However, the premium refund is not a condition of cancellation.

Notice of cancellation will only be sent to the **NAMED INSURED** and will serve as notice to all of **YOU**.

3. **NONRENEWAL.** If **WE** do not renew this policy, **WE** will mail written notice to the **NAMED INSURED** at least sixty (60) days before the end of the **POLICY YEAR**. Any changes in the terms and conditions quoted on renewal do not constitute nonrenewal of this policy.

4. **CHANGES.** The terms of this policy will not be waived or changed except by endorsement issued by **US** and made a part of this policy.

5. **MERGERS AND ACQUISITIONS.** All mergers and acquisitions with other firms occurring throughout the **POLICY YEAR** must be reported to **US** in writing within 60 days of the merger or acquisition, or the next anniversary of this policy, whichever is sooner. **WE** shall have the right to adjust the premium, terms, conditions and exclusions to reflect any shift in exposure created by such merger or acquisition.

6. **CONFLICTING STATUTES.** Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.

7. **SUBROGATION CLAUSE. YOU** will transfer to **US YOUR** rights of recovery against any other party for any **DAMAGES WE** have paid on **YOUR** behalf. **YOU** must do everything necessary to secure these rights and do nothing that would jeopardize them.

**WE** will not exercise **OUR** right to recover against any of **YOU** unless the **DAMAGES** result from any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU**.

Any amount recovered from subrogation shall be apportioned as follows:

Any amount recovered shall first, be used for repayment of **SUBROGATION EXPENSES**; second, to any **DAMAGES** and/or **CLAIM EXPENSE** paid by US; third, to any **DAMAGES** and CLAIM **EXPENSE** paid by an excess insurer on **YOUR** behalf; fourth, to any **DAMAGES** and CLAIM **EXPENSE** paid by any other primary insurer on **YOUR** behalf; and last, to repayment of **YOUR DEDUCTIBLE**.

8. **SEVERABILITY CLAUSE.** The application and any supplements or addendums, copies of which are attached to this policy, and the Declarations, are the basis of this policy. They are to be considered as incorporated in and constituting part of this policy. The particulars and statements contained in the application and any supplements or addendums and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of **YOU**. Nothing in this provision will be construed to increase **OUR** Limits of Liability as set forth in Item 4 of the Declarations.

... of CLAIMS report... under this policy, WE will be excess of the amount of the applicable DEDUCTIBLE and any other valid and collectible insurance whether such other insurance is primary, pro rata, contributory, excess, contingent or any other basis, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this policy

If a loss occurs involving two or more policies, each of which provides that its insurance will be excess, then each policy will contribute on a pro rata basis. This means that WE will pay no more than OUR percentage of the total amount of the insurance covering the CLAIM, less the DEDUCTIBLE. For example:

The limit of coverage under this policy is $100,000. Another insurance policy with a limit of $300,000 also ... policy is 100%. WE will not pay more than 25%... $100,000 ($400,000) of the DAMAGES and CLAIM EXPENSE, less the DEDUCTIBLE.

10. **ACTION AGAINST US.** No action will lie against **US** unless **YOU** have fully complied with all the terms and Conditions of this policy prior to bringing the action. In the event of **YOUR** bankruptcy or insolvency, **WE** will not be relieved of **OUR** obligations under the terms and conditions of this policy.

11. **INSPECTION AND AUDIT. YOU** agree to allow **US** to examine and audit **YOUR** law office management procedures and records as they relate to this insurance during normal business hours while this policy is in force. **WE** are not, however, required to make inspections nor will **WE** guarantee that **YOUR** procedures are adequate or that they conform to any laws, rules or regulations.

In Witness Whereof, the Company has caused this policy to be executed and attested.

**Secretary**

**President**

LP-J-1 (12-96)

BURT BARR & ASSOCIATES, L.L.P.

CC+S RECORD
DALLAS, TEXAS 75202
(214) 742-8001
FAX (214) 741-6744

EXHIBIT B

January 17, 2001

**VIA CERTIFIED MAIL**
**RRR 7000 0520 0024 0949 7540**
Mr. Armando R. Villalobos
PMB # 111
1327 E. Washington Ave.
Harlingen, TX 78550

Re:   Claim Number:      685775-253
      Insured:           Carol Chapman-Kondos, P.C. d/b/a Kondos & Kondos (Kondos)
      Claimant:          Lucy and Michael Smith
      Policy Number:     LPO-0011445
      Our File No.:      40055.01

Dear Mr. Villalobos:

This correspondence will acknowledge receipt of the information submitted by you to National Casualty Company (NCC) requesting a defense of the claims brought by Lucy and Michael Smith (Smiths) against you, Kondos & Kondos (Kondos), and others.

NCC issued lawyers professional liability insurance policy number LPO-0011445 (LPLI Policy) to Kondos for the policy period 9/18/99 to 9/18/00.

Our understanding of the fact pattern emanates from the LPLI Policy, which includes an application for insurance Kondos filed with NCC, and the Plaintiffs' Original Petition for Cause No. 00-752-9, in the 44th Judicial District Court of Dallas County, Texas (Petition).

According to our review of the Petition, in 1997, the Smiths first retained you under alleged false pretenses to represent them in auto accident case. At the time of your retention, you were an attorney with Kondos. Kondos learned from the Smiths that you had individually entered a contract to represent the Smiths. Upon learning of this contract, Kondos terminated you in December, 1997. The Smiths also terminated their contract with you in 1997, and entered a contract with Kondos. Kondos represented the Smiths through settlement of their case.

Kondos procured insurance from NCC for one policy period: 9/18/99 to 9/18/00. The application for insurance Kondos filed with NCC did not include you as an attorney employed by Kondos in September, 1999. This application formed part of the LPLI Policy. The LPLI Policy was a claims made and reported basis policy. The LPLI Policy contained a basic extended reporting period through 10/18/00. Kondos did not renew the LPLI Policy or purchase an extended reporting period beyond the basic 30 day extended reporting period.

Mr. Armando Villalobos
January 17, 2001
Page 2

The Smiths filed suit against you on September 22, 2000.   You tendered your defense of the Smiths' claims to NCC through a letter dated November 20, 2000.

This correspondence will formally place you on notice that any action taken by NCC investigating the referenced action shall not be construed as a waiver of NCC's right to deny liability under the LPLI Policy.   Nor shall any such action be construed as a waiver of any breach of the provisions, terms, or conditions of the LPLI Policy.   NCC reserves the right to bring a declaratory judgment action to determine its rights.   NCC further reserves all other rights it may have that exist under common law, contract or by statute.

NCC has preliminarily investigated the claims asserted in the Petition.   That investigation and the analysis has lead NCC to the conclusion that you have no coverage under the LPLI Policy for the claims in the Petition.   NCC, accordingly, is declining to defend you in the state action in Dallas, and will not provide you indemnity for claims in the Petition.

To trigger coverage, you have to be an insured, and if an insured, you have to comply with the LPLI Policy's conditions.   To be an insured under the LPLI Policy you have to fall within the Section E.16. definition for "you" and "your."   The LPLI policy at Notice 94-11N advises insureds that coverage is written on a claims made and reported basis.

In Texas, a claims made and reported policy requires the insured to present the claim to the carrier during the policy period or a contractually agreed extended period to trigger coverage. *See Hirsch v. Texas Lawyers Ins. Exchange*, 808 S.W.2d 561 (Tex.App.-El Paso1991, writ denied); *McCullough v. fidelity & Deposit Co.*, 2 F.3d 110, 112 (5th Cir.1993).   It is the notice, not the occurrence, that triggers coverage. *See F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir.1994). Courts strictly construe these notice provisions in claims made policies. *See F.D.I.C. v. Booth*, 82 F.3d 670, 678 (5th Cir.1996).

Because of the strict construction, the carrier does not have to show prejudice from the insured's failure to provide timely notice to bar coverage on a claims made and reported policy; the failure to provide timely notice, ipso facto, bars coverage. *See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*,174 F.3d 653 (5th Cir.1999).

The LPLI policy at Section I provides in relevant part:

1.     If during the **Policy Year** of the Extended Reporting Period:

a.     **YOU** receive written or oral notice from any party that it is the intention of such party to hold **YOU** responsible for any WRONGFUL ACT(S); or

b.     YOU become aware of circumstance which could reasonably be expected to give rise to such notice.

Mr. Armando Villalobos
January 17, 2001
Page 3

then:

>YOU will tell us in writing as soon as practicable, but no later than the end of the **POLICY YEAR** or Extended Reporting Period....

Section J provides, in relevant part that:

1.    In the event of a **CLAIM**, the **NAMED INSURED** must give **US**, as soon as practicable, written notice of:

   a.    the specific **WRONGFUL ACT**; and

   b.    the injury or damage which has or may result from the **WRONGFUL ACT**; and

   c.    the names and addresses of the claimants or potential claimants; and

   d.    the circumstances by which **YOU** first became aware of such **WRONGFUL ACT**.

2.    If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

Section L. provides:

>Only the **Named Insured** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1.    One or more Extended Reporting Period(s) described below will be provided if the policy is canceled or nonrenewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2.    A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY YEAR** and lasts for thirty (30) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

Mr. Armando Villalobos
January 17, 2001
Page 4

Defined policy terms noted in bold, which apply, include:

7.       **NAMED INSURED** - means the person or organization named in Item 1 of the declarations.

9.       **POLICY YEAR** - means the period of one year following the effective date and hour of the this policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

16.      **YOU** and **YOUR** - means Insured and includes:

    a.     The **NAMED INSURED** and any **PREDECESSOR FIRM(S).**

    b.     The lawyer(s) named in the application that forms a part of this policy, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S).**

    c.     Any lawyer, partnership, professional corporation, professional association, limited liability corporation, or limited liability partnership:

       (1)    who becomes a partner, stockholder or employee of the **NAMED INSURED** during the **POLICY YEAR**, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED**....

    e.     Any non-lawyer employee or former non-lawyer employee but only for work done within the scope of their employment for the **NAMED INSURED** or **PREDECESSOR FIRM(S).**

Finally, from Section A of the LPLI policy, the insuring agreement provides that

WE will pay on **YOUR** behalf all sums which **YOU** become legally obligated to pay as **DAMAGES** and **CLAIM EXPENSE** as a result of **CLAIMS** first made against **YOU** and reported to US in writing during the **POLICY YEAR** or Extended Reporting Period, if applicable....

Mr. Armando Villalobos
January 17, 2001
Page 5

Turning to the time line for the facts in this case:

| | |
|---|---|
| 7/20/97 | Smith has auto accident |
| 9/27/97 | Villalobos signs Smith to legal representation contract |
| 11/26/97 | Kondos finds out Villalobos improperly entered contract with Smith |
| 12/1/97 | Kondos fires Villalobos; Villalobos and Smith enter mutual release |
| 3/10/00 | Underlying action settles at mediation |
| 9/18/99 | Kondos procures insurance from National Casualty Company |
| 9/18/00 | National Casualty Company policy lapses |
| 9/22/00 | Smith sues Kondos and Villalobos |
| 10/18/00 | Basic extended reporting period lapses |
| 11/20/00 | Villalobos tenders a defense to National Casualty Company. |

From the time line and plain language of the LPLI policy's terms, you are not an insured and you failed to give notice of the claim within the contracted for reporting period.

Under the insuring agreement, only someone defined as **YOU** receives the benefit of payment for damages and claims expenses. The LPLI policy defines **YOU** to include the named insured, Kondos, and lawyers listed on the application for insurance. Kondos terminated you more than 21 months before the LPLI policy was issued, and thus, you were not listed on the application. Accordingly, you cannot receive benefits under the LPLI policy.

Additionally, you did not give NCC notice of the Smith claim until late November, 2000, over one month after the basic extended reporting period had passed. As indicated in the case law above, the failure to provide notice within the terms of a claims made and reported policy bars coverage.

Because you are not an insured under the LPLI Policy and you failed to comply with the reporting requirements under the LPLI Policy, NCC has no duty to defend or indemnify you against the Smiths' claims. NCC must respectfully disclaim coverage.

NCC does not limit its right to assert limitations on coverage to the provisions set forth above. Rather, it reserves its rights to enforce any and all definitions, exclusions, limitations, other provisions contained in the policy, and under applicable common law. This letter should not be construed in any way, shape or form as a waiver by NCC of its rights to assert other defenses to coverage under the LPLI Policy regarding the Smiths' claims.

NCC also reserves the right to review any additional lawsuits or amendments to this lawsuit to make a separate determination as to whether either a defense, or indemnity, might be provided by the company. Our decision on coverage is based only on the facts presented in the suit papers referenced above and should not be construed as applicable to a new suit or an amendment to this

Mr. Armando Villalobos
January 17, 2001
Page 6

suit. Our right to have notice of either situation is reserved, as are the notice conditions of the policy.

If you have any questions, comments or objections to our coverage position, please contact us to advise.

Sincerely yours,

M. Forest Nelson

MFN/set
cc:     Lee E. Harrell

 CT System

**Service of Process Transmittal Form**
Dallas, Texas

02/04/2002

Via Federal Express (2nd Day)

685775-253

**TO:** Patricia R Hatler  1-35-03
Nationwide Mutual Insurance Company
One Nationwide Plaza
Columbus, OH 43215-2220

**RE:  PROCESS SERVED IN TEXAS**

**FOR**  National Casualty Company Domestic State: Wi

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. **TITLE OF ACTION:**  Armando R. Villalobos vs National Casualty Company

2. **DOCUMENT(S) SERVED:**  Citation; Pltf's Original Petition for Declaratory Judgment; Exhibits; Request for Disclosure

3. **COURT:**  103 JDC Cameron Co., TX
Case Number 200201000147D

4. **NATURE OF ACTION:**  Alleging deft. denied coverage to pltf's residence.

5. **ON WHOM PROCESS WAS SERVED:**  CT Corporation System, Dallas, Texas

6. **DATE AND HOUR OF SERVICE:**  By Process server on 02/04/2002 at 10:10

7. **APPEARANCE OR ANSWER DUE:**  10:00 a.m. Monday next after expiration of 20 days; Disclosure - Within 50 days

8. **ATTORNEY(S):**  Geoff J. Henley
Henley & Henley PC
2205 N. Henderson Avenue
Dallas, TX 75206-6002

9. **REMARKS:**

**RECEIVED**

FEB - 7 2002

**CLAIMS LEGAL**

SIGNED  CT Corporation System

PER
ADDRESS  Shirley A. Dillon
350 North St. Paul Street
Dallas, TX 75201
SOP WS 0004238750

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

Case 1:02-cv-00033   Document 1   Filed in TXSD on 02/21/2002   Page 29 of 32

Citation for Personal Service - <u>NON-RESIDENT NOTICE</u>      Lit. Seq. # <u>5.002</u> <u>01</u>

(01-7

No. <u>2002-01-000147-D</u>

10.10

T H E    S T A T E    O F    T E X A S

LPO 0011445
685775-253

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: <u>NATIONAL CASUALTY COMPANY</u>
    <u>SERVING ITS REGISTERED AGENT</u>
    <u>C.T. CORPORATION</u>
    <u>350 N. ST. PAUL</u>
    <u>DALLAS, TEXAS 75201</u>

the _____ <u>DEFENDANT</u> _____, GREETING:

You are commanded to appear by filing a written answer to the

<u>PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT</u>

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court <u>103rd</u> Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas. Said _____ <u>PETITION</u> _____ was filed on <u>JANUARY 10, 2002</u>. A copy of same accompanies this citation.

The file number of said suit being No. <u>2002-01-000147-D</u>.

The style of the case is:

<u>ARMANDO VILLALOBOS</u>
<u>VS.</u>
<u>NATIONAL CASUALTY COMPANY</u>

Said petition was filed in said court by _____ <u>GEOFF J. HENLEY</u>
(Attorney for _____ <u>PLAINTIFF</u> _____), whose address is
<u>2205 N. HENDERSON AVENUE DALLAS, TEXAS 75206-6002</u>.

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the <u>23rd</u> day of <u>JANUARY</u>, A.D. <u>2002</u>.

**Henley & Henley, P.C.**
**2205 North Henderson Avenue**
**Dallas, Texas 75206**
**(214) 821-0222**
**Fax (214) 821-0124**

February 7, 2002

FILED
AURORA DE LA GARZA, DIST CLERK

FEB 12 2002

DISTRICT COURT OF CAMERON COUNTY TEXAS

Cameron County Courthouse
Clerk of the 103rd District Court
974 East Harrison
Brownsville, TX 78520

Re:   **Cause No.: 2002-01-147D,  *Armando R. Villalobos`vs. National Casualty Insurance Company***

Dear Clerk:

Enclosed please find our firm check in the amount of $4.00, for issuance of a citation on National Insurance Company.

Please return the citation to me in the self addressed stamped envelope that I have provided.

Sincerely,

Henley & Henley, P.C.

Amber Cecil
Paralegal

```
*  *  *  C L E R K ' S   E N T R I E S   *   *   *    *         2002-01-000147-D

                                                                              PAGE: 01

                                                (.0)                01        10      02

        00604601
        GEOFF J. HENLEY
        2205 N. HENDERSON AVENUE
        DALLAS, TEXAS        75206 6002

                                        DECLARATORY JUDGMENT


                      01/10/02  ORIGINAL PETITION FILED
                      01/23/02  CITATION: NATIONAL CASUALTY COMPANY
                      01/23/02      SERVED:
                      02/15/02  CITATION: NATIONAL CASUALTY COMPANY
                      02/15/02      SERVED:
```

LOBOS

COMPANY

## LIST OF COUNSEL OF RECORD

1.   Armando R. Villalobos' counsel

Geoff J. Henley
Henley & Henley, P.C.
2205 N. Henderson Avenue
Dallas, Texas 75206-6002
(214) 821-0222
(214) 821-0124: telefax

2.   National Casualty Company's counsel

M. Forest Nelson
Burt Barr & Associates, L.L.P.
304 S. Record St.
Dallas, Texas 75202
(214) 742-8001
(214) 741-6744: telefax