IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 0 7 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARMANDO R. VILLALOBOS | § | |
| | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION |
| VS. | § | NO. B-02-033 |
| | § | |
| | § | |
| NATIONAL CASUALTY COMPANY | § | |

<u>PLAINTIFF'S MOTION FOR REMAND AND SUPPORTING MEMORANDUM</u>

Plaintiff files this motion to remand under 28 U.S.C. § 1447(c).

<u>I. Introduction</u>

1.    Plaintiff is Armando R. Villalobos an attorney in private practice in
      Brownsville, Texas.

2.    Defendant National Casualty Company is a non-resident corporation
      organized under the laws of Wisconsin with a principal place of
      business in Scottsdale, Arizona.

3.    On January 10, 2002, Plaintiff sued Defendant in State District
      Court in Cameron County, Texas.

4.    Defendant has been served with process and has filed an answer and
      on or about February 19, 2002, filed an action to remove this cause.

5.    In the state district court in Cameron County, Plaintiff  Villalobos
      filed  a  Declaratory  Judgment  Action  to  interpret  a  legal
      malpractice  insurance  policy  for  malpractice  defense  and
      indemnity  for  a  malpractice  action  set  for  trial  on  April 1, 2002.

*Exhbit 1.* The parties essential to this litigation include the named insured of the policy, Carol Kondos, P.C. of Dallas, Texas, and the registered agent, U.S. Risk Underwriters, Inc. of Austin, Texas.

## II. Argument

6.  The Court may remand a case on the basis of any defect identified in a motion for remand made within 30 days after the filing of the notice of removal. 28 U.S.C. §§ 1446(a); 1447(c).

7.  This Court should remand this case to the original state court because

    A.  this lawsuit does not involve a federal question. 28 U.S.C. § 1447(c). *International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 89, 111 S.Ct. 1700, 1710 (1991).

    B.  the parties are not diverse. Specifically, two additional parties who were not named in Plaintiff's Original Petition filed in the 103rd State Judicial District Court, are resident corporations of the State of Texas. These non-diverse parties are indispensable and necessary to this litigation. Specifically, the parties are the named insured and the agent for insurer. Each of these parties, either by intentional or negligent acts or omissions, may have prevented Plaintiff from providing the necessary notice to Defendant insurer.

    C.  Plaintiff may properly joined these parties who are potentially liable for impairing Plaintiff's right to receive

insurance coverage by their acts or omissions. *See*

*Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999).

D.    At the time of the removal filed by Defendant National

Casualty Company, the pleadings filed by Plaintiff did not

state an amount of $75,000.00 or more.

E.    Defendant waived its right to remove this action by requesting

affirmative relief from the state court. *See Johnson v.*

*Heublein, Inc.* 227 F.3d 236, 244 (5th Cir. 2000). Specifically,

Defendant requested for the following affirmative relief:

    i.    To have the trial court declare that National Casualty

has no duty to defend or indemnify Plaintiff;

    ii.    Attorney's fees for the costs of answering the action;

and

    iii.    such further relief as Defendant may be entitled.

### III.  Conclusion

For these reasons, Plaintiff asks the court to grant the motion to remand,

remand this suit to the state court where it was originally filed, and award Plaintiff

its court costs, expenses and attorneys' fees.

Respectfully submitted,

Henley & Henley, P.C.

Geoff J. Henley
State Bar No. 00798253
2205 N. Henderson Avenue
Dallas, Texas 75206-6002
214/821-0222 (Telephone)
214/821-0124 (Facsimile)

ATTORNEYS FOR PLAINTIFF
ARMANDO R. VILLALOBOS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered via certified mail return receipt requested to Defendant's counsel, BURT BARR & ASSOCIATES, L.L.P., Mr. M. Forest Nelson, 304 South Record Street, Dallas, Texas 75202-4793 in accordance with the Federal Rules of Procedure.

GEOFF J. HENLEY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARMANDO R. VILLALOBOS          §
                               §
                               §
                               §
                               §          CIVIL ACTION
VS.                            §          NO. B-02-033
                               §
                               §
NATIONAL CASUALTY COMPANY      §

## ORDER ON PLAINTIFF'S MOTION FOR REMAND

After considering Plaintiff Armando R. Villalobos' Motion to Remand and Supporting Memorandum, the notice of removal, the Court

**SETS THIS MATTER FOR HEARING ON** _____ **AT** _____ **A.M./P.M.**

**FINDS that the action was improperly removed to this court because**

    **A. Defendant National Casualty sought affirmative relief from the state trial court and waived its removal rights;**

    **B. Defendant failed to establish that the amount in controversy was $75,000.00 or more;**

    **C. Necessary and indispensable Texas citizens have been or may be properly joined in this action.**

**REMANDS this case to the 103rd Judicial District Court.**

**ORDERS that Defendant, National Casualty Company, pay Plaintiff's court costs, expenses and attorney's fees related to this removal action.**

**SIGNED ON** _____, 2002.


_____
**U.S. DISTRICT JUDGE**

CAUSE NO. 2002-01-147-D

| ARMANDO R. VILLALOBOS | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | 103rd JUDICIAL DISTRICT |
| | § | |
| | § | |
| NATIONAL CASUALTY COMPANY | § | CAMERON COUNTY, TEXAS |

PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ARMANDO R. VILLALOBOS and files this Plaintiff's Original Petition for Declaratory Judgment complaining of NATIONAL CASUALTY COMPANY (hereafter referred to as "Defendant"), and would respectfully show to the Court the following:

I.

DISCOVERY CONTROL PLAN

Pursuant to Rule 190.3 of the Texas Rules of Civil Procedure, Plaintiff requests a Level II discovery control plan.

II.

REQUEST FOR DISCLOSURE

Pursuant to Rules 190.3 and 194 of the Texas Rules of Civil Procedure and 190.3 of the Texas Rules of Civil Procedure, Plaintiff requests Defendant to disclose, within fifty (50) days of service of this request, the information and material described in Rule 194.2 of the Texas Rules of Civil Procedure. Plaintiff specifically requests the responding party to produce responsive documents at the undersigned law offices within fifty (50) days of service of this request.

III.

## PARTIES

1. Plaintiff resides in Cameron County, Texas .

2. Defendant NATIONAL CASUALTY COMPANY, is a non-resident insurance company, engaged in business in the State of Texas, but organized under the laws of the State of Wisconsin, and maintains a principal place of business at 8877 North Gainey Center Drive, Scottsdale, Arizona, 85258 and may be served by serving its registered agent for process, C.T. Corporation, 350 N. St. Paul, Dallas, Texas 75201.

IV.

## VENUE AND JURISDICTION

Venue in this case is proper in Cameron County, Texas, because acts giving rise to this action occurred there and because Plaintiff resides there as well.

This Court has subject matter jurisdiction over this case, because the amount in controversy for the exclusive of costs and interest is within the jurisdictional limits of this Court.

V.

## FACTS

During the fall of 1997, Plaintiff worked as an attorney for Kondos & Kondos, P.C. a personal injury firm in Dallas, Texas.   While employed, Kondos & Kondos supervisors assured him the firm's professional liability policy would cover him against third party claims.  Defendant NATIONAL CASUALTY COMPANY is a professional liability carrier currently providing coverage for Kondos & Kondos in a legal malpractice case that forms the basis for this Declaratory Judgment action.  *Exhibit A.*  NATIONAL CASUALTY COMPANY provides not only malpractice defense and indemnity coverage, but defense

coverage for state bar disciplinary actions and will pay stipends for covered persons to attend hearings and trials and other contested matters. *Exhibit A*, at 2.

During August and September of 1997, Kondos & Kondos received several phone calls from a Lucy Smith, who sought legal advice for resolving an auto accident injury claim. For a variety of reasons, Ms. Smith eventually contracted with Plaintiff to represent her in the automobile case on September 27, 1997. When Kondos & Kondos learned of this attorney-client relationship, the firm fired Plaintiff on December 1, 1997 and had Ms. Smith sign a second contract with the firm on or about November 27, 1997.

From these dates forward, Plaintiff neither worked for Kondos & Kondos nor Lucy Smith.

During the months that followed, Kondos & Kondo continued to represent Ms. Smith in the accident case. While Kondos & Kondos pursued Smith's auto claim, the firm initiates a civil suit against Plaintiff for breach of fiduciary duty and commences a disciplinary action with the State Bar of Texas. A jury in Cameron County, Texas ultimately heard the disciplinary action.

In the interim, Kondos & Kondos continued to represent Ms. Smith in the underlying automobile case, which eventually settled in a mediation for $97,500.00. In the days that followed, Ms. Smith learned that her claims against her Uninsured Motorist policy may have been prejudiced by the settlement. She subsequently filed suit against Kondos & Kondos and several of its individual attorneys, including Plaintiff. In the suit, Ms. Smith asserts that Plaintiff committed a variety of tortious acts both in his individual capacity and as an agent or employee of Kondos & Kondos.

While the professional liability policy was in force, Carol Kondos, Defendant's named insured, turned over the pleadings, which named Kondos & Kondos, its partners and associates, including Plaintiff. Subsequently, Defendant assumed the defense for all

defendants in the malpractice suit, except Plaintiff.

By this time, Plaintiff had already moved back to his home in the Rio Grande Valley. When Plaintiff learned about the lawsuit, he notified Defendant and requested that the carrier provide indemnity and defense coverage. On or about January 17, 2001, Defendant sent a certified letter denying coverage to Plaintiff's residence, asserting that Plaintiff had not provided timely notice of the claim. *Exhibit B.*

VI.

## DECLARATORY RELIEF

Plaintiff is affected by the Defendant's construction of this insurance contract. Plaintiff thus requests the Court to declare its rights under the contract, pursuant to Section 37.004 of the Texas Civil Practices and Remedies Code.

VII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein and upon final hearing of this cause. At the conclusion of said hearing, Plaintiff requests that the Court order and declare that:

1.  the Defendant provide indemnity coverage for Plaintiff in the malpractice action;

2.  the Defendant provide or assume the defense for Plaintiff;

3.  the Defendant pay past attorney's fees already accrued in Plaintiff's defense

4.  the Defendant pay the attorney's fees required to defend his grievance action;

5.  the Defendant pay future attorney's fees;

6.  the Defendant pay reasonable attorney's fees for the prosecution of this

Decalaratory Judgment action,

7.     The Defendant pay all stipends accrued by Plaintiff during the course of all

       the preceding actions; and

8.     the Defendant pay pre-judgment and post-judgment interest.


Respectfully submitted,

Henley & Henley, P.C.

Geoff J. Henley
State Bar No. 00798253
2205 N. Henderson Avenue
Dallas, Texas 75206-6002
214/821-0222 (Telephone)
214/821-0124 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**
**ARMANDO R. VILLALOBOS**

EXHIBIT A

# National Casualty Company

Property/Casualty Division

8877 North Gainey Center Drive • Scottsdale, Arizona 85258

A STOCK COMPANY

# Lawyers Professional Liability Insurance

## Claims Made And Reported Policy

THESE POLICY PROVISIONS, WITH THE APPLICATION, DECLARATIONS AND ENDORSEMENTS, IF ANY,
ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

# LAWYERS PROFESSIONAL LIABILITY INSURANCE
## CLAIMS MADE AND REPORTED POLICY

## National Casualty Company
### Property/Casualty Division
### Scottsdale, Arizona

A Stock Insurance Company, herein called the Company

By acceptance of this policy, the **NAMED INSURED** agrees to act on **YOUR** behalf with respect to:

1. exercising the option to purchase an Extended Reporting Period;

2. the giving and receiving of notice of **CLAIM(S)** or cancellation; and

3. the payment of premiums that may become due under this policy.

Each of **YOU** agree that the **NAMED INSURED** will act on **YOUR** behalf.

## A. INSURING AGREEMENT

**WE** will pay on **YOUR** behalf all sums which **YOU** become legally obligated to pay as **DAMAGES** and **CLAIM EXPENSE** as a result of **CLAIMS** first made against **YOU** and reported to **US** in writing during the **POLICY YEAR** or Extended Reporting Period, if applicable, provided that:

1. the **WRONGFUL ACT** giving rise to the **CLAIM** occurred on or after the **PRIOR ACTS DATE** shown in Item 3. of the Declarations; and

2. notice of the **WRONGFUL ACT** was not given nor required to be given to any prior insurer; and

prior to the inception date of the first policy issued to **YOU** by **US** and continuously renewed by **US**, **YOU** had no reasonable basis to believe that such **WRONGFUL ACT** had been committed or that a **CLAIM** would be made against **YOU** alleging such **WRONGFUL ACT**.

## B. DEFENSE

**WE** have the right and duty to defend any suit against **YOU** seeking **DAMAGES** because of a **WRONGFUL ACT** even if any of the allegations in the suit are groundless, false or fraudulent. **WE** have the right to appoint counsel and investigate any **CLAIM** or suit. However, **WE** will not settle or compromise a **CLAIM** or suit without **YOUR** written consent. If consent is refused and **YOU** elect to contest the **CLAIM** or continue legal proceedings, then **OUR** liability for the **CLAIM** will not exceed the amount for which the **CLAIM** could have been settled, plus **CLAIM EXPENSE** incurred up to the date of **YOUR** refusal.

If the allegation(s) is excluded under this policy, there shall be no duty to defend such **CLAIM**.

**WE** are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any suit after the applicable limits of **OUR** liability have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE**.

**WE** have the right, but no duty, to appeal any judgment.

LP-J-1 (12-96)

**YOU**, except at **YOUR** own cost and for **YOUR** own account, will not:

1. make any payment;

2. admit any liability;

3. settle any **CLAIM**;

4. assume any obligation; or

5. incur any expense

without **OUR** written consent.

## C. SUPPLEMENTAL PAYMENTS

**WE** will pay, in addition to **OUR** Limits of Liability:

1. All costs taxed against **YOU** in any suit **WE** defend.

2. Interest only on that part of any judgment which does not exceed **OUR** Limit of Liability, which accrues after the entry of the judgment and before **WE** have paid, offered to pay, or deposited in court that part of the judgment that does not exceed **OUR** Limit of Liability.

3. Premium on appeal bonds required in any suit **WE** defend and the cost of attachment or similar bonds.

4. Up to $10,000 during the **POLICY YEAR** in:

   a. expenditures for legal services charged by a lawyer **WE** designate; and

   b. other expenses **WE** incur in the investigation and defense of **DISCIPLINARY PROCEEDING(S)** brought against **YOU**.

   Notice of the **DISCIPLINARY PROCEEDING(S)** must be reported to **US** in writing during the **POLICY YEAR** and must arise out of a **WRONGFUL ACT(S)** that is otherwise covered by this policy. The **DEDUCTIBLE** will not apply to the **expenditures WE** incur under this provision.

5. Up to $500 to each of **YOU** for each day or part of the day for **YOUR** attendance at a trial, hearing or arbitration proceeding at which **WE** request **YOUR** attendance. The maximum amount payable by **US** during the **POLICY YEAR** shall not exceed $5,000 in the aggregate. The **DEDUCTIBLE** provision of this policy will not apply to the **expenditures WE** incur under this provision.

## D. TERRITORY

This policy applies to **WRONGFUL ACTS** which happen anywhere in the world, provided the **CLAIM** is made and the suit is brought within the United States and its territories or Canada.

## E. DEFINITIONS

Whenever used in this policy, the following words have these meanings:

1. **CLAIM(S)**—means an oral or written notice from any party that it is their intention to hold **YOU** responsible for any **WRONGFUL ACT** in performing legal, arbitration, mediation, title agent or notary services. **CLAIM** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such notice; provided **YOU** tell us in writing of such circumstances during the **POLICY YEAR**. Notice includes, but is not limited to, service of suit or institution of arbitration proceedings.

2. **CLAIM EXPENSE**—means expenditures including, but not limited to:

   a. legal services charged by a lawyer(s) **WE** designate;

   b. costs of investigations;

   c. experts;

   d. court costs; and

   e. other similar expenses **WE** incur in the investigation, adjustment, defense or appeal of a **CLAIM** or suit.

   **CLAIM EXPENSE** does not include:

   (1) Salary, charges or expenses of **OUR** regular employees.

   (2) Payments made under the Supplemental Payments provision of this policy.

3. **DAMAGES**—means a monetary judgment, award or settlement.

   **DAMAGES** do not include:

a. Civil or criminal fines, sanctions, restitution or penalties, whether pursuant to any civil or criminal law or statute, including, but not limited to, awards under Federal Rule(s) of Civil Procedure, Rule 11 or a similar state law or statute;

b. Amounts paid to YOU as fees, costs or expenses for legal, arbitration, mediation, title agent or notary services performed which are to be reimbursed or discharged as a part of the judgment or settlement;

c. Punitive damages, exemplary damages or any damages which are a multiple of compensatory damages awarded against YOU, including double or treble damages. However, WE will provide limited coverage to YOU to pay for punitive damages, exemplary damages or any damages which are a multiple of compensatory damages at a maximum Limit of Liability of:

   (1) $250,000   Each CLAIM
       $250,000   Annual Aggregate; or

   (2) the Each CLAIM Limit and Annual Aggregate Limit shown in the Declarations,

whichever is less.

The Limit of Liability referenced in (1) or (2) above for Each CLAIM is the maximum limit WE will pay for all punitive damages, exemplary damages or any damages which are a multiple of compensatory damages arising out of each CLAIM. The Limit of Liability referenced in (1) or (2) above for Annual Aggregate is the maximum limit WE will pay for all punitive damages, exemplary damages or any damages which are a multiple of compensatory damages during each POLICY YEAR.

Payment for these damages will only be made in conjunction with a CLAIM that is otherwise covered by this policy. Any payments made by US under this provision will be included within the applicable Limit of Liability and not in addition to the policy limits.

d. Any costs assessed against YOU as the result of a DISCIPLINARY PROCEEDING.

4. **DEDUCTIBLE**—means the amount YOU must pay for **DAMAGES** and **CLAIM EXPENSE**.

5. **DISCIPLINARY PROCEEDING(S)**—means any proceeding brought against YOU by a state or other regulatory or disciplinary official or agency to investigate charges alleging professional misconduct in performing legal services.

6. **IMMEDIATE FAMILY**—means YOUR parents, wife or husband, children, brothers and sisters.

7. **NAMED INSURED**—means the person or organization named in Item 1. of the Declarations.

8. **PERSONAL INJURY**—means injury arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution and abuse of process;

   c. Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication of material that violates a person's right of privacy.

9. **POLICY YEAR**—means the period of one year following the effective date and hour of this policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

10. **PREDECESSOR FIRM(S)**—means any lawyer, law firm or professional legal corporation engaged in the practice of law in whose financial assets and liabilities the **NAMED INSURED** is the majority successor in interest. An assumption of 50% or greater of the firm's assets and liabilities shall be considered a majority interest.

11. **PRIOR ACTS DATE**—means the date specified in Item 3. of the Declarations. This policy shall not apply to any CLAIM arising from a WRONGFUL ACT which occurred prior to this date. If the term UNLIMITED is specified in Item 3. of the Declarations, it means that there is no time limitation of coverage for YOU based upon when the WRONGFUL ACT occurred.

LP-J-1 (12-96)

12. **SUBROGATION EXPENSES**—means expenditures including, but not limited to:

   a.  legal services charged by a lawyer(s) WE designate;

   b.  costs of investigations;

   c.  experts;

   d.  court costs; and

   e.  other similar expenses WE incur in the subrogation process.

13. **TOTALLY AND PERMANENTLY DISABLED**—means total and continuous disability for at least six consecutive months as a result of sickness or accidental bodily injury which renders YOU unable to render legal, arbitration, mediation, title agent or notary services for others.

14. **WE, US,** and **OUR**—means the Company providing this insurance.

15. **WRONGFUL ACT(S)**—means any actual or alleged negligent act, error, omission or **PERSONAL INJURY** YOU or any person or entity for whom YOU are legally responsible commit, but only in the performance of legal, arbitration, mediation, title agent or notary services for or on behalf of the **NAMED INSURED** or any **PREDECESSOR FIRM(S)**, or while participating as a member, director or officer of a professional bar association. This also includes services rendered by YOU in an attorney-client relationship as a trustee, administrator, conservator, executor, guardian, receiver or similar fiduciary capacity.

16. **YOU** and **YOUR**—means Insured and includes:

   a.  The **NAMED INSURED** and any **PREDECESSOR FIRM(S)**.

   b.  The lawyer(s) named in the application that forms a part of this policy, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   c.  Any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership:

     (1)  Who becomes a partner, stockholder or employee of the **NAMED INSURED** during the **POLICY YEAR**, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED**.

     (2)  Who was formerly a partner, stockholder or employee of the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   d.  Retained Of Counsel listed in the application that forms part of this policy, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their association with and under the name of the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   e.  Any non-lawyer employee or former non-lawyer employee but only for work done within the scope of their employment for the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   f.  The estate, heirs, executors, administrators, assigns and legal representatives of anyone listed in a., b., c., d. or e. above in the event of their death, incapacity, insolvency or bankruptcy, but only to the extent that they would otherwise be provided coverage under this policy.

---

## F.  EXCLUSIONS

This policy does not apply:

1.  To any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by YOU;

2.  To any **CLAIM** arising out of bodily injury, sickness or death of any person or damage to or loss of any tangible property, except that this exclusion does not apply to mental illness, emotional distress or humiliation if solely resulting from covered legal or notary services;

3.  To any **CLAIM** based on or arising out of YOUR capacity as:

   a.  an officer, director, partner, shareholder or employee of any entity other than the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**;

b. a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments, or similar provisions of any state statutory law or common law, except if YOU are deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan;

c. a public official or an employee of a governmental body, subdivision or agency; or

d. a beneficiary or distributee of any trust or estate.

4. To any CLAIM arising out of legal services or advice rendered by YOU in connection with any business enterprise not shown on the Declarations:

a. which is, was or will be owned in whole or in part by YOU or any member of YOUR IMMEDIATE FAMILY;

b. which is, was or will be in any way controlled, operated or managed by YOU or any member of YOUR IMMEDIATE FAMILY including the ownership, maintenance or use of any property in connection therewith; or

c. in which YOU or any member of YOUR IMMEDIATE FAMILY is, was or will be a partner or employee;

This exclusion does not apply if, at the time that such legal service or advice was rendered, the NAMED INSURED or any insured, separately or in combination, or any IMMEDIATE FAMILY member had a total pecuniary or beneficial interest of 10% or less in such business enterprise.

5. To any CLAIM arising out of any circumstances due to nuclear reaction, radiation or contamination, regardless of cause;

6. To any CLAIM arising from notarized certification or acknowledgment of a signature without the physical appearance before such notary public of the person who is or claims to be the person signing such instrument;

7. To any CLAIM based on or arising out of discrimination, harassment or misconduct by YOU, including but not limited to CLAIMS based on an individual's race, creed, color, age, sex, national origin, religion, disability, physical or mental handicap, disease, marital status or sexual preference;

8. To any CLAIM made by YOU against any other Insured unless such CLAIM arises out of legal services provided in a lawyer-client relationship;

9. To any CLAIM for which YOU are liable or YOU may be held liable for the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or any other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

## G. INNOCENT INSURED PROTECTION

Whenever coverage under any provision of this policy would otherwise be excluded, suspended, or lost because of:

1. Section F. Exclusion 1. relating to any CLAIM based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional WRONGFUL ACT(S) committed by YOU; or

2. concealment of a CLAIM by any of YOU,

WE agree that the coverage as would be afforded by this policy will apply to each of YOU who did not personally commit or participate in the WRONGFUL ACT(S) or agree to the concealment.

For coverage to apply, YOU must notify US of the WRONGFUL ACT(S) or concealment as soon as YOU become aware of them.

## H. LIMITS OF LIABILITY

Regardless of:

a. the number of YOU who are insured under the policy;

b. all persons or organizations who sustain DAMAGES payable under this policy; and/or

c. suits brought on account of coverage afforded by the policy,

LP-J-1 (12-96)

OUR liability is limited as follows:

1. The Limit of Liability stated in Item 4. (A) of the Declarations page is the limit of OUR liability for all DAMAGES and CLAIM EXPENSE arising out of each CLAIM first made and reported in writing during the POLICY YEAR or Extended Reporting Period.

2. The Limit of Liability stated in Item 4. (B) of the Declarations page is subject to the above provision respecting Each CLAIM and is the maximum limit of OUR liability for each POLICY YEAR. In no event will OUR total Limit of Liability be increased by any Extended Reporting Period.

3. CLAIM EXPENSE will be subtracted from the Limits of Liability first as it is incurred for each CLAIM. The remaining amount will be the amount available to pay DAMAGES.

4. Subject to the Limits of Liability, WE will only be liable to pay DAMAGES and CLAIM EXPENSE in excess of the DEDUCTIBLE shown in this policy. YOUR DEDUCTIBLE for all DAMAGES and CLAIM EXPENSE in any POLICY YEAR is the Annual Aggregate amount shown in Item 5. of the Declarations. Each of YOU under the policy is individually liable for the payment of the DEDUCTIBLE. In the event that WE expend funds for DAMAGES or CLAIM EXPENSE on YOUR behalf, YOU will reimburse US for such expenditures up to the amount of the DEDUCTIBLE shown in this policy. Reimbursement of the DEDUCTIBLE will be due within sixty (60) days from the date WE bill YOU.

5. One or more CLAIMS based on or arising out of the same WRONGFUL ACT(S) or a series of related WRONGFUL ACT(S) of one or more of YOU will be considered a single CLAIM. The CLAIM will be subject to the Limit of Liability in effect at the time such CLAIM was first reported in writing to US. Only one DEDUCTIBLE will apply to such CLAIM.

## I. NOTIFICATION

1. If during the POLICY YEAR or the Extended Reporting Period:

    a. YOU receive written or oral notice from any party that it is the intention of such party to hold YOU responsible for any WRONGFUL ACT(S); or

    b. YOU become aware of circumstances which could reasonably be expected to give rise to such notice,

    then:

    YOU will tell us in writing as soon as practicable, but no later than the end of the POLICY YEAR or Extended Reporting Period. Any subsequent CLAIM made against YOU arising out of such WRONGFUL ACT(S) shall be deemed to have been made during the POLICY YEAR or Extended Reporting Period. No coverage for such CLAIM shall exist under any subsequent policy written by US.

2. In the event of any CLAIM occurring hereunder, written notice to US will be given by the person or firm(s) shown under Item 1. of the Declarations. Notice will be deemed to be received if sent by prepaid mail properly addressed to the address shown in Item 7. of the Declarations.

3. When WE receive YOUR written notice and WE, at OUR discretion, incur CLAIM EXPENSE to undertake measures to avoid any DAMAGES as a result of the reported WRONGFUL ACT, WE will waive the applicable DEDUCTIBLE.

    However, the DEDUCTIBLE will always apply if a suit is filed, if arbitration hearings are begun or if any DAMAGES are paid.

## J. INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUIT

1. In the event of a CLAIM, the NAMED INSURED must give US, as soon as practicable, written notice of:

    a. the specific WRONGFUL ACT; and

    b. the injury or damage which has or may result from the WRONGFUL ACT; and

    c. the names and addresses of the claimants or potential claimants; and

    d. the circumstances by which YOU first became aware of such WRONGFUL ACT.

2. If CLAIM is made or suit is brought against YOU, YOU will immediately forward to US every demand, notice, summons or other process received by YOU or YOUR representative.

3. WE will have full discretion in the handling of any **CLAIM**, and YOU will give full information and assistance as **WE** may reasonably require. YOU will cooperate with **US** and, at **OUR** request, consent to being examined and questioned by **OUR** representative, under oath, if necessary. At **OUR** request, YOU will attend hearings, depositions and trials and will assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. YOU will cooperate in the conduct of suits as well as in giving written statements to **OUR** representatives and defense counsel.

## K.  EXTENSION OF COVERAGE

If the **NAMED INSURED** dies during the **POLICY YEAR**, the period for reporting **CLAIMS** is extended until the executor or administrator is discharged or for twenty-four (24) months from the date of death, whichever is less. If the **NAMED INSURED** has been insured by US for at least three (3) consecutive years immediately prior to this **POLICY YEAR** and becomes **TOTALLY AND PERMANENTLY DISABLED** during the **POLICY YEAR**, the period for reporting **CLAIMS** is extended until the disability ends. No additional premium will be charged for this extension nor will any premium be refunded.

## L.  EXTENDED REPORTING PERIOD

Only the **NAMED INSURED** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1. One or more Extended Reporting Period(s) described below will be provided if the policy is canceled or nonrenewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY YEAR** and lasts for thirty (30) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

3. In addition, the **NAMED INSURED** may purchase one of the Supplemental Extended Reporting Periods described below if YOU are in compliance with the terms and conditions of this policy:

   a. A twelve (12) month Supplemental Extended Reporting Period for 100% of the full annual premium of this policy; or

   b. A twenty-four (24) month Supplemental Extended Reporting Period for 150% of the full annual premium of this policy; or

   c. A thirty-six (36) month Supplemental Extended Reporting Period for 185% of the full annual premium of this policy; or

   d. A sixty (60) month Supplemental Extended Reporting Period for 250% of the full annual premium of this policy; or

   e. An unlimited Supplemental Extended Reporting Period for 300% of the full annual premium of this policy.

4. Coverage for a Supplemental Extended Reporting Period must be added by endorsement for which an additional premium charge must be paid. Such period starts (30) days after the end of the POLICY YEAR.

5. The right to purchase a Supplemental Extended Reporting Period will terminate unless:

   a. **WE** receive a written request for a Supplemental Extended Reporting Period; and

   b. the additional premium is paid

   within thirty (30) days of the end of the POLICY YEAR.

   The **NAMED INSURED'S** request must specify the length of the Supplemental Extended Reporting Period desired. Once in effect, extended reporting periods may not be canceled.

6. An Extended Reporting Period does not extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the policy's terms, Limits of Liability, Exclusions and Conditions, the policy is extended to apply to **CLAIMS** first made against YOU and reported to US in writing during the Basic Extended Reporting Period or, if purchased, the Supplemental Extended Reporting Period, but only for **CLAIMS**

LP-J-1 (12-96)

due to WRONGFUL ACT(S) which happened on or after the PRIOR ACTS DATE and on or before the expiration of the POLICY YEAR.

7. Extended Reporting Periods do not reinstate or increase the policy's Limits of Liability. CLAIMS which are first made and reported during the Basic Extended Reporting Period or the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the POLICY YEAR.

## M. CONDITIONS

1. **ASSIGNMENT.** Assignment of interest under this policy will not bind US unless WE endorse the policy in writing assigning YOUR interest to another party.

2. **CANCELLATION.** This policy may be canceled by the NAMED INSURED by surrendering the policy to US or any of OUR authorized agents or by mailing written notice to US stating when the cancellation is to be effective. WE may cancel this policy by mailing to the NAMED INSURED at the address shown on the Declarations a written notice stating when the cancellation is to be effective. WE will give the NAMED INSURED ten (10) days notice for non-payment of premium or sixty (60) days notice for any other valid reason.

The mailing of notice will be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the POLICY YEAR. Delivery of written notice either by the NAMED INSURED or by US will be equivalent to mailing.

If this policy is canceled, WE will send the NAMED INSURED any premium refund due. If WE cancel, the refund will be pro rata. If the NAMED INSURED cancels, the refund will be the customary short rate proportion. WE will make the premium refund as soon as practicable after the date of cancellation. However, the premium refund is not a condition of cancellation.

Notice of cancellation will only be sent to the NAMED INSURED and will serve as notice to all of YOU.

3. **NONRENEWAL.** If WE do not renew this policy, WE will mail written notice to the NAMED INSURED at least sixty (60) days before the end of the POLICY YEAR. Any changes in the terms and conditions quoted on renewal do not constitute nonrenewal of this policy.

4. **CHANGES.** The terms of this policy will not be waived or changed except by endorsement issued by US and made a part of this policy.

5. **MERGERS AND ACQUISITIONS.** All mergers and acquisitions with other firms occurring throughout the POLICY YEAR must be reported to US in writing within 60 days of the merger or acquisition, or the next anniversary of this policy, whichever is sooner. WE shall have the right to adjust the premium, terms, conditions and exclusions to reflect any shift in exposure created by such merger or acquisition.

6. **CONFLICTING STATUTES.** Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.

7. **SUBROGATION CLAUSE.** YOU will transfer to US YOUR rights of recovery against any other party for any DAMAGES WE have paid on YOUR behalf. YOU must do everything necessary to secure these rights and do nothing that would jeopardize them.

WE will not exercise OUR right to recover against any of YOU unless the DAMAGES result from any dishonest, fraudulent, criminal, malicious or intentional WRONGFUL ACT(S) committed by YOU.

Any amount recovered from subrogation shall be apportioned as follows:

Any amount recovered shall first, be used for repayment of SUBROGATION EXPENSES; second, to any DAMAGES and/or CLAIM EXPENSE paid by US; third, to any DAMAGES and CLAIM EXPENSE paid by an excess insurer on YOUR behalf; fourth, to any DAMAGES and CLAIM EXPENSE paid by any other primary insurer on YOUR behalf; and last, to repayment of YOUR DEDUCTIBLE.

8. **SEVERABILITY CLAUSE.** The application and any supplements or addendums, copies of which are attached to this policy, and the Declarations, are the basis of this policy. They are to be considered as incorporated in and constituting part of this policy. The particulars and statements contained in the application and any supplements or addendums and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of YOU. Nothing in this provision will be construed to increase OUR Limits of Liability as set forth in Item 4. of the Declarations.

WE will be in excess of the amount applicable DEDUCTIBLE and any other valid and collectible insurance whether such other insurance is primary, pro rata, contributory, excess, contingent or any other basis, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this policy.

If a loss occurs involving two or more policies, each of which provides that its insurance will be excess, then each policy will contribute on a pro rata basis. This means that WE will pay no more than OUR percentage of the total amount of the insurance covering the CLAIM, less the DEDUCTIBLE. For example:

The limit of coverage under this policy is $100,000. Another insurance policy with a limit of $300,000 also

more than 25% ($100,000/$400,000) of the DAMAGES, the CLAIM EXPENSE, less the DEDUCTIBLE.

10. ACTION AGAINST US. No action will lie against US unless YOU have fully complied with all the terms and Conditions of this policy prior to bringing the action. In the event of YOUR bankruptcy or insolvency, WE will not be relieved of OUR obligations under the terms and conditions of this policy.

11. INSPECTION AND AUDIT. YOU agree to allow US to examine and audit YOUR law office management procedures and records as they relate to this insurance during normal business hours while this policy is in force. WE are not, however, required to make inspections nor will WE guarantee that YOUR procedures are adequate or that they conform to any laws, rules or regulations.

In Witness Whereof, the Company has caused this policy to be executed and attested.

*[signature]*
Secretary

*[signature]* R. Max Williamson
President

LP-J-1 (12-96)

BURT BARR & ASSOCIATES, L.L.P.
304 S. RECORD
DALLAS, TEXAS 75202
(214) 742-8001
FAX (214) 741-6744

EXHIBIT B

January 17, 2001

**VIA CERTIFIED MAIL**
**RRR 7000 0520 0024 0949 7540**
Mr. Armando R. Villalobos
PMB # 111
1327 E. Washington Ave.
Harlingen, TX 78550

Re:  Claim Number:   685775-253
     Insured:        Carol Chapman-Kondos, P.C. d/b/a Kondos & Kondos (Kondos)
     Claimant:       Lucy and Michael Smith
     Policy Number:  LPO-0011445
     Our File No.:   40055.01

Dear Mr. Villalobos:

     This correspondence will acknowledge receipt of the information submitted by you to National Casualty Company (NCC) requesting a defense of the claims brought by Lucy and Michael Smith (Smiths) against you, Kondos & Kondos (Kondos), and others.

     NCC issued lawyers professional liability insurance policy number LPO-0011445 (LPLI Policy) to Kondos for the policy period 9/18/99 to 9/18/00.

     Our understanding of the fact pattern emanates from the LPLI Policy, which includes an application for insurance Kondos filed with NCC, and the Plaintiffs' Original Petition for Cause No. 00-752-9, in the 44th Judicial District Court of Dallas County, Texas (Petition).

     According to our review of the Petition, in 1997, the Smiths first retained you under alleged false pretenses to represent them in auto accident case. At the time of your retention, you were an attorney with Kondos. Kondos learned from the Smiths that you had individually entered a contract to represent the Smiths. Upon learning of this contract, Kondos terminated you in December, 1997. The Smiths also terminated their contract with you in 1997, and entered a contract with Kondos. Kondos represented the Smiths through settlement of their case.

     Kondos procured insurance from NCC for one policy period: 9/18/99 to 9/18/00. The application for insurance Kondos filed with NCC did not include you as an attorney employed by Kondos in September, 1999. This application formed part of the LPLI Policy. The LPLI Policy was a claims made and reported basis policy. The LPLI Policy contained a basic extended reporting period through 10/18/00. Kondos did not renew the LPLI Policy or purchase an extended reporting period beyond the basic 30 day extended reporting period.

Mr. Armando Villalobos
January 17, 2001
Page 2

The Smiths filed suit against you on September 22, 2000.   You tendered your defense of the Smiths' claims to NCC through a letter dated  November 20, 2000.

This correspondence will formally place you on notice that any action taken by NCC investigating the referenced action shall not be construed as a waiver of NCC's right to deny liability under the LPLI Policy.   Nor shall any such action be construed as a waiver of any breach of the provisions, terms, or conditions of the LPLI Policy.  NCC reserves the right to bring a declaratory judgment action to determine its rights.  NCC further reserves all other rights it may have that exist under common law, contract or by statute.

NCC has preliminarily investigated the claims asserted in the Petition.  That investigation and the analysis has lead NCC to the conclusion that you have no coverage under the LPLI Policy for the claims in the Petition.  NCC, accordingly, is declining to defend you in the state action in Dallas, and will not provide you indemnity for claims in the Petition.

To trigger coverage, you have to be an insured, and if an insured, you have to comply with the LPLI Policy's conditions.  To be an insured under the LPLI Policy you have to fall within the Section E.16. definition for "you" and "your."  The LPLI policy at Notice 94-11N advises insureds that coverage is written on a claims made and reported basis.

In Texas, a claims made and reported policy requires the insured to present the claim to the carrier during the policy period or a contractually agreed extended period to trigger coverage. *See Hirsch v. Texas Lawyers Ins. Exchange*, 808 S.W.2d 561 (Tex.App.-El Paso1991, writ denied); *McCullough v. fidelity & Deposit Co.*, 2 F.3d 110, 112 (5th Cir.1993).  It is the notice, not the occurrence, that triggers coverage. *See F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir.1994). Courts strictly construe these notice provisions in claims made policies. *See F.D.I.C. v. Booth*, 82 F.3d 670, 678 (5th Cir.1996).

Because of the strict construction, the carrier does not have to show prejudice from the insured's failure to provide timely notice to bar coverage on a claims made and reported policy; the failure to provide timely notice, ipso facto, bars coverage. *See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*,174 F.3d 653 (5th Cir.1999).

The LPLI policy at Section I provides in relevant part:

1.          If during the **Policy Year** of the Extended Reporting Period:

a.          **YOU** receive written or oral notice from any party that it is the intention of such party to hold **YOU** responsible for any **WRONGFUL ACT(S)**; or

b.          **YOU** become aware of circumstance which could reasonably be expected to give rise to such notice.

Mr. Armando Villalobos
January 17, 2001
Page 3

then:

> **YOU** will tell us in writing as soon as practicable, but no later than the end of the **POLICY YEAR** or Extended Reporting Period....

Section J provides, in relevant part that:

1.  In the event of a **CLAIM**, the **NAMED INSURED** must give **US**, as soon as practicable, written notice of:

  a.  the specific **WRONGFUL ACT**; and

  b.  the injury or damage which has or may result from the **WRONGFUL ACT**; and

  c.  the names and addresses of the claimants or potential claimants; and

  d.  the circumstances by which **YOU** first became aware of such **WRONGFUL ACT**.

2.  If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

Section L. provides:

> Only the **Named Insured** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1.  One or more Extended Reporting Period(s) described below will be provided if the policy is canceled or nonrenewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2.  A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY YEAR** and lasts for thirty (30) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

Mr. Armando Villalobos
January 17, 2001
Page 4

Defined policy terms noted in bold, which apply, include:

7.      **NAMED INSURED** - means the person or organization named in Item 1 of the declarations.

9.      **POLICY YEAR** - means the period of one year following the effective date and hour of the this policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

16.     **YOU** and **YOUR** - means Insured and includes:

      a.      The **NAMED INSURED** and any **PREDECESSOR FIRM(S).**

      b.      The lawyer(s) named in the application that forms a part of this policy, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S).**

      c.      Any lawyer, partnership, professional corporation, professional association, limited liability corporation, or limited liability partnership:

        (1)     who becomes a partner, stockholder or employee of the **NAMED INSURED** during the **POLICY YEAR**, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED....**

      e.      Any non-lawyer employee or former non-lawyer employee but only for work done within the scope of their employment for the **NAMED INSURED** or **PREDECESSOR FIRM(S).**

Finally, from Section A of the LPLI policy, the insuring agreement provides that

      WE will pay on **YOUR** behalf all sums which **YOU** become legally obligated to pay as **DAMAGES** and **CLAIM EXPENSE** as a result of **CLAIMS** first made against **YOU** and reported to **US** in writing during the **POLICY YEAR** or Extended Reporting Period, if applicable,....

Mr. Armando Villalobos
January 17, 2001
Page 5

Turning to the time line for the facts in this case:

| | |
|---|---|
| 7/20/97 | Smith has auto accident |
| 9/27/97 | Villalobos signs Smith to legal representation contract |
| 11/26/97 | Kondos finds out Villalobos improperly entered contract with Smith |
| 12/1/97 | Kondos fires Villalobos; Villalobos and Smith enter mutual release |
| 3/10/00 | Underlying action settles at mediation |
| 9/18/99 | Kondos procures insurance from National Casualty Company |
| 9/18/00 | National Casualty Company policy lapses |
| 9/22/00 | Smith sues Kondos and Villalobos |
| 10/18/00 | Basic extended reporting period lapses |
| 11/20/00 | Villalobos tenders a defense to National Casualty Company. |

From the time line and plain language of the LPLI policy's terms, you are not an insured and you failed to give notice of the claim within the contracted for reporting period.

Under the insuring agreement, only someone defined as **YOU** receives the benefit of payment for damages and claims expenses. The LPLI policy defines **YOU** to include the named insured, Kondos, and lawyers listed on the application for insurance. Kondos terminated you more than 21 months before the LPLI policy was issued, and thus, you were not listed on the application. Accordingly, you cannot receive benefits under the LPLI policy.

Additionally, you did not give NCC notice of the Smith claim until late November, 2000, over one month after the basic extended reporting period had passed. As indicated in the case law above, the failure to provide notice within the terms of a claims made and reported policy bars coverage.

Because you are not an insured under the LPLI Policy and you failed to comply with the reporting requirements under the LPLI Policy, NCC has no duty to defend or indemnify you against the Smiths' claims. NCC must respectfully disclaim coverage.

NCC does not limit its right to assert limitations on coverage to the provisions set forth above. Rather, it reserves its rights to enforce any and all definitions, exclusions, limitations, other provisions contained in the policy, and under applicable common law. This letter should not be construed in any way, shape or form as a waiver by NCC of its rights to assert other defenses to coverage under the LPLI Policy regarding the Smiths' claims.

NCC also reserves the right to review any additional lawsuits or amendments to this lawsuit to make a separate determination as to whether either a defense, or indemnity, might be provided by the company. Our decision on coverage is based only on the facts presented in the suit papers referenced above and should not be construed as applicable to a new suit or an amendment to this

Mr. Armando Villalobos
January 17, 2001
Page 6

suit. Our right to have notice of either situation is reserved, as are the notice conditions of the policy.

       If you have any questions, comments or objections to our coverage position, please contact us to advise.

                 Sincerely yours,

                 M. Forest Nelson

MFN/set
cc:    Lee E. Harrell