M. Forest Nelson
State Bar No. 14904625
S.D.ID 5934
BURT BARR & ASSOCIATES, L.L.P.
304 South Record
Dallas, Texas 75202-4793
214/742-8001 (Telephone)
214/741-6744 (Telecopier)

United States District Court
Southern District of Texas
FILED

MAR 1 3 2002

Michael N. Milby
Clerk of Court

ATTORNEYS FOR NATIONAL CASUALTY COMPANY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ARMANDO R. VILLALOBOS | § CIVIL ACTION NO. B -02-33 |
| | § |
| | § COUNTERCLAIM |
| VS. | § |
| | § |
| NATIONAL CASUALTY COMPANY | § |

## **COUNTERCLAIM**

National Casualty Company (National) brings this counterclaim against
Armando R. Villalobos (Villalobos):

1.    This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.
National asks this court to interpret an insurance policy and to declare that National
has, and had, no duty to defend or indemnify Villalobos because of policy exclusions
and terms.

2.    National is a stock insurance company incorporated in the State of Wisconsin

with its principal place of business in Arizona. National is duly authorized to engage in the business of insurance in the State of Texas. National is an Arizona and Delaware Citizen.

3.    Villalobos is a Texas citizen. Villalobos can be served with this counterclaim through his counsel of record, Geoff J. Hensley, 2205 N. Henderson Avenue, Dallas, Texas 75206-6002.

4.    Venue is properly placed under 28 U.S.C. § 1391.

5.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Complete diversity exists between the counter-plaintiff and counter-defendant, as counter-plaintiff is an Arizona and Wisconsin citizen and counter-defendant is a Texas citizen. This Court has jurisdiction under 28 U.S.C. § 1332.

6.    This action concerns a case or controversy, because National and Villalobos seek to have coverage elements determined on a policy of insurance National issued to Carol C. Kondos P.C. d/b/a Kondos & Kondos (Kondos).

7.    National and Kondos entered into a lawyers professional liability insurance contract numbered LPO-0011445 (LPO Policy), for the policy period 9/18/99 to 9/18/00. A true and correct copy of the LPO Policy is attached and incorporated as labeled Exhibit 1.

8.    Lucy Smith has sued Villalobos and Kondos for professional malpractice

regarding an employment contract entered between Smith and Villalobos and a contract entered between Smith and Kondos.  The suit is Cause No. 00-7529 in the 44th Judicial District Court of Dallas County, Texas (Underlying Action).  A true and correct copy of the Underlying Action's plaintiff's original petition with attachments is attached and incorporated as labeled Exhibit 2.  National did not insure the claims against Villalobos under the LPO Policy.

9.    The LPO Policy insuring agreement provides in relevant part:

> WE will pay on **YOUR** behalf all sums which **YOU** become legally obligated to pay as **DAMAGES** and **CLAIM EXPENSE** as a result of **CLAIMS** first made against **YOU** and reported to **US** in writing during the **POLICY YEAR** or Extended Reporting Period, if applicable,....

Certain of the bold terms are defined in the LPO Policy as follows:

1.    **CLAIM(S)** - means an oral or written notice from any party that it is their intention to hold **YOU** responsible for any **WRONGFUL ACT** in performing legal, arbitration, mediation, title agent or notary services. **CLAIM** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such notice; provided **YOU** tell us in writing of such circumstances during the **POLICY YEAR**. Notice includes but is not limited to , service of suit or institution of arbitration proceedings.

3.    **DAMAGES** - means a monetary judgment, award or settlement.

7.    **NAMED INSURED** - means the person or organization named in Item 1 of the declarations.

9.    **POLICY YEAR** - means the period of one year following the effective

date and hour of the this policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

16.    **YOU** and **YOUR** - means Insured and includes:

    a.    The **NAMED INSURED** and any **PREDECESSOR FIRM(S).**

    b.    The lawyer(s) named in the application that forms a part of this policy, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S).**

    c.    Any lawyer, partnership, professional corporation, professional association, limited liability corporation, or limited liability partnership:

        (1)    Who becomes a partner, stockholder or employee of the **NAMED INSURED** during the **POLICY YEAR**, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED**.

        (2)    Who was formerly a partner, stockholder or employee of the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRMS**....

17.    **WRONGFUL ACT(S)** - means any actual or alleged negligent act, error, omission or **PERSONAL INJURY YOU** or any person to whom **YOU** are legally responsible commit, but only in the performance of legal arbitration, mediation, title agent or notary services for or on behalf of the **NAMED INSURED** or any **PREDECESSOR FIRM(S)**, or while participating as a member, director or officer of a professional bar association.    This also includes services rendered by **YOU** in an

attorney-client relationship as a trustee, administrator, conservator, executor, guardian, receiver or similar fiduciary capacity.

10.    The LPO Policy limits National's defense obligations, if any, as follows:

If the allegation(s) is excluded under this policy, there shall be no duty to defend such claim

11.    The LPO Policy excludes coverage for the following acts:

This Policy does not apply:

1.    To any **CLAIM** based on or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU**.

3.    To any **CLAIM** based on or arising out of **YOUR** capacity as:
   a.    an officer, director, partner, shareholder or employee of any entity other than the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**;....

4.    To any **CLAIM** arising out of legal services or advice rendered by **YOU** in connection with any business enterprise not shown on the Declarations:
   a.    which is, was or will be owned in whole or in part by **YOU** or any member of **YOUR IMMEDIATE FAMILY**:
   b.    which is, was or will be in any way controlled operated or managed by **YOU** or any member of **YOUR IMMEDIATE FAMILY** including the ownership, maintenance or use of any property in connection therewith; or
   c.    in which **YOU** or any member of **YOUR IMMEDIATE FAMILY** is, was or will be a partner or employee.

12.    The LPO Policy also expressly precludes coverage for a failure to comply with the following conditions:

1.   If during the **Policy Year** of the Extended Reporting Period:

     a.   **YOU** receive written or oral notice from any party that it is the intention of such party to hold **YOU** responsible for any **WRONGFUL ACT(S)**; or

     b.   **YOU** become aware of circumstance which could reasonably be expected to give rise to such notice.

    then:

     **YOU** will tell us in writing as soon as practicable, but no later than the end of the **POLICY YEAR** or Extended Reporting Period.  Any subsequent **CLAIM** made against **YOU** arising out of such **WRONGFUL ACT(S)** shall be deemed to have been made during the **POLICY YEAR** or Extended Reporting Period.  No coverage for such **CLAIM** shall exist under any subsequent policy written by us.

Section J provides, in relevant part that:

1.   In the event of a **CLAIM**, the **NAMED INSURED** must give **US**, as soon as practicable, written notice of:

     a.   the specific **WRONGFUL ACT**; and

     b.   the injury or damage which has or may result from the **WRONGFUL ACT**; and

     c.   the names and addresses of the claimants or potential claimants; and

     d.   the circumstances by which **YOU** first became aware of such **WRONGFUL ACT**.

2.   If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

Section L. provides:

> Only the **Named Insured** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1. One or more Extended Reporting Period(s) described below will be provided if the policy is canceled or nonrenewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY YEAR** and lasts for thirty (30) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

13. Villalobos, in his original petition in this action, admits certain of the following facts:

a. Smith called Kondos in August and September 1997 about legal representation for an auto accident claim;

b. Villalobos worked for Kondos in 1997;

c. Villalobos signed Smith to a contingent fee contract for himself, and not Kondos, on September 27, 1997;

d. Kondos learned of the contingent fee contract and had Smith sign a contract with Kondos, on November 27, 1997;

e. Kondos fired Villalobos on December 1, 1997;

f. Kondos initiated a civil suit against Villalobos for breach of fiduciary duty and a disciplinary proceeding with the State Bar of Texas;

g. On September 18, 1999, Kondos procures insurance from National.

h.    On March 10, 2000, the Underlying Action settles at mediation.

i.    On September 18, 2000, the LPO Policy lapses.

j.    On September 22, 2000   Smith sues Kondos and Villalobos.

k.    On October 18, 2000, the extended reporting period for the LPO Policy lapses.

l.    On November 20, 2000 Villalobos submits the claim to National.

14.    Under the insuring agreement and notice provisions of the LPO Policy, Villalobos had to provide notice of Lucy Smith's claim against him within the policy period, including any contracted for extensions to the policy period for the LPO Policy.  Villalobos failed to provide notice of the claim within the policy period and the basic extension period of the LPO Policy.  Accordingly, coverage does not attach to Lucy Smith's claim against Villalobos.

15.    Villalobos is also not a defined **YOU** under the LPO Policy, which is required for the LPO Policy to apply.  When Villalobos represented Lucy Smith, he was not acting within the scope of his employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S).**

16.    The complained of acts of Villalobos additionally do not reflect defined **WRONGFUL ACTS** as Villalobos was not working for or on behalf of the **NAMED INSURED**, Kondos, when he represented Lucy Smith.  Again, the lack of defined

**WRONGFUL ACTS** precludes coverage under the LPO Policy.

17.    Under the insuring agreement of the LPO Policy, National only has an obligation to respond to claims that a defined **YOU** becomes legally obligated to pay. Villalobos terminated his relationship with Lucy Smith on December 1, 1997. At that time he received a release. Villalobos has no legal obligation to Lucy Smith because of the release. Also, Villalobos terminated his representation more than two years before Lucy Smith filed suit; accordingly, all of Smith's claims, with the exception of two, are subject to judgment on the pleadings for the two-year statute of limitations.

18.    The LPO Policy excludes coverage for any **CLAIM** based upon or arising out of dishonest, fraudulent or intentional conduct. Lucy Smith has based her claim on alleged fraudulent, dishonest, and intentional conduct by Villalobos. The LPO Policy, thus, does not apply.

19.    The LPO Policy also excludes coverage for any **CLAIM** based on or arising out of a defined **YOU** acting on behalf of a business entity other than the **NAMED INSURED**. Here, Villalobos was acting on his own behalf, and not for the **NAMED INSURED**, when he signed up and represented Lucy Smith, unbeknownst to the **NAMED INSURED**.

20.   National also seeks recovery of its reasonable and necessary attorney's fees incurred in prosecuting this declaratory judgment action against Villalobos.

WHEREFORE, National respectfully requests:

A.   That this Court determine and adjudicate the rights and liabilities of the parties to this action regarding the LPO Policy;

B.   That this Court find and declare that National has no duty to defend or indemnify Villalobos in the Underlying Action;

C.   That Villalobos and his attorneys, and agents be restrained and prohibited from filing or prosecuting any action in any other court in this cause upon the LPO Policy;

D.   That the Court grant such other and further relief as it may deem just and proper, including the attorney's fees, costs, and disbursements of this action.

**WRONGFUL ACTS** precludes coverage under the LPO Policy.

17.    Under the insuring agreement of the LPO Policy, National only has an obligation to respond to claims that a defined **YOU** becomes legally obligated to pay. Villalobos terminated his relationship with Lucy Smith on December 1, 1997. At that time he received a release. Villalobos has no legal obligation to Lucy Smith because of the release. Also, Villalobos terminated his representation more than two years before Lucy Smith filed suit; accordingly, all of Smith's claims, with the exception of two, are subject to judgment on the pleadings for the two-year statute of limitations.

18.    The LPO Policy excludes coverage for any **CLAIM** based upon or arising out of dishonest, fraudulent or intentional conduct. Lucy Smith has based her claim on alleged fraudulent, dishonest, and intentional conduct by Villalobos. The LPO Policy, thus, does not apply.

19.    The LPO Policy also excludes coverage for any **CLAIM** based on or arising out of a defined **YOU** acting on behalf of a business entity other than the **NAMED INSURED**. Here, Villalobos was acting on his own behalf, and not for the **NAMED INSURED**, when he signed up and represented Lucy Smith, unbeknownst to the **NAMED INSURED**.

20.    National also seeks recovery of its reasonable and necessary attorney's fees incurred in prosecuting this declaratory judgment action against Villalobos.

WHEREFORE, National respectfully requests:

A.    That this Court determine and adjudicate the rights and liabilities of the parties to this action regarding the LPO Policy;

B.    That this Court find and declare that National has no duty to defend or indemnify Villalobos in the Underlying Action;

C.    That Villalobos and his attorneys, and agents be restrained and prohibited from filing or prosecuting any action in any other court in this cause upon the LPO Policy;

D.    That the Court grant such other and further relief as it may deem just and proper, including the attorney's fees, costs, and disbursements of this action.

Respectfully submitted,

BURT BARR & ASSOCIATES, L.L.P.

By: _____
     M. FOREST NELSON
     State Bar No. 14904625
     S.D. ID. 5934
     304 South Record Street
     Dallas, Texas 75202
     (214) 742-8001
     Telefax: (214) 741-6744

ATTORNEYS    FOR    NATIONAL
CASUALTY COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing counterclaim was served upon the below counsel of record pursuant to FRCP 5 through regular U.S. Mail on March 11, 2002:

Geoff J. Henley
Henley & Henley, P.C.
2205 N. Henderson Avenue
Dallas, Texas 75206-6002

_____
M. Forest Nelson

1

# National Casualty Company

Home Office:
16 North Carroll Street, Suite 209 • Madison, Wisconsin 53703-2783
Property/Casualty Division:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258

A STOCK COMPANY

# Lawyers Professional Liability Insurance

## Claims Made And Reported Policy

THESE POLICY PROVISIONS, WITH THE APPLICATION, DECLARATIONS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

LP-J-1 (12-96)

# DECLARATIONS

## LAWYERS PROFESSIONAL LIABILITY POLICY

### National Casualty Company

Property/Casualty Division
8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 (outside Arizona)
A STOCK COMPANY

NEW
Renewal of Number

**Policy Number**

**LPO-**0011445

Declarations

(LTQAO)

**Item 1. NAMED INSURED and Mailing Address:**

CAROL CHAPMAN-KONDOS, P.C.
DBA KONDOS & KONDOS
1595 NORTH CENTRAL EXPRESSWAY
RICHARDSON, TEXAS 75080-3590

Agent Name and Address:

U.S. RISK UNDERWRITERS, INC.
9433 BEE CAVES ROAD, BUILDING I, SUITE 200
AUSTIN, TEXAS 78733

Agent No: 42513

| Item 2. Policy Period | From: 9/18/1999 | To: 9/18/2000 |
|---|---|---|

**12:01 A.M. Standard Time at the address of the NAMED INSURED as stated herein.**

Item 3. **PRIOR ACTS DATE:** ........................................................................ Unlimited

Item 4. Limits of Liability:

    (A)  Each **CLAIM** ........................................................................ $ 1,000,000

    (B)  Annual Aggregate ........................................................................ $ 1,000,000

Item 5. **DEDUCTIBLE:** ........................................................................ $ 10,000
(Amount to be borne by Insured, including **CLAIM EXPENSE**)          Annual Aggregate

Item 6. Premium: ........................................................................ $ 28,608

Item 7. Notice of **CLAIM** shall be given to:

        National Casualty Company
        Claims Department
        Professional Liability Unit
        8877 North Gainey Center Drive
        Scottsdale, AZ 85258

Item 8. Policy and Endorsements attached at inception:

        LP-J-1 (12-96); LP-22s-TX (1-97); LP-68s (4-98); UT-93g-TX (5-92)
        LP-63s (10-97); LP-64s-TX (10-97)
        FRH 6 (10/94)

## THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY.

**17**

Countersigned 9/09/1999     By     RANDALL G. GOSS, CHAIRMAN/CEO
                 DATE                          AUTHORIZED REPRESENTATIVE

LP-D-1 (10-92)

Bonnie L. Yakly 2-28-02

**THIS IS A TRUE AND CERTIFIED COPY**

# LAWYERS PROFESSIONAL LIABILTY INSURANCE
## CLAIMS MADE AND REPORTED POLICY

# National Casualty Company

Property/Casualty Division
Scottsdale, Arizona

A Stock Insurance Company, herein called the Company

By acceptance of this policy, the **NAMED INSURED** agrees to act on **YOUR** behalf with respect to:

1. exercising the option to purchase an Extended Reporting Period;

2. the giving and receiving of notice of **CLAIM(S)** or cancellation; and

3. the payment of premiums that may become due under this policy.

Each of **YOU** agree that the **NAMED INSURED** will act on **YOUR** behalf.

---

## A. INSURING AGREEMENT

**WE** will pay on **YOUR** behalf all sums which **YOU** become legally obligated to pay as **DAMAGES** and **CLAIM EXPENSE** as a result of **CLAIMS** first made against **YOU** and reported to **US** in writing during the **POLICY YEAR** or Extended Reporting Period, if applicable, provided that:

1. the **WRONGFUL ACT** giving rise to the **CLAIM** occurred on or after the **PRIOR ACTS DATE** shown in Item 3. of the Declarations; and

2. notice of the **WRONGFUL ACT** was not given nor required to be given to any prior insurer; and

3. prior to the inception date of the first policy issued to **YOU** by **US** and continuously renewed by **US**, **YOU** had no reasonable basis to believe that such **WRONGFUL ACT** had been committed or that a **CLAIM** would be made against **YOU** alleging such **WRONGFUL ACT**.

## B. DEFENSE

**WE** have the right and duty to defend any suit against **YOU** seeking **DAMAGES** because of a **WRONGFUL ACT** even if any of the allegations in the suit are groundless, false or fraudulent. **WE** have the right to appoint counsel and investigate any **CLAIM** or suit. However, **WE** will not settle or compromise a **CLAIM** or suit without **YOUR** written consent. If consent is refused and **YOU** elect to contest the **CLAIM** or continue legal proceedings, then **OUR** liability for the **CLAIM** will not exceed the amount for which the **CLAIM** could have been settled, plus **CLAIM EXPENSE** incurred up to the date of **YOUR** refusal.

If the allegation(s) is excluded under this policy, there shall be no duty to defend such **CLAIM**.

**WE** are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any suit after the applicable limits of **OUR** liability have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE**.

**WE** have the right, but no duty, to appeal any judgment.

LP-J-1 (12-96)

**YOU**, except at **YOUR** own cost and for **YOUR** own account, will not:

1.  make any payment;

2.  admit any liability;

3.  settle any **CLAIM**;

4.  assume any obligation; or

5.  incur any expense

without **OUR** written consent.

## C.  SUPPLEMENTAL PAYMENTS

**WE** will pay, in addition to **OUR** Limits of Liability:

1.  All costs taxed against **YOU** in any suit **WE** defend.

2.  Interest only on that part of any judgment which does not exceed **OUR** Limit of Liability, which accrues after the entry of the judgment and before **WE** have paid, offered to pay, or deposited in court that part of the judgment that does not exceed **OUR** Limit of Liability.

3.  Premium on appeal bonds required in any suit **WE** defend and the cost of attachment or similar bonds.

4.  Up to $10,000 during the **POLICY YEAR** in:

    a.  expenditures for legal services charged by a lawyer **WE** designate; and

    b.  other expenses **WE** incur in the investigation and defense of **DISCIPLINARY PROCEED-ING(S)** brought against **YOU.**

    Notice of the **DISCIPLINARY PROCEEDING(S)** must be reported to **US** in writing during the **POLICY YEAR** and must arise out of a **WRONGFUL ACT(S)** that is otherwise covered by this policy. The **DEDUCTIBLE** will not apply to the expenditures **WE** incur under this provision.

5.  Up to $500 to each of **YOU** for each day or part of the day for **YOUR** attendance at a trial, hearing or arbitration proceeding at which **WE** request **YOUR** attendance. The maximum amount payable by **US** during the **POLICY YEAR** shall not exceed $5,000 in the aggregate. The **DEDUCTIBLE** provision of this policy will not apply to the expenditures **WE** incur under this provision.

## D.  TERRITORY

This policy applies to **WRONGFUL ACTS** which happen anywhere in the world, provided the **CLAIM** is made and the suit is brought within the United States and its territories or Canada.

## E.  DEFINITIONS

Whenever used in this policy, the following words have these meanings:

1.  **CLAIM(S)**—means an oral or written notice from any party that it is their intention to hold **YOU** responsible for any **WRONGFUL ACT** in performing legal, arbitration, mediation, title agent or notary services. **CLAIM** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such notice; provided **YOU** tell us in writing of such circumstances during the **POLICY YEAR**. Notice includes, but is not limited to, service of suit or institution of arbitration proceedings.

2.  **CLAIM EXPENSE**—means expenditures including, but not limited to:

    a.  legal services charged by a lawyer(s) **WE** designate;

    b.  costs of investigations;

    c.  experts;

    d.  court costs; and

    e.  other similar expenses **WE** incur in the investigation, adjustment, defense or appeal of a **CLAIM** or suit.

        **CLAIM EXPENSE** does not include:

        (1) Salary, charges or expenses of **OUR** regular employees.

        (2) Payments made under the Supplemental Payments provision of this policy.

3.  **DAMAGES**—means a monetary judgment, award or settlement.

    **DAMAGES** do not include:

a. Civil or criminal fines, sanctions, restitution or penalties, whether pursuant to any civil or criminal law or statute, including, but not limited to, awards under Federal Rule(s) of Civil Procedure, Rule 11 or a similar state law or statute;

b. Amounts paid to **YOU** as fees, costs or expenses for legal, arbitration, mediation, title agent or notary services performed which are to be reimbursed or discharged as a part of the judgment or settlement;

c. Punitive damages, exemplary damages or any damages which are a multiple of compensatory damages awarded against **YOU**, including double or treble damages. However, **WE** will provide limited coverage to **YOU** to pay for punitive damages, exemplary damages or any damages which are a multiple of compensatory damages at a maximum Limit of Liability of:

(1) $250,000   Each **CLAIM**
    $250,000   Annual Aggregate; or

(2) the Each **CLAIM** Limit and Annual Aggregate Limit shown in the Declarations,

whichever is less.

The Limit of Liability referenced in (1) or (2) above for Each **CLAIM** is the maximum limit **WE** will pay for all punitive damages, exemplary damages or any damages which are a multiple of compensatory damages arising out of each **CLAIM**. The Limit of Liability referenced in (1) or (2) above for Annual Aggregate is the maximum limit **WE** will pay for all punitive damages, exemplary damages or any damages which are a multiple of compensatory damages during each **POLICY YEAR**.

Payment for these damages will only be made in conjunction with a **CLAIM** that is otherwise covered by this policy. Any payments made by **US** under this provision will be included within the applicable Limit of Liability and not in addition to the policy limits.

d. Any costs assessed against **YOU** as the result of a **DISCIPLINARY PROCEEDING**.

4. **DEDUCTIBLE**—means the amount **YOU** must pay for **DAMAGES** and **CLAIM EXPENSE**.

5. **DISCIPLINARY PROCEEDING(S)**—means any proceeding brought against **YOU** by a state or other regulatory or disciplinary official or agency to investigate charges alleging professional misconduct in performing legal services.

6. **IMMEDIATE FAMILY**—means **YOUR** parents, wife or husband, children, brothers and sisters.

7. **NAMED INSURED**—means the person or organization named in Item 1. of the Declarations.

8. **PERSONAL INJURY**—means injury arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution and abuse of process;

c. Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy.

9. **POLICY YEAR**—means the period of one year following the effective date and hour of this policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

10. **PREDECESSOR FIRM(S)**—means any lawyer, law firm or professional legal corporation engaged in the practice of law in whose financial assets and liabilities the **NAMED INSURED** is the majority successor in interest. An assumption of 50% or greater of the firm's assets and liabilities shall be considered a majority interest.

11. **PRIOR ACTS DATE**—means the date specified in Item 3. of the Declarations. This policy shall not apply to any **CLAIM** arising from a **WRONGFUL ACT** which occurred prior to this date. If the term UNLIMITED is specified in Item 3. of the Declarations, it means that there is no time limitation of coverage for **YOU** based upon when the **WRONGFUL ACT** occurred.

LP-J-1 (12-96)

12. **SUBROGATION EXPENSES**—means expenditures including, but not limited to:

   a. legal services charged by a lawyer(s) **WE** designate;

   b. costs of investigations;

   c. experts;

   d. court costs; and

   e. other similar expenses **WE** incur in the subrogation process.

13. **TOTALLY AND PERMANENTLY DISABLED**—means total and continuous disability for at least six consecutive months as a result of sickness or accidental bodily injury which renders **YOU** unable to render legal, arbitration, mediation, title agent or notary services for others.

14. **WE, US,** and **OUR**—means the Company providing this insurance.

15. **WRONGFUL ACT(S)**—means any actual or alleged negligent act, error, omission or **PERSONAL INJURY YOU** or any person or entity for whom **YOU** are legally responsible commit, but only in the performance of legal, arbitration, mediation, title agent or notary services for or on behalf of the **NAMED INSURED** or any **PREDECESSOR FIRM(S)**, or while participating as a member, director or officer of a professional bar association. This also includes services rendered by **YOU** in an attorney-client relationship as a trustee, administrator, conservator, executor, guardian, receiver or similar fiduciary capacity.

16. **YOU** and **YOUR**—means Insured and includes:

   a. The **NAMED INSURED** and any **PREDECESSOR FIRM(S)**.

   b. The lawyer(s) named in the application that forms a part of this policy, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   c. Any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership:

      (1) Who becomes a partner, stockholder or employee of the **NAMED INSURED** during the **POLICY YEAR**, but only for **CLAIMS** resulting from **WRONGFUL ACTS** committed within

the scope of their employment by the **NAMED INSURED**.

      (2) Who was formerly a partner, stockholder or employee of the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   d. Retained Of Counsel listed in the application that forms part of this policy, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their association with and under the name of the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   e. Any non-lawyer employee or former non-lawyer employee but only for work done within the scope of their employment for the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**.

   f. The estate, heirs, executors, administrators, assigns and legal representatives of anyone listed in a., b., c., d. or e. above in the event of their death, incapacity, insolvency or bankruptcy, but only to the extent that they would otherwise be provided coverage under this policy.

## F.  EXCLUSIONS

This policy does not apply:

1. To any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU**;

2. To any **CLAIM** arising out of bodily injury, sickness or death of any person or damage to or loss of any tangible property, except that this exclusion does not apply to mental illness, emotional distress or humiliation if solely resulting from covered legal or notary services;

3. To any **CLAIM** based on or arising out of **YOUR** capacity as:

   a. an officer, director, partner, shareholder or employee of any entity other than the **NAMED INSURED** or its **PREDECESSOR FIRM(S)**;

b. a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments, or similar provisions of any state statutory law or common law, except if **YOU** are deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan;

c. a public official or an employee of a governmental body, subdivision or agency; or

d. a beneficiary or distributee of any trust or estate.

4. To any **CLAIM** arising out of legal services or advice rendered by **YOU** in connection with any business enterprise not shown on the Declarations:

a. which is, was or will be owned in whole or in part by **YOU** or any member of **YOUR IMMEDIATE FAMILY**;

b. which is, was or will be in any way controlled, operated or managed by **YOU** or any member of **YOUR IMMEDIATE FAMILY** including the ownership, maintenance or use of any property in connection therewith; or

c. in which **YOU** or any member of **YOUR IMMEDIATE FAMILY** is, was or will be a partner or employee;

This exclusion does not apply if, at the time that such legal service or advice was rendered, the **NAMED INSURED** or any insured, separately or in combination, or any **IMMEDIATE FAMILY** member had a total pecuniary or beneficial interest of 10% or less in such business enterprise.

5. To any **CLAIM** arising out of any circumstances due to nuclear reaction, radiation or contamination, regardless of cause;

6. To any **CLAIM** arising from notarized certification or acknowledgment of a signature without the physical appearance before such notary public of the person who is or claims to be the person signing such instrument;

7. To any **CLAIM** based on or arising out of discrimination, harassment or misconduct by **YOU**, including but not limited to **CLAIMS** based on an individual's race, creed, color, age, sex, national origin, religion, disability, physical or mental handicap, disease, marital status or sexual preference;

8. To any **CLAIM** made by **YOU** against any other Insured unless such **CLAIM** arises out of legal services provided in a lawyer-client relationship;

9. To any **CLAIM** for which **YOU** are liable or **YOU** may be held liable for the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or any other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

## G.  INNOCENT INSURED PROTECTION

Whenever coverage under any provision of this policy would otherwise be excluded, suspended, or lost because of:

1. Section **F. Exclusion 1.** relating to any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU**; or

2. concealment of a **CLAIM** by any of **YOU**,

**WE** agree that the coverage as would be afforded by this policy will apply to each of **YOU** who did not personally commit or participate in the **WRONGFUL ACT(S)** or agree to the concealment.

For coverage to apply, **YOU** must notify **US** of the **WRONGFUL ACT(S)** or concealment as soon as **YOU** become aware of them.

## H.  LIMITS OF LIABILITY

Regardless of:

a. the number of **YOU** who are insured under the policy;

b. all persons or organizations who sustain **DAMAGES** payable under this policy; and/or

c. suits brought on account of coverage afforded by the policy,

LP-J-1 (12-96)

- **OUR** liability is limited as follows:

1. The Limit of Liability stated in Item 4. (A) of the Declarations page is the limit of **OUR** liability for all **DAMAGES** and **CLAIM EXPENSE** arising out of each **CLAIM** first made and reported in writing during the **POLICY YEAR** or Extended Reporting Period.

2. The Limit of Liability stated in Item 4. (B) of the Declarations page is subject to the above provision respecting Each **CLAIM** and is the maximum limit of **OUR** liability for each **POLICY YEAR**. In no event will **OUR** total Limit of Liability be increased by any Extended Reporting Period.

3. **CLAIM EXPENSE** will be subtracted from the Limits of Liability first as it is incurred for each **CLAIM**. The remaining amount will be the amount available to pay **DAMAGES**.

4. Subject to the Limits of Liability, **WE** will only be liable to pay **DAMAGES** and **CLAIM EXPENSE** in excess of the **DEDUCTIBLE** shown in this policy. **YOUR DEDUCTIBLE** for all **DAMAGES** and **CLAIM EXPENSE** in any **POLICY YEAR** is the Annual Aggregate amount shown in Item 5. of the Declarations. Each of **YOU** under the policy is individually liable for the payment of the **DEDUCTIBLE**. In the event that **WE** expend funds for **DAMAGES** or **CLAIM EXPENSE** on **YOUR** behalf, **YOU** will reimburse **US** for such expenditures up to the amount of the **DEDUCTIBLE** shown in this policy. Reimbursement of the **DEDUCTIBLE** will be due within sixty (60) days from the date **WE** bill **YOU**.

5. One or more **CLAIMS** based on or arising out of the same **WRONGFUL ACT(S)** or a series of related **WRONGFUL ACT(S)** of one or more of **YOU** will be considered a single **CLAIM**. The **CLAIM** will be subject to the Limit of Liability in effect at the time such **CLAIM** was first reported in writing to **US**. Only one **DEDUCTIBLE** will apply to such **CLAIM**.

## I. NOTIFICATION

1. If during the **POLICY YEAR** or the Extended Reporting Period:

   a. **YOU** receive written or oral notice from any party that it is the intention of such party to hold **YOU** responsible for any **WRONGFUL ACT(S)**; or

   b. **YOU** become aware of circumstances which could reasonably be expected to give rise to such notice,

   then:

   **YOU** will tell us in writing as soon as practicable, but no later than the end of the **POLICY YEAR** or Extended Reporting Period. Any subsequent **CLAIM** made against **YOU** arising out of such **WRONGFUL ACT(S)** shall be deemed to have been made during the **POLICY YEAR** or Extended Reporting Period. No coverage for such **CLAIM** shall exist under any subsequent policy written by **US**.

2. In the event of any **CLAIM** occurring hereunder, written notice to **US** will be given by the person or firm(s) shown under Item 1. of the Declarations. Notice will be deemed to be received if sent by prepaid mail properly addressed to the address shown in Item 7. of the Declarations.

3. When **WE** receive **YOUR** written notice and **WE**, at **OUR** discretion, incur **CLAIM EXPENSE** to undertake measures to avoid any **DAMAGES** as a result of the reported **WRONGFUL ACT**, **WE** will waive the applicable **DEDUCTIBLE**.

   However, the **DEDUCTIBLE** will always apply if a suit is filed, if arbitration hearings are begun or if any **DAMAGES** are paid.

## J. INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUIT

1. In the event of a **CLAIM**, the **NAMED INSURED** must give **US**, as soon as practicable, written notice of:

   a. the specific **WRONGFUL ACT**; and

   b. the injury or damage which has or may result from the **WRONGFUL ACT**; and

   c. the names and addresses of the claimants or potential claimants; and

   d. the circumstances by which **YOU** first became aware of such **WRONGFUL ACT**.

2. If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

3. **WE** will have full discretion in the handling of any **CLAIM**, and **YOU** will give full information and assistance as **WE** may reasonably require. **YOU** will cooperate with **US** and, at **OUR** request, consent to being examined and questioned by **OUR** representative, under oath, if necessary. At **OUR** request, **YOU** will attend hearings, depositions and trials and will assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. **YOU** will cooperate in the conduct of suits as well as in giving written statements to **OUR** representatives and defense counsel.

## K.  EXTENSION OF COVERAGE

If the **NAMED INSURED** dies during the **POLICY YEAR**, the period for reporting **CLAIMS** is extended until the executor or administrator is discharged or for twenty-four (24) months from the date of death, whichever is less. If the **NAMED INSURED** has been insured by **US** for at least three (3) consecutive years immediately prior to this **POLICY YEAR** and becomes **TOTALLY AND PERMANENTLY DISABLED** during the **POLICY YEAR**, the period for reporting CLAIMS is extended until the disability ends. No additional premium will be charged for this extension nor will any premium be refunded.

## L.  EXTENDED REPORTING PERIOD

Only the **NAMED INSURED** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1. One or more Extended Reporting Period(s) described below will be provided if the policy is canceled or non-renewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY YEAR** and lasts for thirty (30) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

3. In addition, the **NAMED INSURED** may purchase one of the Supplemental Extended Reporting Periods described below if **YOU** are in compliance with the terms and conditions of this policy:

   a. A twelve (12) month Supplemental Extended Reporting Period for 100% of the full annual premium of this policy; or

   b. A twenty-four (24) month Supplemental Extended Reporting Period for 150% of the full annual premium of this policy; or

   c. A thirty-six (36) month Supplemental Extended Reporting Period for 185% of the full annual premium of this policy; or

   d. A sixty (60) month Supplemental Extended Reporting Period for 250% of the full annual premium of this policy; or

   e. An unlimited Supplemental Extended Reporting Period for 300% of the full annual premium of this policy.

4. Coverage for a Supplemental Extended Reporting Period must be added by endorsement for which an additional premium charge must be paid. Such period starts (30) days after the end of the **POLICY YEAR**.

5. The right to purchase a Supplemental Extended Reporting Period will terminate unless:

   a. **WE** receive a written request for a Supplemental Extended Reporting Period; and

   b. the additional premium is paid

   within thirty (30) days of the end of the **POLICY YEAR**.

   The **NAMED INSURED'S** request must specify the length of the Supplemental Extended Reporting Period desired. Once in effect, extended reporting periods may not be canceled.

6. An Extended Reporting Period does not extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the policy's terms, Limits of Liability, Exclusions and Conditions, the policy is extended to apply to **CLAIMS** first made against **YOU** and reported to **US** in writing during the Basic Extended Reporting Period or, if purchased, the Supplemental Extended Reporting Period, but only for

LP-J-1 (12-96)

CLAIMS due to **WRONGFUL ACT(S)** which happened on or after the **PRIOR ACTS DATE** and on or before the expiration of the **POLICY YEAR**.

6. Extended Reporting Periods do not reinstate or increase the policy's Limits of Liability. **CLAIMS** which are first made and reported during the Basic Extended Reporting Period or the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the **POLICY YEAR**.

## M. CONDITIONS

1. **ASSIGNMENT.** Assignment of interest under this policy will not bind **US** unless **WE** endorse the policy in writing assigning **YOUR** interest to another party.

2. **CANCELLATION.** This policy may be canceled by the **NAMED INSURED** by surrendering the policy to **US** or any of **OUR** authorized agents or by mailing written notice to **US** stating when the cancellation is to be effective. **WE** may cancel this policy by mailing to the **NAMED INSURED** at the address shown on the Declarations a written notice stating when the cancellation is to be effective. **WE** will give the **NAMED INSURED** ten (10) days notice for non-payment of premium or sixty (60) days notice for any other valid reason.

   The mailing of notice will be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **POLICY YEAR**. Delivery of written notice either by the **NAMED INSURED** or by **US** will be equivalent to mailing.

   If this policy is canceled, **WE** will send the **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the **NAMED INSURED** cancels, the refund will be the customary short rate proportion. **WE** will make the premium refund as soon as practicable after the date of cancellation. However, the premium refund is not a condition of cancellation.

   Notice of cancellation will only be sent to the **NAMED INSURED** and will serve as notice to all of **YOU**.

3. **NONRENEWAL.** If **WE** do not renew this policy, **WE** will mail written notice to the **NAMED INSURED** at least sixty (60) days before the end of the **POLICY YEAR**. Any changes in the terms and conditions quoted on renewal do not constitute nonrenewal of this policy.

4. **CHANGES.** The terms of this policy will not be waived or changed except by endorsement issued by **US** and made a part of this policy.

5. **MERGERS AND ACQUISITIONS.** All mergers and acquisitions with other firms occurring throughout the **POLICY YEAR** must be reported to **US** in writing within 60 days of the merger or acquisition, or the next anniversary of this policy, whichever is sooner. **WE** shall have the right to adjust the premium, terms, conditions and exclusions to reflect any shift in exposure created by such merger or acquisition.

6. **CONFLICTING STATUTES.** Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.

7. **SUBROGATION CLAUSE. YOU** will transfer to **US YOUR** rights of recovery against any other party for any **DAMAGES WE** have paid on **YOUR** behalf. **YOU** must do everything necessary to secure these rights and do nothing that would jeopardize them.

   **WE** will not exercise **OUR** right to recover against any of **YOU** unless the **DAMAGES** result from any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU**.

   Any amount recovered from subrogation shall be apportioned as follows:

   > Any amount recovered shall first, be used for repayment of **SUBROGATION EXPENSES**; second, to any **DAMAGES** and/or **CLAIM EXPENSE** paid by **US**; third, to any **DAMAGES** and **CLAIM EXPENSE** paid by an excess insurer on **YOUR** behalf; fourth, to any **DAMAGES** and **CLAIM EXPENSE** paid by any other primary insurer on **YOUR** behalf; and last, to repayment of **YOUR DEDUCTIBLE**.

8. **SEVERABILITY CLAUSE.** The application and any supplements or addendums, copies of which are attached to this policy, and the Declarations, are the basis of this policy. They are to be considered as incorporated in and constituting part of this policy. The particulars and statements contained in the application and any supplements or addendums and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of **YOU**. Nothing in this provision will be construed to increase **OUR** Limits of Liability as set forth in Item 4. of the Declarations.

LP-J-1 (12-96)

9. **OTHER INSURANCE.** If **YOU** have other insurance which applies to **CLAIMS** reported under this policy, **WE** will be excess of the amount of the applicable **DEDUCTIBLE** and any other valid and collectible insurance whether such other insurance is primary, pro rata, contributory, excess, contingent or any other basis, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this policy.

If a loss occurs involving two or more policies, each of which provides that its insurance will be excess, then each policy will contribute on a pro rata basis. This means that **WE** will pay no more than **OUR** percentage of the total amount of the insurance covering the **CLAIM**, less the **DEDUCTIBLE**. For example:

The limit of coverage under this policy is $100,000. Another insurance policy with a limit of $300,000 also covers a **CLAIM** covered by this policy. **WE** will not pay more than 25% ($100,000/$400,000) of the **DAMAGES** and **CLAIM EXPENSE**, less the **DEDUCTIBLE**.

10. **ACTION AGAINST US.** No action will lie against **US** unless **YOU** have fully complied with all the terms and Conditions of this policy prior to bringing the action. In the event of **YOUR** bankruptcy or insolvency, **WE** will not be relieved of **OUR** obligations under the terms and conditions of this policy.

11. **INSPECTION AND AUDIT. YOU** agree to allow **US** to examine and audit **YOUR** law office management procedures and records as they relate to this insurance during normal business hours while this policy is in force. **WE** are not, however, required to make inspections nor will **WE** guarantee that **YOUR** procedures are adequate or that they conform to any laws, rules or regulations.

In Witness Whereof, the Company has caused this policy to be executed and attested.

*Dennis W. Click*
Secretary

*R. Max Williamson*
President

LP-J-1 (12-96)

# ADDENDUM

**Some internal notes, or stamps, or typing on the declaration sheet may appear.  The intended use for these is internal only and may not have been a part of the policy received by the insured.**

**Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.**

# National Casualty Company

## NOTICE

**THE INSURANCE COVERAGE PROVIDED BY THIS POLICY IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS.**

THIS POLICY IS LIMITED TO LIABILITY FOR CLAIMS WHICH ARISE FROM INCIDENTS OCCURRING ON OR AFTER THE PRIOR ACTS DATE STATED IN THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU AND REPORTED TO US DURING THE POLICY YEAR. THIS POLICY CONTAINS IMPORTANT EXCLUSIONS AND CONDITIONS TO YOUR COVERAGE. PLEASE REVIEW THE POLICY CAREFULLY AND IF YOU HAVE ANY QUESTIONS ABOUT COVERAGE, PLEASE DISCUSS THEM WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE 94-11N (9-94)

# National Casualty Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LPO-0011445 | 9/18/1999 | CAROL CHAPMAN-KONDOS, P.C. DBA KONDOS & KONDOS | 42513 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES—TEXAS

Section M. **CONDITIONS** of the policy is amended as follows:

Condition 2. **CANCELLATION** is deleted in its entirety and is replaced by the following:

**2. CANCELLATION**

a. This policy may be canceled by the **NAMED IN-SURED** by surrendering the policy to **US** or any of **OUR** authorized agents or by mailing written notice to **US** stating when the cancellation is to be effective.

b. **WE** may cancel the policy by mailing or delivering to the **NAMED INSURED** written notice of cancellation stating the reason for cancellation at least:

   (1) ten (10) days before the effective date of cancellation if **WE** cancel this policy for nonpayment of premium; or

   (2) sixty (60) days before the effective date of cancellation if **WE** cancel this policy for any other reason.

c. **Cancellation of policies in effect for sixty (60) days or less.**

   If this policy has been in effect for sixty (60) days or less and is not a renewal, **WE** may cancel this policy for any reason, except, **WE** may not cancel this policy based solely on the fact that any insured is an elected official.

d. **Cancellation of policies in effect for more than sixty (60) days.**

   If this policy has been in effect for more than sixty (60) days or this is a renewal or continuation of a policy **WE** issued, **WE** may cancel this policy only for one or more of the following reasons:

   (1) Fraud in obtaining the coverage;

   (2) Failure to pay premiums when due;

   (3) An increase in hazard within **YOUR** control which would produce an increase in rate;

   (4) If **WE** lose reinsurance covering all or part of the risk covered by the policy; or

   (5) If **WE** have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

e. **WE** will give notice to the **NAMED INSURED** at the last mailing address known to **US**.

f. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

g. If the policy is canceled, **WE** will send the **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the **NAMED INSURED** cancels, the refund may be less than pro rata. The cancellation will be effective even if **WE** have not made or offered a refund.

h. If notice is mailed, proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995

LP-22s-TX (1-97)

i. Notice of cancellation will only be sent to the **NAMED INSURED** and will serve as notice to all of **YOU**.

Condition 3. **NONRENEWAL** is deleted in its entirety and is replaced by the following:

3. **NONRENEWAL**

a. **WE** may elect not to renew this policy by mailing or delivering written notice to the **NAMED INSURED**.

b. **WE** will give notice to the **NAMED INSURED** at the last mailing address known to **US**.

c. Notice of nonrenewal will be given at least sixty (60) days before the expiration date and will state the reason for nonrenewal. This policy will not be nonrenewed based solely on the fact that any insured is an elected official.

d. If notice is mailed or delivered less than sixty (60) days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. Any changes in the terms and conditions quoted on renewal do not constitute nonrenewal of this policy.

The following **CONDITION** is added to the policy and supersedes any provisions to the contrary:

**NOTICE OF SETTLEMENT OF LIABILITY CLAIMS**

**WE** will notify the **NAMED INSURED** in writing of **OUR** intent to withdraw from the defense of a **CLAIM**. Any settlement offer submitted to the **NAMED INSURED** by **US** must also be in writing.

_____   / _____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995

LP-22s-TX (1-97)

# National Casualty Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LPO-0011445 | 9/18/1999 | CAROL CHAPMAN-KONDOS, P.C. DBA KONDOS & KONDOS | 42513 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES—DEFINITION OF YOU AND YOUR

Paragraph d. of Definition 16. **YOU** and **YOUR** contained in Section **E. DEFINITIONS** is deleted in its entirety and is replaced by the following:

16. **YOU** and **YOUR**—means Insured and includes:

    d.  Retained Of Counsel, but only for **CLAIMS** that result from **WRONGFUL ACTS** committed within the scope of their association with and under the name of the **NAMED INSURED** or its **PREDE-CESSOR FIRM(S)**.

_signature_ **17**

RANDALL G. GOSS, CHAIRMAN/CEO

AUTHORIZED REPRESENTATIVE                DATE

LP-68s (4-95)

## IMPORTANT NOTICE—TEXAS

To obtain information or make a complaint:

You may contact your agent or you may call National Casualty's toll-free number for information or to make a complaint at:

### 1-800-423-7675

You may also write to National Casualty at:

> National Casualty Company
> 8877 N. Gainey Center Drive
> P.O. Box 4110
> Scottsdale, Arizona 85261

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance at:

> Texas Department of Insurance
> P.O. Box 149104
> Austin, Texas 78714-9104
> 1-512-475-1771 (Fax)

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

UT-93g-TX (5-92)

# National Casualty Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LPO-0011445 | 9/18/1999 | CAROL CHAPMAN-KONDOS, P.C. DBA KONDOS & KONDOS | 42513 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CHOICE OF COUNSEL

1. The following provision is added to Section **B. DEFENSE** of the policy:

   You will be entitled to select counsel to defend you in the event of a lawsuit. However, the counsel selected by you must be a law firm which is proficient in defending lawyers professional liability suits and licensed to practice in the venue of the court of jurisdiction. Such law firm must currently defend insureds of this type against professional liability claims on behalf of one or more insurance companies. The hourly rate to be charged by such counsel will be the same rate it would charge their other insurance clients for similar work.

   In the event the above provisions cannot be met, **WE** and **YOU** must mutually agree upon the selection of counsel.

2. The second sentence of the first paragraph of Section **B. DEFENSE** is deleted in its entirety and is replaced by the following:

   **WE** have the right to investigate any **CLAIM** or suit.

_signature_ **17**

RANDALL G. GOSS, CHAIRMAN/CEO

AUTHORIZED REPRESENTATIVE                    DATE

LP-63s (10-97)

# National Casualty Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| LPO-0011445 | 9/18/1999 | CAROL CHAPMAN-KONDOS, P.C. DBA KONDOS & KONDOS | 42513 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DECEPTIVE TRADE PRACTICES AND CONSUMER TRADE PROTECTION ACT—TEXAS

1. **WE** will pay any trebled damages, percentage increase damages, or multiple of actual or compensatory damages, whether mandatory or within the discretion of the trier of fact, assessed under the Texas Deceptive Trade Practices and Consumer Protection Act, Texas Business and Commerce Code, sections 17 et seq. and 41 et seq.

2. The Limits of Liability stated in Item c. of Section **E. DEFINITIONS, 3. DAMAGES,** are not applicable in relation to **DAMAGES** assessed under the Texas Deceptive Trade Practices and Consumer Protection Act, Texas Business and Commerce Code, sections 17 et seq. and 41 et seq. However, the most **WE** will pay for all **DAMAGES** and **CLAIM EXPENSE** is limited to the Limits of Liability stated in Item 4. of the Declarations.

All other terms, conditions, exclusions and limitations of this policy remain unchanged.

**17**

RANDALL G. GOSS, CHAIRMAN/CEO

AUTHORIZED REPRESENTATIVE          DATE

LP-64s-TX (10-97)

# THE FIRST REINSURANCE COMPANY OF HARTFORD

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## SUPPLEMENTAL CLAIM FORM

### INSTRUCTIONS FOR APPLICANT

1. THIS FORM IS TO BE COMPLETED BY AN APPLICANT WHO HAS BEEN INVOLVED IN ANY CLAIM OR SUIT INDICATED BY A "YES" ANSWER TO QUESTION 23. COMPLETE ONE FORM FOR EACH CLAIM.
2. IF SPACE IS INSUFFICIENT TO ANSWER ANY QUESTION FULLY, USE SEPARATE SHEET. *DO NOT ATTACH COPIES OF SUMMONS & COMPLAINT.*
3. LEAVE NO BLANKS.

1. Name of applicant: Carol Chapman-Kondos, P.C. dba Kondos & Kondos
2. Full name of individual(s) and name of firm involved in the claim:
   a. Kondos & Kondos                          c.
   b. Sally Robbins                            d.
3. Additional Defendants:
   a.                                          c.
   b.                                          d.
4. Full name of Claimant: David E. Owens
5. Date of alleged error: May 1998
6. To what insurance company did you report this claim: None
7. Date reported to insurance company:
8. Present status of claim: (Circle One)  ✕ Open    In Suit    Closed
9. Total damages paid/outstanding: $ _____    Valued as of what date 7/20/99
                                                                          MO./YR.
10. If pending:
    Amount asked in summons: $ _____
    Claimant's settlement demand: $ _____
    Defendant's offer for settlement: $ _____
11. Description of claim—including likelihood, if pending: (Please provide enough information to allow an evaluation.) (Do not attach summons and complaint.)
    a. Allegation upon which Claimant bases claim: We failed to file a request for a hearing in a Social Security Disability case within the time allotted.



    b. Description of case and events: Client sought help with a Social Security case. An attorney (who is no longer with our firm) failed to file a request for hearing. We are having client file a new application and we will ask to re-open the time lost. If not granted client would lose benefits for 1.5 years, about $20,000.



I understand information submitted herein becomes a part of the Applicant's Professional Liability application and is subject to the same representations and conditions.

_signature_                          7-22-99
SIGNATURE OF APPLICANT               DATE

# DAVIS & SHANK

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1415 Louisiana, Suite 4200
Houston, Texas 77002

Telephone
(713) 659-1010.

June 21, 1996

Facsimile
(713) 659-1122

Zurich-American Specialties
Professional Liability Claims
One Liberty Plaza
New York, NY 10006

Attn: Nathan S. Resnick

|       | Re: | Insured:       | Carol Chapman-Kondos, P.C. d/b/a Kondos & Kondos |
|-------|-----|----------------|--------------------------------------------------|
|       |     | Claimant:      | Paula Freeman                                    |
|       |     | Case Caption:  | Freeman v. Kondos                                |
|       |     | Claim No:      | Not assigned                                     |

Dear Nate:

I.      Nature of Case

The Plaintiff has brought a claim for legal negligence. The Insured previously represented Paula Freeman in Cause No. 366-846-93 *Paula A. Freeman v. The Wobaco Trust, et al.*; In the 366th Judicial District Court, Collin County, Texas (the Underlying Suit). The Underlying Suit was based on a slip and fall accident suffered by the Plaintiff. The accident allegedly occurred on June 14, 1991 when the Plaintiff fell on the premises of some rental property for which she was a tenant. The Underlying Suit was settled for $72,500.00. The case settled in July, 1994.

Allegedly, as a result of the Plaintiff's accident, she underwent two surgical procedures on her cervical spine. The first operation, which was performed on November 6, 1991, involved a cervical fusion at the C6-7 level. Subsequently, on November 17, 1993, a cervical fusion at the C5-6 level was performed. Although the Plaintiff alleged in the Underlying Suit that these operations were made necessary as a result of her accident, the medical records indicate that the Plaintiff had a degenerative back disease, and that her condition was more likely the result of the normal processes of aging.

During the course of Paula Freeman's representation in the Underlying Suit, it was discovered that there was an intraoperative x-ray taken on November 6, 1991 that indicated:

*Another view demonstrates what appears to be a needle or probe in the C5-6 interspace from an anterior approach.*

JRC-Mon Sep 20 1996 23 4P PM FR ROBERTS & CROW, INC.770 4421 TO US RISK-JARRETT   P.13

Zurich-American Spe    ti
June 21, 1996
Page 2

This x-ray report is the basis of the medical negligence claim. However, what has happened is that the Plaintiff's present attorney has misinterpreted the November 6, 1991 x-ray report, and has assumed that a needle or probe was left in the C5-6 interspace after the November 6, 1991 operation. I have informally discussed this matter with a a radiologist, and have learned that it is standard procedure to place a marker one level above the operating site so that the correct level can be identified during surgery. This appears to be what actually happened in the Underlying Suit. It appears that the November 6, 1991 x-ray was taken intraoperatively so that the doctors could identify and locate the proper operating site. Support for this is further found in the x-rays taken subsequent to the November 6, 1991 procedure. The Plaintiff had numerous pre-operative x-rays and MRI studies performed prior to her 1993 operation. None of these identified any "needle" or "probe" at the C5-6 interspace. In fact, it was the C5-6 level that was fused in the 1993 procedure, and it is extremely improbable that nobody noticed a needle or probe that had been left at this level.

II.     Claimant

Paula Freeman's last known address is 1707 Oak Street, McKinney, Texas 75069. However, it is my understanding after speaking with the Plaintiff's attorney that his client is somewhat of an indigent. Her social security number is 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. Ms. Freeman has been married several times. Her maiden name was Paula Alexander.

Although the Plaintiff's deposition was taken in the Underlying Suit, I have not thoroughly reviewed the transcript at this time. I do not think that it is relevant with regard to the medical negligence claims upon which a Summary Judgment will be heard.

III.    Insureds

The insureds are Carol Chapman-Kondos, P.C. d/b/a Kondos and Kondos. The attorney that represented the Plaintiff in the Underlying Suit is Bill Robbins. Kondos and Kondos has a high volume plaintiff's practice and utilizes TV advertising as part of its marketing plan.

When I met with Ms. Kondos and Mr. Robbins in Dallas, Texas, they explained to me that they focused their practice on vehicle collisions and personal injury cases. Mr. Robbins stated that he does not handle medical negligence causes of action. In this regard, he does not believe that he ever told Paula Freeman that he would represent her in her medical negligence claims against the doctors that performed her 11/6/91 surgery.

I spent several hours visiting with Ms. Kondos and Mr. Robbins, and thought they made very good appearances. I do not believe there is anything about them that would prevent them from being credible, effective witnesses.

Zurich-American Spe......ies
June 21, 1996
Page 3

IV.    Claimant's Counsel

Paula Freeman is represented by Gregory Marks d/b/a The Law Office of J. Gregory Marks. Mr. Marks does not have a Martindale-Hubbell description, and I have not heard of his reputation prior to this suit. I have talked to him numerous times on the telephone in an attempt to dismiss the present suit, and he has been very cordial. In fact, he has candidly told me that his client is difficult and that he does not want to pursue this case. However, he is having a difficult time getting his client into his office in order to explain the medical negligence facts to her.

V.    Other Parties

There are no other parties in this suit.

VI.    Summary of Facts and Claims

The medical negligence claims in this suit, quite frankly, are nothing more than a misinterpretation of an x-ray by the plaintiff's attorney. When Mr. Marks saw the notation on the November 6, 1991 x-ray (the report was prepared on November 18, 1991), he assumed that the statement that there was a "needle or probe in the C5-6 interspace" meant that one of the surgeons had left an object in the operating site. The defense to this claim is that the "needle or probe" seen by the radiologist was an intraoperative marker placed at that level by the surgeon in order to have a "landmark" to perform the C6-7 fusion procedure.

In order to prove these facts, it will be necessary to retain a radiologist, and to prepare an affidavit for his signature. I have met with Dr. John C. Rambeau on an informal basis to discuss this matter with him. He was interested in these facts, and said that he would provide me with an informal opinion (at no charge) regarding his findings. If they are favorable, and I expect they will be, we should consider retaining Dr. Rambeau to prepare an affidavit. Dr. Rambeau was born in 1931 and has been practicing since 1974. He received his medical degree from Tufts in 1957. He is board certified in radiology. Dr. Rambeau makes a very good appearance, and I believe he would testify well if called upon to do so.

VII.    Injury/Damages Claimed

The Plaintiff's damages and injuries arise out of the effect that the alleged "needle or probe" had upon her. However, as explained above, there is no factual basis for any of these claims. The defense we can present in the present suit is that there was no legal malpractice in the Underlying Suit. The reason for this, as explained above, is that there was no medical negligence. Therefore, the Plaintiff will not be able to prove causation.

Zurich-American Spe   ies
June 21, 1996
Page 4

## VIII.   Witnesses

I anticipate that the Plaintiff would call as a witness to this claim Dr. H. Hollenberg, the radiologist who prepared the 11/8/91 x-ray report based on the intraoperative x-ray taken on 11/6/91. We have contacted Parkland Hospital (the facility in which the x-ray was taken) and have learned that they cannot find the x-rays. We are currently in the process of obtaining an Affidavit of No Records from Parkland Hospital's custodian of records.

Due to the nature of the underlying claims, most of the witnesses would be medical doctors, and would be providing expert medical opinions. There are other doctors listed in the medical records, and I anticipate that these individuals would be fact and expert witnesses if this case were to proceed to trial.

## IX.   Analysis of Claim

The Plaintiff had a great theory, unfortunately for her, the facts did not bear out. It appears that the Plaintiff's attorney may have jumped the gun when he reviewed the 11/6/91 intraoperative x-ray report. Based on the preliminary analysis of the underlying medical negligence claim, I believe the probability of success on both liability and damages is 100%. However, should Dr. Rambeau provide me with information to the contrary, I will revise this analysis in accordance therewith.

## X.   Verdict Potential/Settlement

Based on my liability assessment of this matter, I believe that the present suit will result in a defense verdict. I do not think that this case should be settled. I believe that a Motion for Summary Judgment would be successful, and that no settlement should be considered. I recommend moving forward on the Motion for Summary Judgment and Motion for Sanctions against the Plaintiff.

## XI.   Legal Environment

This suit is filed in Dallas County. Historically, Dallas has been a conservative jurisdiction. However, as the suburbs have developed, Dallas has become a slightly more liberal jurisdiction.

## XII.   Strategy and Tactics

My immediate short-term strategy is to prepare and file the Motion for Summary Judgment and Motion for Sanctions. At this time, based on our preliminary information, I would take a very hard line and would not agree to any kind of nuisance value settlement. I believe there is a potential for a counterclaim based on Texas Rule of Civil Procedure 13, which is akin to Federal Rule of Civil Procedure 11, in that it allows for the court to award discretionary sanctions against a party who has brought a suit in bad faith.

I have forwarded the Plaintiff's attorney medical records which show that the "needle or probe" was not left in the operating site as he has alleged, but was merely placed there during the

Zurich-American Spec    ies
June 21, 1996
Page 5

procedure as a landmark for the orthopedic surgeon. Based on the Plaintiff's attorney's refusal to
nonsuit this case, it will be necessary for us to prepare a Motion for Summary Judgment and retain
an expert witness to testify by affidavit on the medical negligence issues. I will ask the court for my
attorney's fees, expert fees and court costs in this regard.

    In accordance with the Zurich Litigation Management Guidelines, I have attached a Pre-trial
Litigation Plan and Budget for your review. Please feel free to contact me with any comments or
questions.

                                Very truly yours,

                                Matthew C. Guilfoyle

MCG:wp
Attachment

cc:      (w/encl)
         Robert Fishman
         Zurich-American Specialties
         Professional Liability Claims
         One Liberty Plaza
         New York, NY 10006

# THE FIRST REINSURANCE COMPANY OF HARTFORD

## LAWYERS PROFESSIONAL LIABILITY INSURANCE APPLICATION

### THIS APPLICATION IS FOR A CLAIMS MADE INSURANCE POLICY

**INSTRUCTIONS**

- ALL QUESTIONS MUST BE ANSWERED COMPLETELY. PLEASE TYPE OR PRINT CLEARLY. IF ANY QUESTIONS ARE CONSIDERED "NOT APPLICABLE," PLEASE EXPLAIN WHY.

- IF YOU NEED MORE SPACE, CONTINUE ON A SEPARATE SHEET AND INDICATE QUESTION NUMBER.

- ENCLOSE COPY OF YOUR FIRM'S LETTERHEAD AND FIRM RESUME.

- COMPLETE INDIVIDUAL INSURED SUPPLEMENT FORM (COMPLETION OF THIS FORM IS MANDATORY.)

- COMPLETE A SEPARATE SUPPLEMENTAL CLAIM FORM FOR ANY CLAIM(S) OF WHICH THE APPLICANT IS AWARE OR IS NOW PENDING. IF THIS SUPPLEMENT DOES NOT APPLY TO THE INSURED, PLEASE MARK N/A (NOT APPLICABLE) AND SIGN AND DATE THE SUPPLEMENT AT THE BOTTOM.

- COMPLETE THE FINANCIAL INSTITUTION AND SEC SUPPLEMENTAL APPLICATION FORM IF YOUR PRACTICE INVOLVES REPRESENTATION OF FINANCIAL INSTITUTIONS OR ANY EXPOSURES TO FEDERAL OR STATE SECURITIES WORK. IF THE FIRM'S PRACTICE DOES NOT INVOLVE FINANCIAL INSTITUTIONS OR SECURITIES WORK, INDICATE THIS ON THE SUPPLEMENTS AND SIGN AND DATE THEM.

- THIS APPLICATION AND ALL SUPPLEMENTAL FORMS MUST BE SIGNED AND DATED BY A PRINCIPAL OF THE FIRM.

**INSURED INFORMATION**

1. Name of Applicant: Carol Chapman-Kondos, P.C. dba Kondos & Kondos

   ☐ Individual    ☐ Partnership    ☒ Professional Corporation

2. Address: 1595 North Central Expressway

   City: Richardson    County: Dallas    State: Texas    Zip: 75080

   Telephone ( 972 ) 231-9924    Federal Tax I.D. No.: 75-1956966

3. Date Commenced Business: 1980

4. List the names of all predecessor firms whose assets and liabilities the applicant is the majority successor in interest. Include the dates the predecessor firms were established and the dates of merger.

| Name of Predecessor Firm | Date Established | Date of Merger |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |

5. List the addresses of all branch offices and the dates the branch offices were established:

| Address of Branch Office | Date Established |
|---|---|
| (a) 407 W. Silver Spring Drive, Milwaukee, Wisconsin 53217 | |
| (b) | |
| (c) | |

HEATH Insurance Brokers, Inc.

6. Indicate the total number of personnel by location (match branch office personnel with the branch offices in question 5). Please indicate if a branch office is being used solely as a meeting place and is not staffed.

| | Principal Office | Wisconsin Branch Office (a) | Branch Office (b) | Branch Office (c) |
|---|---|---|---|---|
| Partners or officers | 1 | 1 | | |
| Employed lawyers | 8 | 6 | | |
| Lawyers "of counsel" | 0 | 0 | | |
| Paralegals or law clerks | 16 | 16 | | |
| Other clerical staff | 7 | 7 | | |

**PLEASE COMPLETE THE INDIVIDUAL INSURED SUPPLEMENTAL FORM.**

7. How many lawyers have joined the firm during the past 12 months? ___2___. How many lawyers have left the firm during the past 12 months? ___3___.

8. Has the applicant ever closed a branch office or had a single group departure of 5 or more lawyers during the past three years? ☐ Yes ☒ No  If Yes, provide full details: _____

9.a. Does any lawyer in the firm serve as a director, officer, trustee or partner of, or exercise any fiduciary control over, any organization other than the firm? ☐ Yes ☒ No  If Yes, list the lawyer's name, organization, nature of the organization's business, position held and whether or not the organization is a client of the firm.

| Name of Lawyer | Name of Organization | Nature of Business | Position Held | Percent of Equity Interest | Client of Firm? |
|---|---|---|---|---|---|
| | | | | ____% | ☐ Yes ☐ No |
| | | | | ____% | ☐ Yes ☐ No |
| | | | | ____% | ☐ Yes ☐ No |
| | | | | ____% | ☐ Yes ☐ No |
| | | | | ____% | ☐ Yes ☐ No |
| | | | | ____% | ☐ Yes ☐ No |
| | | | | ____% | ☐ Yes ☐ No |

9.b. If question 9.a. is answered Yes, indicate which of the above organizations carry Directors' and Officers' Liability? _____

10. Except as listed in question 9.a., is the applicant or any lawyer in the firm engaged in any occupation, business enterprise or profession outside the practice of law? ☐ Yes ☒ No  If Yes, provide full details: _____

---

## NATURE OF PRACTICE

11. Applicant's fiscal year ends on: December 31
   Indicate the gross income for the applicable fiscal year (gross income means all sums billed to clients for services rendered):

   a. Actual for immediate past fiscal year:   $ 3,000,000

   b. Estimate for current fiscal year:   $ Same

12.  Indicate the percentage of gross income for the past fiscal year derived from the following areas of practice:

| Area of Practice | % | Area of Practice | % |
|---|---|---|---|
| Administrative Law – | | Labor Relations – | |
| Banks/Savings and Loan | % | Labor Representation | % |
| Oil and Gas | % | Management Representation | % |
| Public Utilities | % | Litigation (Civil) | % |
| Other | % | Local Government Law | % |
| Admiralty/Maritime | % | Mergers and Acquisitions | % |
| Anti-Trust/Trade Regulation | % | Pension and Employee Benefits | % |
| Bankruptcy | % | Personal Injury and Negligence – | |
| Business Transactions and | | Defendant Representation | % |
| Commercial Law | % | Plaintiff Representation | 90 % |
| Civil Rights and Discrimination | % | Public Contract Law | % |
| Collection/Repossession | % | Real Property – | |
| Communications (FCC) | % | Conveyance | % |
| Construction Law | % | Development | % |
| Copyright/Patent/Trademark | % | Title Examination | % |
| Corporate and Business | | Securities Law * | % |
| Organization | % | Taxation – | |
| Criminal Law | % | Opinions | % |
| Entertainment/Sports | % | Preparation | % |
| Environmental Law | % | Worker's Compensation | % |
| Estate, Trust and Probate | % | Other (list) | |
| Family Law | % | Social Security Disability | 10 % |
| Healthcare | % | | % |
| Immigration and Naturalization | % | | % |
| International Law | % | | % |
| | | TOTAL | 100 % |

**\* PLEASE COMPLETE SEC SUPPLEMENTAL FORM, IF APPLICABLE**

13.  Does the applicant foresee any major changes in the percentages shown in question 12. for the current fiscal year?
☐ Yes  ☒ No   If Yes, provide full details:

_____
_____
_____

14.  List the five largest clients of the applicant in terms of sums billed. Include the nature of the client's business and the area(s) of practice in which applicant renders services (use the categories shown in question 12. to describe area(s) of practice).

| Client | Nature of Business | Area(s) of Practice | % of Firm's Gross Billings |
|---|---|---|---|
| Not applicable to our practice | | | |
| | | | |
| | | | |
| | | | |

15.  Does the firm share office space with other firms or attorneys who are not members of the applicant firm? ☐ Yes  ☒ No
If Yes, provide an explanation by separate attachment how your firm's practice is presented as a separate practice to clients or potential clients.

16. Does the applicant or any lawyer in the firm provide investment advisory services or have discretionary investment authority over the funds of any client? ☐ Yes ☒ No  If Yes, provide full details: _____

_____

_____

---

## GENERAL POLICY AND PROCEDURES

**(Applicant may elect to provide additional details on a separate sheet
in support of a response to any question in this section.)**

17. **Docket and Calendar**

   (a) Does the firm maintain a planned docket control system and procedure with at least two independent date controls? — ☒ Yes ☐ No

   (b) Is the docket control system and procedure computerized? — ☒ Yes ☐ No

   (c) Does the planned docket control system and procedure produce at least a weekly calendar? — ☒ Yes ☐ No

   (d) Does the planned docket control system and procedure cover all aspects of the firm's practice? — ☒ Yes ☐ No

   (e) Does the planned docket control system and procedure require lawyers to both calendar and remove from calendar all filing dates? — ☒ Yes ☐ No

   (f) Are open calendar entries on the planned docket control system and procedure circulated to all lawyers or, if the firm is divided into formal departments, to all lawyers in the appropriate department? — ☒ Yes ☐ No

18. **Training**

   (a) Does the firm maintain a formal training program for new lawyers as to office and court procedure? — ☒ Yes ☐ No

   (b) How many lawyers in the firm have participated in formal continuing legal education programs of at least seven hours during the last year? — _All_

19. **Supervision**

   (a) Is the firm divided into formal departments? — ☒ Yes ☐ No

   (b) Is a partner of the firm responsible for every matter in the office? — ☒ Yes ☐ No

   (c) Is the assignment of matters to specific lawyers in the firm subject to approval of the department head for the type of matter involved? — ☒ Yes ☐ No

20. **New Business**

   (a) Does the firm issue engagement or declination letters on all new matters being presented to the firm? — ☒ Yes ☐ No

   (b) Does the firm outline and reduce to writing the firm's billing policy and procedure at the first meeting with a new client? — ☒ Yes ☐ No

   (c) Does the firm maintain written procedures for indentifying potential or actual conflicts of interest? — ☒ Yes ☐ No

   (d) What system(s) does the firm use to check for conflicts of interest?
   ☐ Oral/Memory  ☐ Index File  ☒ Computer  ☐ Conflict Committee
   ☐ Other _____

   (e) Is new business subject to the approval of a committee or partner other than the lawyer generating the business? — ☒ Yes ☐ No

   (f) Is a lawyer generating business required to associate with a partner with specific expertise in the matter generated as the responsible partner for the matter? — ☒ Yes ☐ No

   (g) Is information as to all new business made available on at least a weekly basis to all partners? — ☒ Yes ☐ No

JRC-Mon Sep 20 13:26:21 1999
JUL 26 1999  5:38 PM FR ROBERTS & CROW, INC.770 4421 TO US RISK-JARRETT    P.06

**21.    Outside Communications**

(a)   Do major opinion letters have to be approved by more than one partner of the firm?  N/A    ☐ Yes  ☐ No
(b)   Does the firm have a committee or partner responsible for approving letters to auditors?  N/A    ☐ Yes  ☐ No
(c)   Does the firm have any formal, written rules on responding to client's communications?    ☒ Yes  ☐ No
(d)   Does the firm have any formal, written rules on use of the firm's stationery?    ☒ Yes  ☐ No
(e)   When a matter is completed does the firm use a termination letter?    ☒ Yes  ☐ No
(f)   Does the firm advertise their services? If Yes, provide details including a copy of the    ☒ Yes  ☐ No
       advertisement or a transcript of the audio. Do not include listing of the firm's name
       in the telephone book. _____

**22.    Miscellaneous**

(a)   Does the firm have a system requiring complaints by either a client or other counsel    ☒ Yes  ☐ No
       to be reviewed by a partner other than the lawyer about whom the complaint is made?
(b)   Does the firm allow its lawyers to practice law outside the firm?    ☐ Yes  ☒ No
(c)   Does the firm maintain formal, written rules as to lawyer purchases or sales of a client's  N/A    ☐ Yes  ☐ No
       securities?
(d)   Does service on a Board of Directors have to be approved by a committee or partner?    ☒ Yes  ☐ No
(e)   Do suits for collection of fees have to be approved by a committee or partner?    ☒ Yes  ☐ No
(f)   How many suits for collection of fees have been filed by the firm during the past 2 years?    -0-
(g)   Does the firm maintain a fidelity bond covering all employees, partners and officers    ☐ Yes  ☒ No
       of the firm? If Yes, please list carrier, limit and expiration date. _____
       _____
(h)   During the past 5 years, has the firm had any fidelity bond loss? If yes, please describe    ☐ Yes  ☒ No
       on separate attachment, including date, type, amount and reimbursement, if any.
(i)   Are custodial accounts (i.e., money, securities and other property held on behalf of    ☐ Yes  ☒ No
       clients) audited by an independent, outside auditor? If Yes, please specify name: ___
       _____
(j)   Are two signatures required for all withdrawals of funds from custodial accounts?    ☐ Yes  ☒ No
(k)   What is the average and maximum dollar amount of all custodial accounts (not including    AVG: $ 0 _____
       retainer fees)?    MAX: $ _____

---

## CLAIMS AND KNOWN INCIDENTS

23.   Has any lawyer in the firm ever been refused admission to practice, disbarred or suspended from practice, or reprimanded,
       sanctioned or disciplined by any court or administrative agency? ☐ Yes ☒ No  If Yes, provide full details: _____
       _____
       _____
       _____

24.   Has any professional liability claim been made against the applicant or any predecessor in business or any of the past or present
       lawyers in the firm during the past five years? ☐ Yes ☒ No  If Yes, provide full details on a supplemental claim form.

25.   After inquiry, does the applicant or any lawyer in the firm know of any circumstances, acts, errors or omissions that could result
       in a professional liability claim against the applicant or any predecessor in business or any of the past or present lawyers in
       the firm? ☒ Yes ☐ No  If Yes, provide full details: Please see attached Social Security incident report. _____
       _____
       _____
       _____

---

## PRIOR INSURANCE INFORMATION

25.   Has the applicant or any predecessor in business ever had an insurer decline, cancel, refuse to renew or accept only on special
       terms any professional liability insurance? ☐ Yes ☒ No  If Yes, provide full details: _____
       _____

27. Has the applicant or any predecessor in business ever purchased an "extended reporting period" or "discovery period" under a prior policy which extended the claims reporting period of that policy following cancellation or non-renewal? ☐ Yes ☒ No
If Yes, provide full details: _____

28. List the professional liability insurance purchased by the applicant for each of the past five years.

| Insurer | Limit of Liability | Deductible | Premium | Inception Mo/Day/Yr | Expiration Mo/Day/Yr |
|---|---|---|---|---|---|
| First Re of Hartford | $1M/$1M | $10Kpc/$25Kagg | $27,729 | 09/18/98 | 09/18/99 |
| First Re of Hartford | $1M/$1M | $25,000 agg | $34,763 | 09/18/97 | 09/18/98 |
| First Re of Hartford | $1M/$1M | $25,000 agg | $39,088 | 09/18/96 | 09/18/97 |
| Zurich American | $1M/$1M | $25,000 p.c. | | 09/18/95 | 09/18/96 |
| Home | $500K/$1M | $25,000 p.c. | | 09/18/94 | 09/18/95 |

29. Does the applicant's current or most recently expired policy contain a retroactive date? ☐ Yes ☒ No  If Yes, indicate the date: _____
    (Mo/Day/Yr)

## CORPORATE SIGNATURE AND AGREEMENTS

### NOTICE TO APPLICANT — PLEASE READ CAREFULLY

30. List the person designated to receive notices from the insurer if a policy is issued:

| Carol Chapman-Kondos | Owner |
|---|---|
| NAME | TITLE |

THIS APPLICATION DOES NOT BIND THE APPLICANT OR INSURER TO COMPLETE THE INSURANCE; HOWEVER, THIS APPLICATION WILL BE THE BASIS OF THE CONTRACT IF A POLICY IS ISSUED, AND IT WILL BE ATTACHED TO AND MADE A PART OF THE POLICY.

THE UNDERSIGNED PARTNER OR OFFICER, ACTING ON BEHALF OF THE APPLICANT AND ALL PERSONS PROPOSED FOR THIS INSURANCE, REPRESENTS THAT ALL STATEMENTS ON OR ATTACHED TO THIS APPLICATION ARE TRUE. THE UNDERSIGNED PARTNER OR OFFICER AGREES THAT IF ANY OF THE INFORMATION SUPPLIED ON OR ATTACHED TO THIS APPLICATION CHANGES BETWEEN THE DATE OF THE APPLICATION AND THE EFFECTIVE DATE OF THE POLICY APPLIED FOR, THE UNDERSIGNED PARTNER OR OFFICER WILL IMMEDIATELY NOTIFY THE INSURER OF SUCH CHANGES AND THE INSURER SHALL HAVE THE RIGHT TO WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATION OR AGREEMENT TO BIND THE INSURANCE.

THE UNDERSIGNED PARTNER OR OFFICER, ACTING ON BEHALF OF THE APPLICANT AND ALL PERSONS PROPOSED FOR THIS INSURANCE, AGREES THAT FEES, COSTS AND EXPENSES INCURRED IN THE DEFENSE AND SETTLEMENT OF CLAIMS SHALL BE INCLUDED IN ANY DEDUCTIBLE (RETENTION).

WARNING–New York Residents: Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000, and the stated value of the claim for each such violation.

FRAUD PREVENTION WARNING: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

THIS APPLICATION MUST BE SIGNED AND DATED BY OWNER, PARTNER OR OFFICER.

| _Carol C Kondos_ | _President_ |
|---|---|
| SIGNATURE OF APPLICANT | TITLE |
| CAROL C. KONDOS | 7-22-99 |
| PRINT NAME | DATE |

PLEASE MAKE CERTAIN ALL QUESTIONS ARE ANSWERED AND THAT ALL APPLICABLE SUPPLEMENTAL FORMS ARE COMPLETED. THIS APPLICATION WILL NOT BE PROCESSED UNLESS ALL QUESTIONS ON THIS APPLICATION AND APPLICABLE SUPPLEMENTAL FORMS ARE ANSWERED.

# THE FIRST REINSURANCE COMPANY OF HARTFORD

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## INDIVIDUAL INSURED SUPPLEMENT FORM

**Name of Applicant** Carol Chapman-Kondos, P.C. dba Kondos & Kondos          (TEXAS OFFICE)

NAME OF ALL OWNERS, PARTNERS, OFFICERS, DIRECTORS, STOCKHOLDER EMPLOYEES AND EMPLOYED LAWYERS:

Designations:
"O"   Officers, Directors or Shareholders of the corporation who are licensed lawyers
"P"   Partners of a partnership
"S"   Sole Proprietor
"E"   Employed lawyers (must be employee of applicant)
"C"   Of Counsel attorneys for whom coverage is desired
"A"   Associate for whom coverage is desired

| Lawyer's Name | Designation O, P, S, E, C or A | Year Admitted to Bar Mo/Year | Years in Practice | Lawyer's Individual Specialty | Member in good standing of the following Bar Association(s) | |
|---|---|---|---|---|---|---|
| 1. Carol C. Kondos | O | 1980 | 19 | 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 | D⁰ᵗ 1980 | 7 |
| 2. Anjel Avant | E | 1991 | 8 | 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 | 8/31/92 | 7 |
| 3. D. Clare Lawler | E | 1986 | 13 | 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 | 8/86 | 7 |
| 4. Wm. E. Robbins | E | 1987 | 12 | 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 | 9/1/87 | 7 |
| 5. Robt. Jay Nussbaum | E | 1995 | 4 | 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 | 10/16/95 | 4 |
| 6. Sally J. Robbins | E | 1996 | 3 | 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 | 3/11/96 | 3 |
| 7. Timothy J. O'Hare | E | 1996 | 3 | 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 | 4/24/97 | 2 |
| 8. Hilary L. Thomas | E | 1994 | 5 | 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 | 8/01/97 | 2 |
| 9. Kristi Parks | E | 1993 | 6 | 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 | 8/17/98 | |
| 10. | | | | | | |
| 11. | | | | | | |
| 12. | | | | | | |
| 13. | | | | | | |
| 14. | | | | | | |
| 15. | | | | | | |
| 16. | | | | | | |
| 17. | | | | | | |
| 18. | | | | | | |
| 19. | | | | | | |
| 20. | | | | | | |
| 21. | | | | | | |
| 22. | | | | | | |
| 24. | | | | | | |
| 25. | | | | | | |

# THE FIRST REINSURANCE COMPANY OF HARTFORD

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## INDIVIDUAL INSURED SUPPLEMENT FORM

**Name of Applicant**  Carol Chapman-Kondos, P.C. dba Kondos & Kondos          (WISCONSIN OFFICE)

NAME OF ALL OWNERS, PARTNERS, OFFICERS, DIRECTORS, STOCKHOLDER EMPLOYEES AND EMPLOYED LAWYERS:

Designations:
"O"  Officers, Directors or Shareholders of the corporation who are licensed lawyers
"P"  Partners of a partnership
"S"  Sole Proprietor
"E"  Employed lawyers (must be employee of applicant)
"C"  Of Counsel attorneys for whom coverage is desired
"A"  Associate for whom coverage is desired

| | Lawyer's Name | Designation O, P, S, E, C or A | Year Admitted to Bar Mo/Year | Years In Practice | Lawyer's Individual Specialty | Member in good standing of the following Bar Association(s) |
|---|---|---|---|---|---|---|
| 1. | Daniel P. Kondos | O | 1973 | 26 | 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 | 1984 |
| 2. | Jeffrey T. Clutts | E | 1986 | 11 | 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 | 10/90 |
| 3. | Robert B. Erdmann | E | 1986 | 13 | 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 | 8/89 |
| 4. | Michael D. Leffler | E | 1988 | 11 | 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 | 10/89 |
| 5. | James Shilobritt | E | 1988 | 11 | 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 | 4/89 |
| 6. | Steven C. Gaberi | E | 1986 | 13 | 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 | 3/15/90 |
| 7. | Randal Rozek | E | 1996 | 3 | 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 | 9/14/98 |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |
| 11. | | | | | | |
| 12. | | | | | | |
| 13. | | | | | | |
| 14. | | | | | | |
| 15. | | | | | | |
| 16. | | | | | | |
| 17. | | | | | | |
| 18. | | | | | | |
| 19. | | | | | | |
| 20. | | | | | | |
| 21. | | | | | | |
| 22. | | | | | | |
| 24. | | | | | | |
| 25. | | | | | | |

# National Casualty Company

Property/Casualty Division

P.O. Box 4110 • Scottsdale, Arizona 85261 • (602) 948-0505 • Fax (602) 483-6752

## ADDITIONAL INFORMATION SUPPLEMENT

A. Provide a listing of all attorneys, the date they began private practice and the date they began practicing with the Firm. Indicate if any are "Of Counsel."

B. Does (or has) the Firm or any member of the Firm during the past 36 months:

   1. Have discretionary investment authority over client funds?...................................................... ☐ Yes  ☑ No

   2. Act in the capacity of or with the title "trustee" for a client and as such actively operate, manage or control any business property, business or institution in a manner similar to an owner, officer, director, partner or shareholder?........................................................................... ☐ Yes  ☑ No
   *If yes to any of the above, please complete the Fiduciary Activities Supplement.*

C. 1. Does the Firm have established administrative procedures for managing each step of a client matter? ........................................................................................................................... ☑ Yes  ☐ No
   If yes, are they in writing?............................................................................................... ☑ Yes  ☐ No

D. New Matters/New Client Acceptance

   1. Does the Firm use an initial interview form that provides for designation of conflict of interest information and key diary dates? ..................................................................................... ☑ Yes  ☐ No

   2. Is a client or new client matter accepted only after a conflict of interest search has been completed?........................................................................................................................ ☑ Yes  ☐ No

   3. Has the firm established criteria for screening the types of clients the office will not represent?...... ☑ Yes  ☐ No

E. Client Communication

   Please indicate which of the following documents are used:

   ☑ Engagement or retainer agreement letter on all new client engagements. (If not used, please explain).
   ☑ Termination letters to finalize or terminate a client relationship.
   ☑ Non-representation letters when declining a new matter for on-going clients or the declination of representation to prospective clients.

F. Conflicts of Interest Systems

   How does the Firm retain Conflict of Interest Avoidance Information?
   ☑ Single Index Files   ☐ Multiple Index Files   ☑ Computer   ☐ Other (explain): _____

G. Diary System and Docket Control

   Does the Firm maintain a planned docket control system and procedure with at least two independent date controls?
   Please describe two:  _computer + manual calendars_

H. Peer Review and Supervision

   1. Does the Firm have a procedure for formalized peer review? ........................................ ☐ Yes  ☑ No
   If yes, frequency: _____

   2. Are associates for the Firm subject to formalized review?............................................. ☑ Yes  ☐ No
   If yes, frequency: _____

   3. Is a principal in the Firm ultimately responsible for every matter in the office?................. ☑ Yes  ☐ No

I. Complete a Supplemental Claim Information form for each claim or incident in the last five (5) years. If there have been any disciplinary complaints against any firm member in the last five (5) years, please provide full details on a separate sheet.

_____        7-8-99
SIGNATURE                            DATE

LP-APP-19 (2-98)

JRC-Mon Sep 2 05:26:61 42 PM FR ROBERTS & CROW, INC.770 4421 TO US RISK-JARRETT   P.19

# National Casualty Company

Home Office:
2000 Westwood Drive · Wausau, Wisconsin 54401

Property/Casualty Division:
8877 North Gainey Center Drive · Scottsdale, Arizona 85258

1-800-423-7675 (outside Arizona)

## Year 2000 Supplemental Application
## Lawyers Professional Liability Application

NOTE: This Supplement should be completed based on data obtained from inquiry of key personnel in charge of Your data processing, management information and other systems.

For the purposes of this Supplement to the Application and the subsequent policy, if issued, the term "Y2K Compliant" shall mean that all:

1.  computer hardware, including microprocessors;
2.  computer application software;
3.  computer operating systems and related software;
4.  computer networks;
5.  microprocessors (computer chips) not part of any computer system; or
6.  any other computerized or electronic equipment or components

have the ability to recognize and process data prior to, during and after 1/1/2000 without date related errors and without date related omissions including leap year calculation.

### IMPORTANT—PLEASE ANSWER THE FOLLOWING QUESTIONS:

1.  Are all of your computer systems Y2K Compliant?   ☐ Yes   ☒ No
    If No, please explain, including date compliance is expected: _9 – 1 – 99_ _____
    _____
    _____
    _____
    _____

2.  If you are not Y2K Compliant, do you have an executable contingency plan in place which would allow you to continue to operate should you experience a failure in a critical system?   ☒ Yes   ☐ No
    If No, please explain: _____
    _____
    _____
    _____
    _____

3.  Have you assessed the vendors of your firm about their Y2K Compliance?   ☒ Yes   ☐ No   Do you have an executable contingency plan in place which would allow you to continue to operate should a critical vendor, supplier or business partner fail as a result of a Y2K problem?.   ☒ Yes   ☐ No
    If No, please explain: _____
    _____
    _____
    _____
    _____

### Please see back—signature required.

4. Do you provide legal advice or counsel your clients regarding their compliance with Y2K issues?   ☐ Yes  ☒ No
If Yes, please explain: _____
_____
_____
_____
_____
_____

The above information is based upon data obtained from inquiry of key personnel in charge of Your data processing, management information and other systems.

This Year 2000 Supplement is attached to and form a part of the Lawyers Professional Liability Application and/or Renewal Application. It is subject to the same provisions concerning representations made as in the basic Application and/or Renewal Application.

### FRAUD WARNING

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Carol Chapman-Kondos, P.C. dba Kondos & Kondos
FIRM NAME

SIGNATURE (Officer, Director, Partner, Sole Proprietor)          DATE  7-8-99

**Applicable to Florida Agents Only:**

Agent Name: _____

Agent License Number: _____

# THE FIRST REINSURANCE COMPANY OF HARTFORD

### LAWYERS PROFESSIONAL LIABILITY INSURANCE
### SUPPLEMENTAL CLAIM FORM

**INSTRUCTIONS FOR APPLICANT**

1. THIS FORM IS TO BE COMPLETED BY AN APPLICANT WHO HAS BEEN INVOLVED IN ANY CLAIM OR SUIT INDICATED BY A "YES" ANSWER TO QUESTION 23. COMPLETE ONE FORM FOR EACH CLAIM.
2. IF SPACE IS INSUFFICIENT TO ANSWER ANY QUESTION FULLY, USE SEPARATE SHEET. *DO NOT ATTACH COPIES OF SUMMONS & COMPLAINT.*
3. LEAVE NO BLANKS.

1. Name of applicant: _CAROL Chapman-Kondos, P.C. dba Kondos & Kondos_
2. Full name of individual(s) and name of firm involved in the claim:
   a. _Kondos & Kondos_   c. _____
   b. _Sally Robbins_   d. _____
3. Additional Defendants:
   a. _____   c. _____
   b. _____   d. _____
4. Full name of Claimant: _DAVID E. OWENS_
5. Date of alleged error: _May 1998_
6. To what insurance company did you report this claim: _none_
7. Date reported to insurance company: _today_
8. Present status of claim: (Circle One)  **Open**  In Suit   Closed
9. Total damages paid/outstanding: $ _20,000_    Valued as of what date _7-20-99_
10. If pending:
    Amount asked in summons: $ _____
    Claimant's settlement demand: $ _____
    Defendant's offer for settlement: $ _____
11. Description of claim—including likelihood, if pending: (Please provide enough information to allow an evaluation.) (Do not attach summons and complaint.)
    a. Allegation upon which Claimant bases claim: _We failed to file a Request for a hearing in a social security disability case, within the time allowed_

    b. Description of case and events: _Client sought help with a social Security case. An attorney (who is No longer with us) failed to file a request for hearing. We are having client file a new application and we will ask to Re-open the time lost. If not granted client would lose benefits for 1½ yrs. — about $29000_

I understand information submitted herein becomes a part of the Applicant's Professional Liability application and is subject to the same presentations and conditions.

_Carol Kondos_    _7-20-99_
SIGNATURE OF APPLICANT    DATE

FRH S-SUPP (10/81)

# KONDOS & KONDOS
## LAW OFFICES

DANIEL P. KONDOS, S.C.*+
CAROL C. KONDOS, P.C.*+#
D. CLARE LAWLER*
WILLIAM E. ROBBINS*
ANIEL K. AVANT*
ROBERT J. NUSSBAUM*
SALLY I. ROBBINS*
TIMOTHY J. O'HARE*
HILARY THOMAS*
KRISTI C. PARKS*
JAMES R. SHLGBRIT*+
ROBERT B. ERDMANN*+
MICHAEL D. LEFFLER*+
STEVEN C. GABERT+
JEFFREY R. CLUTTS+
RANDALL ROZEK+

1595 NORTH CENTRAL EXPRESSWAY
RICHARDSON, TEXAS 75080-3590
(972) 231-9924

DALLAS OFFICE

KONDOS & KONDOS
1595 N. CENTRAL EXPWY.
RICHARDSON, TEXAS 75080-3590
(972) 231-9924
(817) 383-3357
FAX (972) 231-8626

DANIEL F. KONDOS, S.C.
407 W. SILVER SPRING DR.
MILWAUKEE, WISCONSIN 53217
(414) 961-0080
FAX (414) 961-1675

* MEMBER OF TEXAS BAR
+ MEMBER OF WISCONSIN BAR
# MEMBER OF ILLINOIS BAR

September 8, 1999

Ms. Michele Wade
Roberts & Crow, Inc.
12221 Merit Drive, Suite 1350
Dallas, Texas  75251

RE: Lawyers Professional Liability

| | |
|---|---|
| Insurance Carrier: | National Casualty Company |
| Effective Date: | 9-18-99 |
| Limits Requested: | $1,000,000/$1,000,000 |
| Deductible Requested: | $10,000 (Loss & Expense) |
| Premium: | $28,608 |

Dear Ms. Wade:

We request that you secure the above cited coverage, providing the
limits and deductible shown above. We also confirm that there have
been no material changes in the information provided on the
previously signed and dated application or any new claims or
incidents.

This letter will also confirm that the Milwaukee office is subject
to the same internal controls as the Dallas office  and that both
of us are Y2K compliant.

Possible choices for defense firms:
        Dallas    -Jackson & Walker or Thompson & Coe
        Milwaukee-Foley & Lardner  or  Michael. Best & Friedrich

Ms. Michele Wade
September 8, 1999
page two

Please forward the requested policy at your earliest convenience.
The original of this letter will follow by mail, and will have
copies of the current advertising enclosed..

Very truly yours,

Carol Chapman-Kondos
President

2

CAUSE NO. _____ OD-7529

| | |
|---|---|
| LUCY SMITH AND MICHAEL SMITH § | IN THE DISTRICT COURT OF |
| § | |
| VS. § | |
| § | |
| KONDOS & KONDOS, DANIEL P. § | |
| KONDOS INDIVIDUALLY AND § | DALLAS COUNTY, TEXAS |
| DANIEL P. KONDOS, S.C., CAROL § | |
| C. KONDOS INDIVIDUALLY AND CAROL § | |
| C. KONDOS, P.C., WILLIAM E. ROBBINS,§ | |
| ANJEL K. AVANT-BENTON, ROBERT J. § | |
| NUSSBAUM, AND ARMANDO ROBERT § | |
| VILLALOBOS § | _____ JUDICIAL DISTRICT |

B-44th

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, Lucy Smith and Michael Smith (hereinafter "Plaintiffs"), and files this their Original Petition complaining of Kondos & Kondos, Daniel P. Kondos, Individually and Daniel P. Kondos, S.C., Carol C. Kondos, Individually and Carol C. Kondos, P.C., William E. Robbins, Anjel K. Avant-Benton, Robert J. Nussbaum and Armando Robert Villalobos, (hereinafter collectively referred to as "Defendants") and for cause of action would respectfully show the Court the following:

### I.
### DISCOVERY CONTROL PLAN

1.     Plaintiffs intend to conduct discovery under Level 3 of the Texas Rule of Civil Procedure 190.

### II.
### VENUE AND JURISDICTION

2.     The Court has jurisdiction over each Defendant because each corporate Defendant does business in Texas and each individual Defendant is a Texas resident. The Court has jurisdiction of the controversy because the damages sought are within the jurisdictional limits of the Court.

3.     Venue is proper in Dallas County pursuant to Texas Civil Practice and Remedies Code, § 15.002, because a substantial part of the cause of action occurred in Dallas County.

## III.
## PARTIES

4.      Plaintiffs, Lucy Smith and Michael Smith, are individuals residing in Grandbury, Hood County, Texas.

5.      Defendant Kondos & Kondos (hereinafter "KONDOS") is a partnership engaged in the practice of law in Dallas, Dallas County, Texas and can be served with process by serving Carol C. Kondos, president of Carol C. Kondos, P.C., a partner of Kondos & Kondos, at 1595 North Central Expressway, Richardson, Texas 75080-3590.

6.      Defendant Daniel P. Kondos (hereinafter "D. KONDOS") is a resident of Dallas, Dallas County, Texas and can be served with process at his business address of 1595 North Central Expressway, Richardson, Texas 75080-3590.

7.      Defendant Daniel P. Kondos, S.C. (hereinafter "D. KONDOS, S.C.") is a foreign corporation authorized to do business in Texas and may be served by serving its president Daniel P. Kondos at his business address of 1595 North Central Expressway, Richardson, Texas 75080-3590.

8.      Defendant Carol C. Kondos (hereinafter "C. KONDOS") is a resident of Dallas, Dallas County, Texas and can be served with process at her business address of 1595 North Central Expressway, Richardson, Texas 75080-3590.

9.      Defendant Carol C. Kondos, P.C. (hereinafter "C. KONDOS, P.C.") is a Texas corporation and may be served by serving its president Carol C. Kondos at her business address of 1595 North Central Expressway, Richardson, Texas 75080-3590.

10.  .   Defendant William R. Robbins (hereinafter "ROBBINS") is a resident of Dallas, Dallas County, Texas and can be served with process at 1595 North Central Expressway, Richardson, Texas 75080-3590.

11.      Defendant Anjel K. Avant-Benton (hereinafter "BENTON") is a resident of Dallas,

Dallas County, Texas and can be served with process at 1595 North Central Expressway, Richardson, Texas 75080-3590.

12.    Defendant Robert J. Nussbaum (hereinafter "NUSSBAUM"), is a resident of Dallas, Dallas County, Texas and can be served with process at 1595 North Central Expressway, Richardson, Texas 75080-3590.

13.    Defendant Armando Robert Villalobos (hereinafter "VILLALOBOS") is a resident of Brownsville, Cameron County, Texas and can be served with process at 974 E. Harrison, Brownsville, Texas 78520.

## IV.
## CONDITIONS PRECEDENT

14.    Defendants were given notice in writing of the claims made in this Petition including a statement of Plaintiffs' actual damages and expenses, including attorney's fees, more than sixty (60) days before this suit was filed, or as many days as were available before the statute of limitations might be argued to have elapsed with respect to a certain claim, in the manner and form required by the Deceptive Trade Practices - Consumer Protection Act § 17.505(a)   All conditions precedent to Plaintiffs' recovery under all causes of action set forth herein, including presentment at least 30 days before suit was filed, have been performed or have occurred.

## V.
## FACTUAL BACKGROUND

15.    On or about July 20, 1997, Plaintiff Lucy Smith was a passenger in her 1990 Chevrolet Silverado pick-up truck traveling on Peveler Court, in the city of Granbury, Hood County, Texas. The vehicle was being driven by Randy Smith. The vehicle was violently and unexpectedly struck in the rear by a 1998 Dodge Ram pick-up truck owned by H.C. Smith Construction, Inc. and driven by Chance Christopher Smith, who was also traveling on Peveler Court (the "accident").

16.      Lucy Smith attempted to work with the drivers of the vehicles involved in the accident, Chance Smith and Randy Smith, and their respective insurance companies, Allstate, as well as her own insurer, Republic Insurance Company. However, because of the injuries sustained in the accident, Lucy Smith was not able to comprehensively handle the necessary dealings with the insurance companies and as well as attend to her own medical care. After considering the hiring of a law firm and making several inquiries before making the choice of a firm, she called KONDOS to secure legal representation. She spoke with VILLALOBOS, an employee/associate of KONDOS.

17.      On or about September 27, 1997, VILLALOBOS came to the Smiths' home in Grandbury, Texas in order to complete the details of the retention of KONDOS to represent the Smiths regarding the accident. VILLALOBOS interviewed Lucy Smith regarding the facts of the accident. He advised Lucy Smith that the contingency fee contract which he was proposing to Lucy Smith had three levels of compensation for the lawyer and/or law firm involved in her representation. He suggested that the lowest contingency fee was based on his representation of the Smiths without the substantial involvement of the staff and/or other attorneys at KONDOS. The Smiths were convinced that even at the lowest level of compensation, they had retained KONDOS and that VILLALOBOS would have access to the staff and other lawyers at KONDOS. VILLALOBOS advised Lucy Smith that the fee would be 25%, if he handled cased without additional lawyers from Kondos, or 33% with additional lawyers and in either case, 40% if a lawsuit was filed. Lucy Smith signed what she believed was a contingent fee contract with KONDOS (*Attachment A*).

18.      VILLALOBOS began a lawyer and client relationship with the Smiths. He attempted to secure medical assistance, and healthcare providers to examine and treat Lucy Smith. His efforts were ineffective and incomplete, such that Lucy Smith's medical care was delayed for several months, namely, from September through December of 1997.

19. VILLALOBOS withdrew Lucy Smith from treatment by the healthcare practitioners that had been providing medical treatment to her since shortly after the date of the accident. VILLALOBOS actually encouraged Lucy Smith to rent a motel room in Tarrant County so that she could be treated at John Peter Smith Hospital without incurring the need for Lucy Smith to show medical insurance coverage and/or the need for VILLALOBOS to extend a letter of protection. Such letter of protection would be requested by the healthcare providers who were capable of performing the cervical spine surgery, which had already been diagnosed and recommended. He directed Lucy Smith to physicians in Fort Worth who were not acting in the best interest of Lucy Smith, but rather, were acting in the interest of VILLALOBOS. As a result, Lucy Smith's medical treatment was delayed from September through December of 1997.

20. After a short period of time, the Smiths became concerned about the substance and nature of the representation being provided by VILLALOBOS. Lucy Smith called KONDOS and discussed the matter with ROBBINS, an employee/associate of KONDOS, who denied any knowledge of Lucy Smith and/or her representation by KONDOS. Thereafter, NUSSBAUM, an employee/associate of KONDOS traveled to the Smiths' home in order to discuss the matter with Lucy Smith. On November 26, 1997, after a discussion of the relationship with VILLALOBOS, NUSSBAUM, on behalf of KONDOS, secured the signature of Lucy Smith on a contingency fee contract. *(Attachment B)*. Sixteen months later, NUSSBAUM forwarded a contract for the signature of Michael Smith. It is believed that KONDOS terminated VILLALOBOS on or about December 1, 1997. *(Attachment C)*.

21. This period of time with VILLALOBOS caused Lucy Smith to endure pain and suffering as the result of her continuing, substantial medical condition. The medical condition caused a substantial impairment and disability. In addition, the relationship with VILLALOBOS

caused great anxiety and insecurity within Lucy Smith and caused a substantial interference with the family relationship between Lucy and Michael Smith.

22.     KONDOS, primarily through BENTON, handled the representation of Lucy Smith, after KONDOS alleged that VILLALOBOS was acting on his own behalf rather than the KONDOS firm.  The KONDOS firm filed suit on behalf of Lucy and Mike Smith and participated in the deposition of the parties to the accident.  Lucy Smith was not able to endure such a long deposition, but she was made to do so by KONDOS.

23.     Lucy Smith underwent a triple fusion in her cervical spine, on July 2, 1998, at Tri-City Hospital, in Mesquite, Dallas County, Texas.

24.     During the pendency of the Smiths' claims, KONDOS filed a grievance against VILLALOBOS in April of 1998.  KONDOS and ROBBINS caused Lucy Smith to sign a document ostensibly to waive the attorney/client privilege, so that KONDOS could proceed for its own interest in the grievance against VILLALOBOS.  KONDOS also filed a lawsuit against VILLALOBOS. KONDOS allegedly settled this lawsuit for $10,000.00.  KONDOS did not discuss this lawsuit with the Smiths nor did they even provide them notice that such lawsuit was commenced and/or settled.

25.     The accident case was eventually set for mediation.  Mediation was scheduled to be held on March 10, 2000.  Mediation lasted from 11:00 a.m. to approximately 6:00 p.m. in the evening.  BENTON was late to the mediation.  When questioned by the Smiths as to why she was late, she said something to the effect that she had been present at another mediation and that she was in the process of selling her home.  NUSSBAUM, although present, seemed more interested in communicating about the fact that ROBBINS and another attorney had purchased a new drinking establishment.  When the Smiths questioned NUSSBAUM and BENTON regarding the amount of insurance coverage available, BENTON replied that she was not aware of the total insurance

coverage available for this accident.   The last two hours of the mediation Lucy Smith was in such severe pain that it was difficult for her to concentrate on the proceedings and/or the attorney-client discussions. KONDOS, NUSSBAUM and BENTON continued the mediation even though it was not in the best interest of their clients. The KONDOS firm, NUSSBAUM and BENTON settled the case at the mediation for $97,500.00.

26.     Because Chance Smith and Randy Smith were driving vehicles other than their own, there was more than two insurance polices available to pay for the injuries with respect to the liability of those two drivers. Randy Smith, the driver of Lucy Smith's vehicle, was covered by Allstate Insurance Company under a policy written on his own personal vehicle. Randy Smith also had coverage by virtue of driving the vehicle owned by Lucy Smith, which was an insured vehicle on a policy written by Republic Insurance Company. Chance Smith, the driver of the vehicle which rear-ended the vehicle occupied by Lucy Smith, was covered by a policy purchased by his father, Randy Smith, with Allstate Insurance Company. Chance Smith had additional coverage under the insurance policy through Allstate Insurance Company written on the company vehicle that he was driving. The total policy proceeds available to Lucy and Michael Smith for the injuries sustained in this accident was well in excess of $100,000.00, based on these policies. The amount of policy proceeds was substantially larger than the amount for which KONDOS settled the Smiths' claims in the accident lawsuit. A reasonable and prudent attorney, acting in the best interest of their client, would have settled the lawsuit for a substantially larger amount than what KONDOS accepted.

27.     At the mediation, NUSSBAUM and BENTON misrepresented to the Smiths that the $97,500.00 settlement did not include a release of the claim against Lucy Smith's insurance carrier for the underinsured motorist ("UIM") coverage. NUSSBAUM and BENTON advised Lucy Smith that a UIM claim would be filed after the mediation on Monday, March 13, 2000. After the Smiths

had entered into the settlement agreement with the drivers of the vehicles, the Smiths were informed by Lucy Smith's carrier that no such underinsured motorist claim could be made because her carrier was released as part of the settlement reached during the mediation.

28.     As part of the final accounting to Lucy and Michael Smith, KONDOS provided a check in the amount of $30,998.00, which was $1,195.00 less than the amount of which the Smiths were advised during the mediation they would receive as their portion of the settlement proceeds.

## VI.
## NATURE OF THE CLAIMS AGAINST VILLALOBOS

29.     VILLALOBOS, as an associate and/or employee of KONDOS, failed to use ordinary care in the representation of Lucy and Michael Smith as a reasonably prudent practitioner would do under the same or similar circumstances.     Such failure was a proximate cause of the damages incurred by the Smiths.

30.     VILLALOBOS expressly represented that he was an employee and/or associate of KONDOS and that he was there to handle the details of the retention of KONDOS, as the lawyer to pursue the claims of the Smiths against Randy and Chance Smith.   However, VILLALOBOS negotiated a contract for legal representation which allegedly was on his own behalf rather than that of KONDOS.   The Smiths would not have entered into a contractual relationship for legal representation with VILLALOBOS and/or the contract for representation would not have been entered into by the Smiths, if they had been fully aware of the misrepresentations and/or omissions made by VILLALOBOS.

31.     VILLALOBOS by engaging in the practice of law and negotiating a contingent fee contract for the representation of the Smiths, impliedly represented that he possessed the requisite degree of skill, learning, experience and ability necessary to handle the Smiths' case.   VILLALOBOS also represented that he would use his best judgment in pursing the claims of the Smiths arising out

of the accident.

32.   VILLALOBOS, whether he entered into a contingent fee contract for KONDOS or for himself, had a fiduciary duty to the Smiths in this case. The various conduct of VILLALOBOS as alleged herein, was a breach of that fiduciary duty and each such breach has caused injury to the Smiths.                                      VII.

## NATURE OF THE CLAIMS AGAINST KONDOS REGARDING VILLALOBOS

33.   KONDOS, for all the profit it makes in providing legal representation, was not willing to spend any of its own money in the most minimal investigation of the background of its employee applicants. In this case, multiple individuals and companies were placed at risk, as a result of KONDOS' conduct. KONDOS knew or should have known that there was substantial risk in placing a person in a position of responsibility and knowledge regarding the property and lives of individuals.

34.   Defendant KONDOS made available an individual for the representation of the Smiths, when in fact, that individual previously had been accused of soliciting business away from his employer. Kondos failed to do the most minimal background check prior to hiring attorneys/employees, including VILLALOBOS. KONDOS' hiring process failed to eliminate those with backgrounds which would indicate their lack of suitability for the legal business.

35.   The meeting between VILLALOBOS and the Smiths, as well as the resulting injuries and damages to Plaintiffs, were proximately caused by one or more acts of negligence on the part of KONDOS and the other Defendant(s) in this case. The Defendant(s) were negligent in that the Defendant(s) owed a duty to the Plaintiffs to provide proper legal services through a properly qualified attorney

36.   The Defendant(s) had a continuing non-delegable duty to insure that the obligations of KONDOS under the laws of the State of Texas were properly carried out by a qualified and competent individual. Defendant(s) failed to carry out their non-delegable duty to the Smiths.

37.   The acts and omissions of the Defendant(s) that were negligence include, but not

limited to Defendant(s)' failure to:

  a.     select competent attorneys to properly manage and handle personal injury claims, such as that of the Plaintiffs;

  b.     select competent attorneys to properly instruct and train new employees for their job and the scope of their responsibility not only to the Plaintiffs, but also to KONDOS;

  c.     observe, correct and insure the responsible and adequate handling of personal injury claims; and

  d.     use administrative controls regarding the management of cases, so as to prevent the alleged conduct of VILLALOBOS.

38.    The Defendant(s) are liable to the Plaintiffs for the negligent acts and/or omissions of its agents and employees, in their capacity as the employer and/or supervising attorney of VILLALOBOS, which caused or contributed to the cause Plaintiffs' injuries.

## VIII.
## NATURE OF CLAIMS AGAINST KONDOS
## REGARDING THE HANDLING OF THE SMITH'S CLAIM

39.    KONDOS and the associates and/or employees of KONDOS, failed to use ordinary care in the representation of Lucy and Michael Smith as a reasonably prudent practitioner would do under the same or similar circumstances.   Such failure was a proximate cause of the damages incurred by the Smiths.

40.    KONDOS expressly represented that VILLALOBOS was an employee and/or associate of KONDOS.  However, VILLALOBOS negotiated a contract for legal representation which allegedly was on his own behalf, rather than that of KONDOS. The Smiths would not have entered into a contractual relationship for legal representation with VILLALOBOS and/or the

to the Plaintiffs the duty of possessing and using that degree of learning and skill ordinarily possessed and used by other attorney specialists of good standing in the same area of practice under the same circumstances.

## X.
## TEXAS DECEPTIVE TRADE PRACTICES -
## CONSUMER PROTECTION ACT AGAINST ALL DEFENDANTS

47.    This suit is also brought pursuant to the Texas Deceptive Trade Practices - Consumer Protection Act (commonly known as "DTPA") as found in the TEX. BUS. & COM. CODE ANN. § 17.41 *et seq.* At all times pertinent to Plaintiffs' cause of action, Plaintiffs were a "consumer" as defined in § 17.45(4) of the DTPA.

48.    Plaintiffs relied upon the representations made by Defendant(s) regarding the quality and quantity of service provided by Defendant(s). Each and every one of the representations by the Defendant(s), as set forth herein, concerned material facts. Plaintiffs would not have entered into a contingent fee contract with Defendant(s) had Plaintiffs known about the falsity of any of the representations. Each and every one of the representations was relied upon by Plaintiffs causing Plaintiffs substantial injury and damage as described herein.

49.    Such acts an practices by Defendant(s) as described herein, constitutes false, misleading and deceptive acts in violation of the provisions of the DTPA. The actions, practices, statements, representations, warranties, omissions to act and failures to disclose, as set forth herein, constitute *per se* violations of the DTPA, including but not limited to the following specific sections:

(a)    Representing that goods or services have...characteristics...uses, benefits,...which they do not have...;

(b)    Representing that goods or services are of a particular standard, grade or quality,...which they do not have;

(c)    Breachs of warranty;

(d)    Unconscionable action and course of action by any person; and,

(e)    Failing to disclose information which was known to Defendant(s).

50.     Plaintiffs would further show that the misconduct of the Defendant(s), as outlined above, was committed knowingly. Defendant(s) had actual awareness of the falsity, deception and unfairness of the acts and practices, and Defendant(s) had actual awareness of the acts constituting the breaches of the warranty as set out in this petition. Furthermore, the acts, omissions, representations and breaches were a producing cause of Plaintiffs' actual, incidental and consequential damages, which are in excess of the minimum jurisdictional limits of this Court. Because of the conduct of the Defendant(s), as outlined above. Plaintiffs are entitled to the recovery of their actual damages, together with court costs, attorney's fees, interest thereon, twice the damages that do not exceed $1,000.00 and up to treble the damages as allowed by Section 17.50(b) of the DTPA.

51.     Further, said acts, omissions, representations and warranties were committed knowingly by Defendant(s) and were willful, malicious, fraudulent, deceitful, deceptive and unconscionable, and Plaintiffs should be awarded such exemplary and/or punitive damages as a result of Defendant(s)' conduct, which in the opinion of the jury, is necessary to punish the Defendant(s) and deter similar conduct by Defendant(s) and others.

## XI.
## MISREPRESENTATION/FRAUD AGAINST ALL DEFENDANTS

52.     Plaintiffs plead a cause of action grounded upon the common law of misrepresentation and fraud as recognized in the State of Texas and allege that the misrepresentations, fraud, fraud in the inducement and failures to disclose by the Defendant(s), as stated above, were a proximate cause of actual damages to Plaintiffs. Plaintiffs allege that Defendant(s) failed to disclose material facts about which Defendant(s) possessed far greater knowledge than Plaintiffs. Defendant(s) made representations which were false at the time they were made. Defendant(s) either knew the representations were false or they were made by Defendant(s) recklessly, without regard to the truth of the matter stated. And, the representations were relied upon by Plaintiffs to Plaintiffs' detriment.

53.     Plaintiffs further allege that such misleading, false misrepresentations and failures

the above-listed causes of action, for at least the aforesaid damages, plus treble that amount under the DTPA, as alleged herein. Plaintiffs' also seek punitive damages.

### XIV.
### ATTORNEY'S FEES

57.     As a result of Defendants' acts, conduct and/or practices, Plaintiffs were required to secure the services of the undersigned attorney to preserve and protect their rights concerning the claims described herein. Plaintiffs are entitled to recover reasonable attorney's fees from the Defendants.

### XV.
### STATUTORY INTEREST

58.     Plaintiff also claims damages in the amount of the legal interest as allowed by law on all pecuniary and non-pecuniary damages as found by the jury at the maximum legal rate allowed by law: (a) accruing from a date beginning 180 days after the date the Defendant received written notice of this claim or on the date of filing suit, whichever occurred first, until the time judgment against Defendant is rendered and (b) after judgment until same is paid.

### XVI.
### CORPORATE ACTS

59.     When it is alleged that Defendant(s) did any act or failed to act or engage in a course of conduct, it is meant that a corporation, a partnership and/or other entity acts through its agents, employees or representatives.

60.     The acts and omissions made the basis of this lawsuit were authorized, committed and/or ratified by one or more of the employees, agents, vice principals and/or managerial personnel of the Defendant(s) acting within the general scope of their employment, or actual or apparent authority, on behalf of the Defendant(s), for which acts and omissions Defendant(s) is vicariously liable.

### XVII.
### RIGHT TO PLEAD FURTHER

61.     Plaintiffs reserve the right to plead further, once discovery has been undertaken.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein and that upon trial of this cause, Plaintiffs have judgment against Defendants for actual damages, exemplary and/or punitive damages, attorney's fees, prejudgment and post-judgment interest on such amounts at the maximum legal rate, costs of court and for such other and further relief, at law or in equity, both general and specific, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**BERNARD A. GUERRINI, P.C.**

By:     Bernard A. Guerrini
State Bar No. 08581700
6500 Greenville Avenue, Suite 320
Dallas, Texas 75206
Tel:    214-692-6556
Fax:    214-692-6578

**ATTORNEYS FOR PLAINTIFFS**

*ATTACHMENT A*

STATE OF TEXAS

COUNTY OF Hood

CONTINGENT FEE AGREEMENT

This agreement is made between Armando R. Villalobos ~~Libby Smith~~ referred to hereinafter as attorneys, and Lucy Smith referred to hereinafter as client.

I.
Effective Date

This agreement shall take effect on its execution by both parties.

II.
Scope of Services

a. The attorneys shall represent the client in connection with the following case occurring on the following date:
MVA — July 20, 1997 — Granbury, TX

b. Attorneys, their agents and employees, are authorized to take all steps deemed by them to be necessary and appropriate to obtain a satisfactory result, including but not limited to securing a complete investigation, instituting and prosecuting legal proceedings, employing consultants, expert witnesses, and associate counsel, enter into settlement negotiations, preparing settlement brochures, preparing for and proceeding to trial, or discontinuing litigation.

c. The attorneys will represent the client and provide such reasonable legal services as are necessary in pre-trial, and post trial proceedings up to the rendition of judgment. After the rendition of judgment, the attorneys will not represent the client, whether on appeal or in other post judgment proceedings, unless a subsequent agreement is entered into between the attorneys and the client.

## III.
## Settlement Authority

Attorneys agree not to settle or compromise the case without the client's approval of the terms and form of the settlement and the client agrees to cease all communications with all third parties regarding the subject matter of this claim and further agrees not to enter into any settlement negotiations or agreements regarding such claims or matters which could impact on such claims, without the knowledge and consent of the attorneys.

## IV.
## Fee Agreement

The attorneys' fee for the services to be rendered shall be contingent on what is recovered in this matter by way of settlement, judgment or otherwise, to be computed as follows:

25% AVLS.

a.    ~~33-1/3%~~ of all sums recovered if the case is settled prior to the filing of a lawsuit.

33 1/3% AV LS.

b.    ~~40%~~ of all sums recovered if the case is resolved after the filing of a lawsu

## V.
## Costs & Expenses

In addition to the above fees, clients shall pay to attorneys, out of the client's share of the recovery, all court costs and expenses advanced by the attorneys in connection with this matter. The attorneys are authorized to incur such expenses as they in their sole and exclusive judgment deem reasonable and necessary to accomplish a satisfactory resolution of the claim and are authorized to advance such expenses on behalf of client. Said expenses shall include, but not be limited to, investigation, travel and lodging, physician and/or expert witness fees, consultant fees, settlement and trial exhibits, models, diagrams, photography, copies, equipment expenses, and video tape.

If at the final disposition of the case nothing is recovered on behalf of the client, the client will not owe the attorneys a fee.

## VI.
## Withdrawal of Counsel

The client agrees that the attorneys retain the right at any time following investigation, discovery, or legal research, to release themselves from this contract and withdraw from the representation of the client, if it appears to the attorneys that circumstances have developed which hinder continued effective litigation of the case; that

continued litigation would not be cost effective or result in a sustainable or collectable judgment; or the client engages in conduct which renders it unreasonably difficult for the attorneys to carry out the employment effectively. In the event of such a withdrawal, the attorneys will retain a lien on the case to the extent of the expenses and costs which have been advanced on the client's behalf. The client agrees to protect such expenses and costs out of any recovery ultimately obtained in the case.

## VII.

At the final disposition of the case, the clients agree promptly to execute such settlement documents as are recommended by the attorney and properly and promptly to endorse any settlement drafts or checks, and the attorneys shall disburse to the client the client's share of the recovery after deducting their fee as described in paragraphs 4 & 5, after deducting al expenses as defined in paragraphs 4 & 5, and after deducting all debts incurred by the client remaining unpaid as defined in paragraph 6.

## VIII.

The client hereby grants the attorneys a lien on this cause of action, and a lien on any proceeds and any judgments recovered in connection with this cause of action as security for the payment of attorneys' fees and expenses as contracted for herein.

## IX.

Client acknowledges and agrees that, regardless of the outcome of this case, the attorneys do not assume liability for, nor agree to pay from the attorneys' fee, any debts incurred by the client in connection with this claim.

## X.

The attorneys make no representations or guarantees regarding the tax consequences of any recovery obtained on behalf of the client and advises client to seek your own tax advice from a qualified tax advisor.

## XI.

This contract is entered into in Hood County, Texas, which shall also be the place of performance and payment in accordance with the terms of the contract.

## XII.

The client acknowledges that the attorneys have made no guarantee regarding the successful resolution of said cause of action, and all expressions relative thereto are

matters of attorneys' opinion only and shall not be considered as express or implied warranties of the claim's outcome.

### XIII.

Client and attorneys hereby agree that if a dispute arises out of or relates to this contract, or the breach thereof, and if said dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure.

### XIV.

This contract constitutes all the agreements between the parties and may not be amended except in writing and executed by all parties.

SIGNED this _37_ day of _September_ 1997.

CLIENT:

_Lucy Smith_

ATTORNEYS:

_Armando Villalobos_
ARMANDO R. VILLALOBOS, ESQ.

## AUTHORIZATION TO PROVIDE INFORMATION

I, _Lucy Smith_ , authorize:

1) any medical, osteopathic or chiropractic physician, any dentist, hospital, clinic, rehabilitation facility, or other medical practitioner or provider who has or is or will be furnishing services to me to provide my medical and dental information, including history, treatment, diagnosis, prognosis, and billing records and

2) any firm, employer, or insurance company to furnish information about my earnings, loss of earnings, work history, and medical information in their possession to

Armando R. Villalobos Attorney and Counselor at Law, or their representatives

This information is authorized to permit processing of a claim I have arising out of an accident or occurrence on

_July 20, 1997_

This authorization is valid for the duration of the claim, I agree a photocopy of it is as valid as the original.

I have read this authorization and acknowledge I or a person authorized be me will receive a copy of this authorization upon request.

Date: _September 27, 1997_

_Lucy Smith_
SIGNATURE OF PATIENT

_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_
SOCIAL SECURITY NUMBER

_3/1/48_
DATE OF BIRTH

*ATTACHMENT B*

KONDOS & KONDOS
LAW OFFICES
1595 NORTH CENTRAL EXPRESSWAY
RICHARDSON, TEXAS 75080
(972) 231-9924
(972) 231-8636 FAX

RETAINER AGREEMENT

Lucy Smith _____, referred to as the Client, and Kondos & Kondos Law Offices, referred to as the Attorneys, agree as follows:

1. **Purposes of Representation.** The Client retains and employs the Attorneys to represent Client in the cause of action for personal injuries and/or property damages to settlement or final judgment of Client's claims against any and all parties responsible for such damages, such claims arising out of __MVA__ which occurred on or about _7_-_20_-_1997_, at __Hood County__. In consideration of the Attorneys agreement to represent the Client in this matter and to secure the performance of Client's financial obligations to the Attorneys as set forth below, Client hereby makes and the Attorneys hereby accept an assignment of an undivided interest in Client's claim, such interest, assignment or lien being equivalent to the amount or percentage that the Client, by this agreement, promises to pay for the services of the Attorneys.

2. **Attorney's Fees.** In consideration of the services to be rendered by the Attorneys, Client hereby agrees to pay to the Attorneys a sum of money equal to thirty-three and one third percent (33 1/3%) of all money and property collected prior to the filing of a lawsuit, which includes PIP if we handle it for you; and forty percent (40%) of all money and property collected after the filing of a lawsuit; plus all actual costs and disbursements incurred by Attorneys. If nothing is collected and recovered on your claim by anyone, the Client owes the Attorneys nothing for their services except actual costs and disbursements. Where monetary expenses will be incurred on Client's behalf, Attorneys may request Client to advance these costs; examples of such expenses include filing fees, deposition expenses, and medical consultations or reports. Should this matter be concluded on the basis of a "structured settlement" your entire fee plus all costs advanced on your behalf shall be deducted from the initial cash payment.

3. **Appeal.** This Retainer Agreement does not apply if it is necessary to appeal this case to an Appellate Court. If an appeal is deemed necessary, terms and fees will be negotiated between the parties at that time.

4. **Approval Necessary for Settlement.** No final settlement shall be made for any of the claims of the Client without the complete approval of the Client nor shall the Client obtain any settlement on the claims without the complete approval of the Attorneys. However, Client does hereby authorize the Attorneys to advance settlement demands at the Attorney's discretion without Client's prior approval.

5. **Cooperation of Client.** The Client shall keep the Attorneys advised of the Client's whereabouts at all times, shall appear on reasonable notice at any and all depositions and court appearances, and shall comply with all reasonable requests of the Attorneys in connection with the preparation and presentation of the claim.

6. **Permission to Withdraw.** In case the Attorneys shall determine at any time during the course of representation of Client's claim that they do not wish to pursue the Client's claim further; due to lack of economic viability, lack of Client cooperation, or for any other reason at the Attorney's discretion, the Client agrees that the Attorney may withdraw from the representation of the Client by sending written notice of the Attorney's intention to withdraw to the Client at the Client's last known address. In such event, the Client shall not be obligated to pay any fees to the Attorneys. However, the Attorneys shall be entitled to reimbursement of any expenses, charges or costs incurred during the course of representation if they withdraw because of Client's failure to cooperate.

7. **Results.** Client understands that Attorneys have made no guarantees as to success and that Client is personally responsible for all medical expenses regardless of the outcome of this case.

SIGNED AND AGREED ON _11-26-97_ 19__.

_Lucy Smith_
Client

Kondos & Kondos Law Offices

KONDOS & KONDOS
LAW OFFICES
1595 NORTH CENTRAL EXPRESSWAY
RICHARDSON, TEXAS 75080
(972) 231-9924
(972) 231-0636 FAX

RETAINER AGREEMENT

_____Michael R. Smith_____, referred to as the Client, and Kondos & Kondos Law Offices, referred to as the Attorneys, agree as follows:

1. **Purposes of Representation.** The Client retains and employs the Attorneys to represent Client in the cause of action for personal injuries and/or property damages to settlement or final judgment of Client's claims against any and all parties responsible for such damages, such claims arising out of __consortium claim__ which occurred on or about 7 -20 -1997, at __Hood County__. In consideration of the Attorneys agreement to represent the Client in this matter and to secure the performance of Client's financial obligations to the Attorneys as set forth below, Client hereby makes and the Attorneys hereby accept an assignment of an undivided interest in Client's claim, such interest, assignment or lien being equivalent to the amount or percentage that the Client, by this agreement, promises to pay for the services of the Attorneys.

2. **Attorney's Fees.** In consideration of the services to be rendered by the Attorneys, Client hereby agrees to pay to the Attorneys a sum of money equal to thirty-three and one half percent (33 1/3%) of all money and property collected prior to the filing of a lawsuit, which includes PIP if we handle it for you; and forty percent (40%) of all money and property collected after the filing of a lawsuit; plus all actual costs and disbursements incurred by Attorneys. If nothing is collected and recovered on your claim by anyone, the Client owes the Attorneys nothing for their services except actual costs and disbursements. Where monetary expenses will be incurred on Client's behalf, Attorneys may request Client to advance these costs; examples of such expenses include filing fees, deposition expenses, and medical consultations or reports. Should this matter be concluded on the basis of a "structured settlement" your entire fee plus all costs advanced on your behalf shall be deducted from the initial cash payment

3. **Appeal.** This Retainer Agreement does not apply if it is necessary to appeal this case to an Appellate Court. If an appeal is deemed necessary, terms and fees will be negotiated between the parties at that time.

4. **Approval Necessary for Settlement.** No final settlement shall be made for any of the claims of the Client without the complete approval of the Client nor shall the Client obtain any settlement on the claims without the complete approval of the Attorneys. However, Client does hereby authorize the Attorneys to advance settlement demands at the Attorney's discretion without Client's prior approval.

5. **Cooperation of Client.** The Client shall keep the Attorneys advised of the Client's whereabouts at all times, shall appear on reasonable notice at any and all depositions and court appearances, and shall comply with all reasonable requests of the Attorneys in connection with the preparation and presentation of the claim.

6. **Permission to Withdraw.** In case the Attorneys shall determine at any time during the course of representation of Client's claim that they do not wish to pursue the Client's claim further; due to lack of economic viability, lack of Client cooperation, or for any other reason at the Attorney's discretion, the Client agrees that the Attorney may withdraw from the representation of the Client by sending written notice of the Attorney's intention to withdraw to the Client at the Client's last known address. In such event, the Client shall not be obligated to pay any fees to the Attorneys. However, the Attorneys shall be entitled to reimbursement of any expenses, charges or costs incurred during the course of representation if they withdraw because of Client's failure to cooperate.

7. **Results.** Client understands that Attorneys have made no guarantees as to success and that Client is personally responsible for all medical expenses regardless of the outcome of this case.

SIGNED AND AGREED ON ___3 - 25___, 19_99_

_____        _____
Client                          Kondos & Kondos Law Offices

*ATTACHMENT C*

To Whom It May Concern:

Please be advised that I, Armando R. Villalobos, fully release Lucy Smith from any contractual relationship that she entered into with me regarding her damage claim arising from the motor vehicle accident which happened on or about July 20, 1997. I retain absolutely no interest in any payments or proceeds of any sort that may be recovered on this case.

_December 1, 1997_
Date

_Armando R. Villalobos_

BEFORE ME, the undersigned authority, on this day personally appeared Armando R. Villalobos, known to me to be the person whose name is subscribed to the foregoing instrument.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this 1st day of December, 1997.

MELISSA L. CROOM
MY COMMISSION EXPIRES
July 19, 2000

_Melissa L. Croom_
Notary Public In And For
The State Of Texas

My Commission Expires:

_July 19, 2000_

Printed Name:

_Melissa L. Croom_