IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED
APR 2 2 2002
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| ARMANDO R. VILLALOBOS, § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. B-02-033 |
| VS. § | |
| § | |
| NATIONAL CASUALTY COMPANY, § | |
| Defendant. § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Armando R. Villalobos Motion to Remand (Docket No. 4). For the reasons discussed below, the motion should be DENIED.

### FACTUAL BACKGROUND[1]

During the fall of 1997, plaintiff Armando R. Villalobos ("Villalobos") was employed as an attorney by the law firm Kondos & Kondos, P.C, in Dallas, Texas. Around that time, Lucy Smith sought legal advice from the law firm regarding an auto accident injury claim. For reasons that are unexplained, Lucy eventually contracted with Villalobos, rather than with the law firm, to represent her in the personal injury action. After learning of the attorney-client relationship between Lucy and Villalobos, the firm fired Villalobos and had Lucy sign a second contract with the firm.

While Kondos & Kondos continued to represent Lucy in her lawsuit, the firm sued Villalobos for breach of fiduciary duty and filed a grievance against him with the State Bar of Texas. A jury in Cameron County, Texas, ultimately heard the disciplinary action.

Lucy's case eventually settled in mediation; she learned later, however, that her claims

---

[1]Unless otherwise indicated, the facts are derived from the Plaintiff's Armando R. Villalobos Original Petition for Declaratory Judgment (Docket No. 1, Ex. No. 1).

against her Uninsured Motorist policy may have been prejudiced by the settlement. Consequently, Lucy and Michael Smith ("the Smiths," collectively), initiated an action against Kondos & Kondos and several of its attorneys, including Villalobos. The Smiths alleged several causes of action, including negligence, breach of fiduciary duty, fraud, and violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE ANN. § 17.41 *et seq.* National Casualty Company ("NCC"), a professional liability carrier which provided malpractice insurance for Kondos & Kondos, assumed the defense of all the defendants, except Villalobos.

While the Smiths' action was pending, Villalobos filed a declaratory action in the 103rd Judicial District Court in Cameron County, Texas, in order to interpret the provisions of the professional liability policy issued by NCC. In his Original Petition for Declaratory Judgment (Docket No. 1, Ex. No. 1), Villalobos alleges that during his period of employment with Kondos & Kondos, the firm assured him he would be covered by the firm's professional liability insurance. He further claims that when he learned of the Smiths action against him, he notified NCC and requested that it provide indemnity and defense coverage. NCC, however, denied coverage on the ground that Villalobos had not provided notice of the claim in a timely manner. In response to Villalobos's petition, NCC filed a general denial and immediately thereafter filed a notice of removal. In its notice of removal, NCC contends that this Court has federal jurisdiction over the matter because diversity exists between the parties[2] and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332, 1441(a). Villalobos now moves to remand the case based on three grounds. (Docket No. 4). First, he argues that by filing an answer seeking affirmative relief, NCC waived its

---

[2]Plaintiff Armando R. Villalobos is a resident of Brownsville, Texas. Defendant National Casualty Company is a corporation organized under the laws of Wisconsin with a principal place of business in Scottsdale, Arizona.

right to remove the action to federal court. Next, he contends that the amount in controversy in this matter does not exceed the sum of $75,000. Finally, he argues that federal jurisdiction does not exist because two additional parties are necessary to this litigation whose joinder defeats diversity. NCC has filed a response (Docket No. 8), opposing remand.

## I.

### STANDARD FOR REMOVAL

When a plaintiff challenges the propriety of a defendant's removal, the defendant has the burden of showing the necessary facts to support the Court's exercise of removal jurisdiction. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). The removal statute should be strictly construed in favor of remand, and any ambiguities are construed against removal. *See Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979).

### A. WAIVER OF RIGHT OF REMOVAL

The record reflects that Villalobos filed this action in state court on January 10, 2002 (Docket No. 4). NCC was served on February 4, 2002 (Docket No. 1), and it had 20 days from the issuance of the citation to file its answer. NCC duly answered, and on February 19, 2002, filed its notice of removal. (Docket No. 1). No other pleadings or motions were filed in the state court, and no hearings were held before the state court. Nonetheless, Villalobos contends that NCC waived its right of removal because it requested the following affirmative relief in its answer: (1) a declaration from the trial court that National Casualty has no duty to defend or indemnify Villalobos; (2) an award of attorney's fees for the costs of answering the action; and (3) such further relief as NCC may be entitled. (Docket No. 4).

A defendant may waive its right of removal by taking substantial action in state court before

petitioning for removal. *See Hingst v. Providian Nat'l Bank*, 124 F. Supp. 2d 449, 452 (S.D. Tex. 2000). Preliminary actions that do not actually submit the merits of a claim for a binding decision do not waive a defendant's right to remove. *Gore v. Stenson*, 616 F. Supp. 895, 897 (S.D. Tex. 1984). An intent to waive the right of removal and to submit to the jurisdiction of the state court must be "clear and unequivocal" and must express a party's specific intent to proceed in state court. *Beighley v. F.D.I.C.*, 868 F.2d 776, 782 (5th Cir. 1989). Generally, there is no waiver "short of proceeding to adjudication on the merits." *Id.*

Two factors guide this Court in determining whether NCC has waived its right to remove. *Jacko v. Thorn Americas, Inc.*, 121 F. Supp. 2d 574, 576 (E.D. Tex. 2000). First, the Court examines whether the actions taken by NCC in state court were for the purpose of preserving the status quo or whether they manifested an intent to litigate the merits of the claim. *Id.* Secondly, the Court considers whether the removal can be characterized as an appeal from an adverse judgment of the state court. *Id.*

It is well settled that the filing of a general denial alone does not waive the right to removal. *See Hingst*, 124 F. Supp. 2d at 452 (holding that defendant did not waive right to remove by filing answer in state court); *Jacko*, 121 F. Supp. 2d at 576 (holding same); *Gore*, 616 F. Supp. 895, 897 (holding same). By filing an answer, NCC was doing nothing more than maintaining the status quo. *See Jacko*, 121 F. Supp. 2d at 576. NCC took no actions in the state court which were clearly indicative that it sought to have the merits adjudicated in that forum. NCC did not file its counterclaim in state court. Further, NCC's request for a declaratory judgment in its general denial was a preliminary action that neither submitted the merits of the claim nor demonstrated NCC's specific intent to proceed in state court. NCC's request for attorney's fees under section 37.009 of

the Texas Civil Practice and Remedies Code also has no bearing on whether NCC intended to adjudicate the merits in state court. Under section 37.009, a trial court may award attorney's fees even when no counterclaim is asserted, and attorney's fees may also be awarded to a non-prevailing party. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *see also Birmingham Fire Ins. Co. of Pennsylvania v. Am. Nat'l Fire Ins. Co.*, 947 S.W.2d 592, 608 (Tex.App.–Texarkana 1997). Finally, NCC's removal cannot be characterized as an appeal from an adverse judgment rendered by the state court. The state court issued no rulings, findings, or judgments.

### B. AMOUNT IN CONTROVERSY

In a diversity case, determining the requisite amount in controversy is a federal question; nonetheless, state law is relevant to this determination insofar as it defines the nature and extent of the right the plaintiff seeks to enforce. *Duderwicz v. Sweetwater Sav. Ass'n*, 595 F.2d 1008, 1012 (5th Cir. 1979). The Court ordinarily consults the state court petition to determine the amount in controversy. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removing party has the burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Id.* This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or alternatively, (2) the defendant sets forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount. *Id.*

In his original petition (Docket No. 1, Ex. No. 1), Villalobos does not allege a specific amount of damages; however, he does assert that this action falls within a Level 2 discovery control plan. *See* TEX. R. CIV. PROC. R. 190.3. In order to fall under a Level 2 discovery plan, a plaintiff must allege actual damages that exceed $50,000, excluding costs, pre-judgment interest, and

attorneys' fees. TEX. R. CIV. PROC. R. 190.2(a)(1). Villalobos seeks a declaratory judgment ordering NCC to indemnify Villalobos in the underlying malpractice suit brought by the Smiths. While Villalobos claims that his pleadings did not state an amount in controversy of $75,000 or more, NCC argues that the amount in controversy should include the damages sought by the Smiths against Villalobos in the underlying malpractice action. This Court agrees.

"The amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). In *Greenberg*, the Fifth Circuit held:

> When an insurer seeks a declaratory judgment regarding the coverage provided by an insurance policy, the 'object of the litigation' is plaintiff's potential liability under that policy. Thus, in addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are *inter alia* penalties, statutory damages, and punitive damages—just not interest or costs.

134 F.3d at 1253 (footnotes omitted). Moreover, jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached. *Id.* at 1253-54. Thus, in order to determine whether the jurisdictional amount is satisfied, this Court examines relevant evidence as of the time that Villalobos filed his complaint for declaratory relief.

At the time Villalobos filed his petition, the Smiths' action against Villalobos and his former law firm was pending. Because Villalobos seeks a declaratary judgment ordering NCC to indemnify Villalobos in the underlying action, the value of the right to be protected in this case is the damages for which Villalobos may be found liable in the Smiths' lawsuit against him. The Smiths alleged

6

that their case falls within a Level 3 discovery control plan. By electing a Level 3 discovery plan, the Smiths were seeking, at a minimum, $50,00 in relief, exclusive of costs and attorney's fees. TEX. R. CIV. PROC. R. 190.2(a)(1). Furthermore, the Smiths have alleged, *inter alia*, that the defendants have violated the DTPA. The DTPA permits the recovery of treble damages, exemplary or punitive damages, and attorney's fees; thus, these must be considered in the calculation of the amount in controversy. Trebling at least $50,000 would certainly place the amount in controversy above the $75,000 jurisdictional requirement. Furthermore, in Texas, "there is no set rule or ratio between the amount of actual damages and exemplary damages that may be awarded by a jury," except as limited by section 41.008 of the Texas Civil Practices and Remedies Code. Section 41.008 caps punitive damages as the greater of (A) $200,000 or (B) two times economic damages plus noneconomic damages not to exceed $750,000. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1)(A)-(B). The amount in controversy is determined by the value of the actual damages that are the subject of the suit and may include statutorily recoverable damages such as general damages, special damages, punitive damages, and attorney's fees. *See Greenberg*, 134 F.3d at 1253. Applying this calculus to the Smiths' case, Villalobos could be liable for at least $50,000 in actual damages, $150,000 in treble damages, $200,000 in punitive damages, and attorney's fees. Because Villalobos seeks to be indemnified by NCC for the amount for which he may be liable in the Smiths' action, this Court concludes that it is more likely than not that Villalobos's claims against NCC will exceed the minimum jurisdictional amount. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) (holding that the test is "whether the amount of the claim will more likely than not" exceed $75,000).

### C. DIVERSITY JURISDICTION

Under the "fraudulent joinder" doctrine, a federal court may assert diversity jurisdiction when a non-diverse defendant has been fraudulently joined — i.e., when "either [there] is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [there] has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999). A request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction would never be granted. *Id.* at 678. 28 U.S.C. § 1447(e) authorizes a court to permit or prohibit joinder, and the defendant may prevent joinder by arguing that there is no colorable claim against the party the plaintiff is seeking to join. *Id.*

In his motion to remand, Villalobos indicates that he seeks to join two additional parties: Carol Kondos, P.C. ("Kondos"), the named insured of the NCC policy, and U.S. Risk Underwriters, Inc., ("USRU"). Both of these parties are resident organizations of the state of Texas, and thus, their joinder in this case would defeat diversity jurisdiction. According to Villalobos, these parties are "indispensable and necessary to this litigation." (Docket No. 4). Villalobos, however, has not sought leave to amend his complaint under Rule 15(a) of the Federal Rules of Civil Procedure in order to demonstrate to this Court facts that would permit joinder of Kondos or URSU. Further, Villalobos's original petition lacks allegations supporting joinder of Kondos or URSU. Simply stated, Villalobos has presented no facts to show that he has a colorable claim against Kondos or URSU. Villalobos's conclusory assertion in his motion to remand that Kondos and URSU are indispensable and necessary parties to the litigation is insufficient to persuade this Court that joinder is necessary or permissible, and his bare allegation at this juncture — after removal from the state court — must be viewed with "much suspicion." *See Holcomb v. Brience, Inc.*, No. 3:01-CV-1715-

M, 2001 WL 1480756, at *2 (S.D. Tex. Nov. 20, 2001) (holding that "[b]are assertions of 'indispensability' do not justify the Plaintiff's apparent purpose to defeat jurisdiction").

With respect to URSU, NCC points out that Villalobos cannot allege that:

1. He had a contract with URSU;

2. URSU had any claims-handling responsibilities;

3. URSU had any decision-making authority regarding NCC's denial of a defense or indemnity;

4. A special relationship existed between URSU, an insurance agent, and Villalobos;

5. URSU made any affirmative representations to Villalobos that caused injury to Villalobos;

6. URSU had any contact with Villalobos;

7. Villalobos had even been employed by Kondos in the 34 month period preceding his tender of a defense to NCC; and

8. That his name even appeared as an attorney employed by Kondos on any insurance policy applications submitted to NCC. (Docket No.8, App. pp. 2, 8-9)

Additionally, Villalobos entered into a Settlement and Release Agreement with Kondos in which Villalobos relinquished every claim he had against Kondos arising out of the representation of the Smiths. (Docket No. 8, App. pp. 28-30, 44, 46). By this Release Agreement, Villalobos and Kondos agreed "never to again instigate legal proceedings in any court against each other with respect to any of the allegations and claims that are the subject and arise out of the occurrence made the basis of the above numbered and entitled cause." (Docket No. 8, App. p. 30). Accordingly, the claims Villalobos now seeks to pursue against Kondos are without merit. *See Dresser Indus., Inc.*

*v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

In *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987), the Fifth Circuit provided four post-removal factors that should be considered in the joinder analysis: (1) the extent to which the purpose of the joinder is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the joinder; (3) whether the palintiff will be significantly injured if the joinder is not allowed; and (3) any other factors bearing on the equities. Consideration of these factors in this case militate against joinder of Kondos and URSU. It is clear that Villalobos seeks to join Kondos and URSU in order to defeat diversity. The Smiths filed their malpractice action almost two years ago in the 44th Judicial District Court of Dallas County, Texas. In the course of the litigation, NCC had filed a counterclaim, and the action had been fairly developed by the time that Villalobos filed his lawsuit against NCC in Cameron County. Villalobos could have certainly filed his declaratory judgment action against NCC in Dallas and joined any claims, however specious, he thought he had against Kondos in the Dallas action, but he did not. Furthermore, Villalobos has not sought joinder in a timely fashion. NCC declined coverage in January 2001; however, Villalobos raise any claims against NCC in the pending Dallas action and waited almost a year after receiving notice of declination to commence an action in Cameron County. In addition, Villalobos will not be significantly injured if joinder is not allowed. If Villalobos obtains a declaratory judgment against NCC, NCC will be able to satisfy the judgment. Moreover, the pending Dallas action also afford a venue in which Villalobos can sue Kondos and URSU. In fact, Kondos is already a party to the Dallas action. Villalobos has offered no explanation for his failure to make any mention of potential claims against Kondos or URSU at the time that NCC removed the action from state court. Even after filing a motion to dismiss the removed action, Villalobos did not allude to possible claims

10

against Kondos or URSU. It is only now, after facing the prospect of not being able to maintain the action in Cameron County, that Villalobos has withdrawn his motion to voluntarily dismiss and instead, has filed a motion to remand in which he blankly asserts the need to join two parties. The Court is not duped by Villalobos's apparent attempt to defeat federal jurisdiction.

**IT IS THEREFORE RECOMMENDED** that Plaintiffs' Motion to Remand (Docket No. 4) is **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

DONE in Brownsville, Texas, on this 22nd day of April, 2002.

　　　　　　　　　　　　　　　　　　　John Wm. Black
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge